**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: GARDASIL PRODUCTS LIABILITY LITIGATION** | **MDL DOCKET NO. 3036** |

**<u>INTERESTED PARTY RESPONSE
IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS PURSUANT
TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS</u>**

Plaintiffs, Eduardo Atjian, II (C.D. Cal.), Sydney Fetters (C.D. Cal.), and Jacob Levy (C.D. Cal.) ("Plaintiffs"), submit this Interested Party Response.

# TABLE OF CONTENTS

Page(s)

**TABLE OF CONTENTS** ................................................................................................. i

**TABLE OF AUTHORITIES** ........................................................................................ iii

**I.    INTRODUCTION** ..............................................................................................1

**II.   GARDASIL FACTUAL BACKGROUND** .....................................................2

**III.  LITIGATION BACKGROUND AND STATUS** ...........................................4

    A.    Common Factual Allegations ...............................................................4

    B.    Common Defendants. ............................................................................5

    C.    Common Alleged Injuries. ....................................................................5

    D.    Common Procedural Status. .................................................................6

    E.    Informal Coordination is Not Feasible. ................................................6

    F.    When Merck Wants to Coordinate Actions, Merck Has Argued the Very Same Reasons for Coordination Advanced by Plaintiffs in this Action. …………………………………………………………………..7

        (1)    Merck Has Argued That Transfer is Appropriate In Multi-Plaintiff Vaccine Product Liability Cases……………………..8

        (2)    Merck Has Argued That Variances in the Types of Alleged Injuries Among Plaintiffs Do Not Prevent Transfer…………..8

        (3)    Merck Has Argued That Centralization Benefits Both Plaintiffs and Defendants……..………………………………………….9

        (4)    Merck Has Argued That Coordination Is Appropriate in Pharmacuetical Product Liability Cases Involving A Smaller Number of Lawsuits Than Exist Here………………………..10

**IV.   ARGUMENT** .....................................................................................................11

    A.    Centralization Is Warranted For These Cases. ..................................11

|   |   |   |   |
|---|---|---|---|
|   | 1. | Consolidation Is Appropriate Under Section 1407. | 11 |
|   | 2. | Informal Coordination is Impractical. | 13 |
|   |   | a. Discovery will be difficult to informally coordinate within multiple districts with cases at various stages across the country…………………………………………...| 13 |
|   |   | b. Without a centralized process, motion practice will be duplicative, resulting in disparate judicial rulings and a tax on the judiciary……………………………………. | 14 |
|   |   | c. Disputes amongst parties have occurred, and will continue to occur, without formal coordination. | 14 |
| B. | An Appropriate Venue For These Cases is the District of Arizona or Central District of California............................................................| 15 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In Re DePuy Orthopaedics, Inc.*,
   753 F. Supp. 2d 1378 (J.P.M.L. 2010) ...............................................................15

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
   330 F. Supp. 3d 1378 (J.P.M.L. 2018) ............................................ 7, 8, 10, 11-12

*In re: Farxiga (Dapagliflozin) Prods. Liab. Litig.*,
   273 F. Supp. 3d 1380 (J.P.M.L. 2017) ...............................................................12

*In re: Prempro Prods. Liab. Litig.*,
   254 F. Supp. 2d 1366 (J.P.M.L. 2003) ...............................................................12

*In re: Taxotere (Doxetaxel) Eye Injury Prods Liab. Litig.*,
   MDL No. 3203, 2022 WL 303562 (J.P.M.L. Feb. 1, 2022)................................12

**Statutes**

28 U.S.C. 1407................................................................................... 7, 11, 12

## I.    INTRODUCTION

Plaintiffs support centralization. The actions which are the subject of the motion to transfer ("Subject Actions")[1] involve common questions of fact, and centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions involve common factual questions arising out of the allegations that Gardasil caused plaintiffs to develop autoimmune diseases with varying manifestations and that defendants did not provide sufficient warning of the risks to health care providers or consumers. Issues concerning the design, testing, manufacture, regulatory approval, labeling, and marketing as well as exhaustion of remedies before the United States Court of Federal Claims are common to all actions.

Centralization will benefit plaintiffs and defendants because of the time and money saved by having a common schedule, common discovery, including a common database for all Merck documents, and common general cause experts. For the reasons discussed below, the Panel should consider transferring and centralizing all active cases and future cases in either the District of Arizona before The Honorable Judge Douglas L. Reyes or the Central District of California before The Honorable Judge James V. Selna.

---

[1] See Schedule of Actions attached to the concurrently filed Declaration of Anthony A. Liberatore at Exhibit "A."

## II. GARDASIL FACTUAL BACKGROUND

In June 2006, after the Food and Drug Administration's ("FDA") fast-tracked review, Gardasil was approved for use in females ages 9 through 26 for the purported prevention of cervical cancer. In December 2014, the FDA approved Gardasil 9 (containing the same ingredients as Gardasil, but in higher quantities)[2] for use in girls ages 9 through 26 and boys ages 9 through 15 for the purported prevention of cervical, vaginal, and anal cancers. This rush to approval left unanswered questions relating to the efficacy and safety of the vaccine. Merck obscured information relating to these issues. Presently, Gardasil 9 has been approved for and is being promoted by Merck to males and females between 9 and 45 years of age, with an emphasis on pre-teens and their parents. In a best-case scenario, Gardasil causes immune hyperactivation and production of anti-HPV antibodies to fend off certain strains of the HPV virus. In a worst-case scenario, it causes the immune system to lose its ability to differentiate human proteins from foreign proteins, causing the immune system to attack the body's own proteins and organs.

To stimulate an enhanced immune response, Merck added adjuvants to the Gardasil vaccine, including (but not limited to) a proprietary aluminum known as amorphous aluminum hydroxyphosphate sulfate (AAHS) and HPV LI-DNA

---

[2] After the approval of the Gardasil 9 vaccine, the original Gardasil vaccine was phased out of the U.S. Market and the original Gardasil vaccine is no longer available for sale in the United States.

fragments. Because of the peptide commonality between HPV and human proteins, the attack triggered by the Gardasil adjuvants can cause cross-reactions and dangerous attacks against human proteins.[3] This process, which is referred to as "molecular mimicry," can cause autoimmune disorder.

The Complaints filed on behalf of the three (3) plaintiffs represented by the undersigned counsel, Eduardo Atjian, II (*Eduardo Atjian, II v. Merck & Co., Inc., et al.*, Case No.: 2:22-cv-01739-AB-RAO (C.D. Cal.)), Sydney Fetters (*Sydney Fetters v. Merck & Co., Inc., et al.*, Case No.: 8:22-cv-00422-JVS-ADS (C.D. Cal.)), and Jacob Levy (*Jacob Levy v. Merck & Co., Inc., et al.*, Case No.: 8:22-cv-00431-FWS-JDE (C.D. Cal.))[4] contain liability and injury claims virtually identical, if not identical to the allegations in the other pending actions.

///

///

---

[3] 82 heptapeptide sequences have been identified that overlap perfectly with the HPV16 proteins. "Based on the need for five or six amino acids to induce a monoclonal antibody response, the 82 heptapeptide overlaps can clearly induce autoimmune reactions." Darja Kanduc, *Quantifying the Possible Cross-Reactivity Risk of an HPV16 Vaccine*, 8 Journal of Experimental Therapeutics and Oncology 65 (2009).

[4] By Order dated April 27, 2022, this case was re-assigned from The Hon. James V. Selna to The Hon. Fred W. Slaughter. The matter of *Sydney Fetters v. Merck & Co., Inc., et al.*, Case No.: 8:22-cv-00422-JVS-ADS (C.D. Cal.) remains before Judge Selna. All three (3) plaintiffs are assigned to three (3) different judges in the Central District.

### III. LITIGATION BACKGROUND AND STATUS

As noted in the primary moving papers, there are 33 Gardasil-related civil actions currently pending in 25 different federal district courts across the United States from Florida to California. Plaintiffs in the Subject Actions are represented by the following eight separate law firms: Baum Hedlund Aristei & Goldman, P.C.; Mullins Duncan Harrell & Russell PLLC; Van Cott & Talamante, PLLC; A. Liberatore, P.C., Law Offices; Siri & Glimstad; Bronster Fujichaku Robbins; Pendley Baudin & Coffin, LLP; and Morgan & Morgan.

Given the diversity of jurisdictions and number of firms and counsel for the Subject Actions, it will be impossible to coordinate this litigation informally. Aside from the diversity of jurisdictions and counsel, the Subject Actions share many common features which mandate centralization. More specifically, the Subject Actions stem from common factual allegations, involve common Defendants, a common mechanism of injury, and common damages. Furthermore, the current procedural posture and status of discovery also point to centralization as a favorable method for case administration.

#### A. Common Factual Allegations

Plaintiffs in the Subject Actions allege they were injured by the Gardasil vaccine, which, through the unintended processes of molecular mimicry, caused Plaintiffs to develop autoimmune disorder, POTS/Orthostatic Intolerance and ITP.

Plaintiffs allege Merck concealed the known dangers of Gardasil and that Merck's targeted consumers and doctors did not know the true risks. Plaintiffs have universally alleged throughout the Subject Actions that Merck breached its duty of reasonable care and failed to exercise ordinary care in the research, manufacturing, testing, marketing, pharmacovigilance, promotion, and labeling of Gardasil.

### B. Common Defendants.

Merck, as the sole manufacturer of Gardasil, is the Defendant in each of the Subject Actions, along with its related company, Merck Sharpe & Dohme Corp.

### C. Common Alleged Injuries.

The Plaintiffs in the Subject Actions allege they received the Gardasil vaccine and through the mechanism of action known as molecular mimicry, Gardasil resulted in the plaintiffs developing autoimmune disorders. All Plaintiffs likewise allege their injuries were caused by Merck's research, manufacturing, testing, marketing, promotion, and labeling of Gardasil. The factual investigation in all cases will focus on whether Gardasil has unreasonably dangerous side effects, whether Merck adequately warned of side effects and whether Gardasil caused Plaintiffs' injuries. The commonality among Plaintiffs' injuries further warrants centralization. All three of the Interested Party Plaintiffs suffer from autoimmune injuries that resulted from administration of Gardasil.

///

**D.     Common Procedural Status.**

Eduardo Atjian, II's lawsuit was filed on March 16, 2022. Sydney Fetters' lawsuit was filed on March 18, 2022. Jacob Levy's lawsuit was filed on March 21, 2022. Defendants were recently served with the Summons and Complaint and responsive pleadings are due on or before June 6, 2022.

Plaintiffs' counsel is informed that Merck has produced documents in a few of the cases being handled by other of the firms named above. In the cases being handled by the undersigned counsel, Rule 26 Conferences have not yet occurred and no discovery has taken place.

Given the current early stage of the Subject Actions, the fact that no depositions of Merck employees have taken place, expert discovery has yet to initiate, and the earliest trial date is not until next year (2023), the time is ripe to centralize these cases, and reap the maximum benefits from the creation of an MDL in terms of efficiency and preservation of resources. In the absence of centralization, the parties will inevitably face inconsistent rulings, duplicative and burdensome discovery obligations, and conflicting scheduling orders.

**E.     Informal Coordination is Not Feasible.**

Informal coordination of 33 pending matters in 25 different courts among eight law firms is simply not achievable. This difficulty is demonstrated by prior unsuccessful efforts as set forth in the primary moving papers.

> **F. When Merck Wants to Coordinate Actions, Merck Has Argued the Very Same Reasons for Coordination Advanced by Plaintiffs in this Action.**

In litigation involving *Zostavax*, a vaccine targeting prevention of shingles, Merck moved for early consolidation in this Court. Merck advanced the argument that early coordination of pretrial proceedings was necessary to avoid duplicative, burdensome discovery of the Defendants and experts. (See *In Re: Zostavax Products Liability Litigation, Memorandum of Law in Support of Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated Pretrial Proceedings* (hereinafter "*Merck Motion to Coordinate*") attached to the Declaration of Anthony A. Liberatore as Exhibit B.)

In the *Merck Motion to Coordinate*, Merck argued that coordination is necessary when maintaining individual actions would cause Merck to engage in duplicate discovery and document production. Merck argued that coordination would eliminate the need to engage in duplicate discovery and that it had already produced "… nearly 200,000 company documents." (Exhibit B at 7:1).

Here, the undersigned counsel is informed that Merck has produced nearly 8,000,000 pages of documents in just a few earlier filed cases. The amount of document production alone in the Gardasil litigation, is 40 times greater than the number of documents produced which prompted Merck to seek coordination in the

7

*Zostavax* litigation. In addition, none of the interested party plaintiffs have started conducting discovery. Scheduling conferences have not yet occurred, and only one is scheduled for June 22, 2022, in the Fetters case. Coordination of pre-trial discovery will serve the convenience of all parties and promote the just and efficient conduct of this litigation.

### (1) Merck Has Argued That Transfer is Appropriate In Multi-Plaintiff Vaccine Product Liability Cases.

In the *Zostavax* litigation, Merck has argued to this Panel: "… In granting transfer orders in product liability actions related to FDA-approved products, the Panel recognizes that "[i]ssues concerning the development, manufacture, regulatory approval, labeling, and marketing of the drugs thus are common to all actions. …" (Exhibit B at 12:11.) Our case involves an FDA-approved vaccine and attendant product liability claims arising from administration of the drug. Merck's admitted rationale in supporting transfer in other vaccine product liability cases supports transfer in our case given the similarity in factual issues and claims and the magnitude of pending and anticipated new case filings.

### (2) Merck Has Argued That Variances in the Types of Alleged Injuries Among Plaintiffs Do Not Prevent Transfer.

Merck has argued to this Panel that: "… Variances in the types of alleged [Gardasil]-related injuries do not prevent consolidation, as a complete identity or

even majority of common questions of fact are not required to justify transfer." (Exhibit B at 13:2.) Merck has also argued to this Panel that: "Particularly in product liability litigation, the Panel acknowledges that plaintiff-specific questions of causation are not an impediment to centralization were common questions of fact predominate." (Exhibit B at 13:5.) Merck has argued that: "The Panel has rejected the argument that products liability actions must allege identical injuries to warrant centralization. (Exhibit B at 13:10.)

Here, the injuries alleged by the plaintiffs are all autoimmune in nature with some identical and similar injuries. All injuries involve autoimmune insult as a consequence of being injected with Gardasil. The vaccine induced injuries all stem from molecular mimicry due to peptide commonality between HPV and human proteins. Given our facts, all actions will share discovery relating to general medical causation.

### (3) Merck Has Argued That Centralization Benefits Both Plaintiffs and Defendants.

Merck has argued to this Panel that: "This Panel has consistently recognized that centralization benefits both plaintiffs and defendants by reducing discovery delays and costs, and allowing plaintiffs' counsel to coordinate their pretrial efforts." (Exhibit B at 13:18.) Here, coordination will save the parties tremendous resources in streamlining discovery and in preparing for trial. Plaintiffs' counsel must

coordinate resources to analyze the massive document production thus far. 8,000,000 pages of company documents to review and analyze by eight (8) firms is a herculean task. It would be impossible for the undersigned's firm to review such a production with any reasonable efficiency, even if the trial date was set 5 years from now. Centralization is appropriate because it will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the subject actions.

### (4) Merck Has Argued That Coordination Is Appropriate In Pharmaceutical Product Liability Cases Involving A Smaller Number of Lawsuits Than Exist Here.

In the *Zostavax* litigation, Merck argued to the Panel that coordination was appropriate in product liability cases involving pharmaceuticals when there are 34 actions pending in 13 districts, 15 actions in another instance, 27 actions in another, and 9 actions in another. (Exhibit B at 11:12.) Here, based on Merck's own rationale, there are sufficient geographically spread Gardasil cases already filed, let alone to be filed, to warrant coordination.

///

///

///

## IV. ARGUMENT

### A. Centralization Is Warranted For These Cases.

#### 1. Consolidation Is Appropriate Under Section 1407.

Under 28 U.S.C. § 1407, the Panel may consolidate multiple cases if the moving parties sufficiently demonstrate that:

1. the lawsuits involve one or more common questions of fact;
2. consolidation will best serve the convenience of the parties and witnesses; and
3. consolidation will promote the just and efficient conduct of such lawsuits.

28 U.S.C. § 1407(a). As shown herein, the Gardasil lawsuits meet the statutory requirements for centralization. Centralization in one district court for pre-trial proceedings is the best approach to accomplish the goals of the consolidation statute.

Each Gardasil lawsuit alleges nearly identical facts against the same two Merck entities concerning the same vaccine. Each lawsuit contains almost identical allegations about Gardasil and how it caused neurological injuries and autoimmune diseases in the recipients of the shots. Merck will deny the allegations. Merck's defenses will involve common questions of fact on both liability and causation.

Centralization before one MDL court will prevent inconsistent judicial rulings, would eliminate duplicative discovery, will be more convenient to the parties, witnesses, and their counsel, and will conserve the resources of the judiciary, the parties, and their counsel. *See, In re Zostavax (Zoster Vaccine Live) Prods. Liab.*

11

*Litig.*, 330 F. Supp. 3d at 1379 (consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* issues and other pretrial matters, and conserve resources). All suits are based upon substantially similar, if not identical, allegations, and in the workup of the cases, the parties will address similar issues in discovery, and in some cases identical issues, especially those involving causation, Plaintiffs' injuries, and the misrepresentations on which Plaintiffs relied. Given the scope of the issues and known and anticipated discovery, formal centralization under Section 1407 is the best course.

    The need for centralization is warranted because there are already 33 Gardasil lawsuits on file in 25 different federal district courts across the country. With certainty, absent consolidation, each of the 33 cases will ultimately result in separate scheduling orders and duplicative discovery and pretrial practices if an MDL is not created. The panel should authorize an MDL so that pretrial proceedings "will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re: Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003); *see also In re: Taxotere (Doxetaxel) Eye Injury Prods Liab. Litig.*, MDL No. 3203, 2022 WL 303562, at *1 (granting centralization for 13 lawsuits); *In re: Farxiga*, 273 F. Supp. 3d at 1381-82 (granting centralization for 18 lawsuits that involved "allegations that ingestion of the drug Farxiga may cause a variety of injuries").

### 2. Informal Coordination is Impractical.

Here, informal coordination is not a practical alternative to centralization for these cases. The number of cases, different districts, and the number of different law firms involved, not to mention the complexity of the litigation, make effective coordination on an informal basis impracticable. Just as much time and effort would be spent trying to schedule when things are going to get done as opposed to getting things done. It would be inefficient and uneconomical to hope that the parties could manage pre-trial discovery informally.

**a. Discovery will be difficult to informally coordinate within multiple districts with cases at various stages across the country.**

Given the claims and injuries at issue, Plaintiffs anticipate taking the depositions of treating physicians, third-party witnesses, and current and former employees of Merck who worked on Gardasil, many of whom will be deposed in multiple cases or will discuss overlapping issues. It is hard enough to schedule depositions of witnesses that are currently employed by a company when three law firms are involved. The challenge increases exponentially (like earthquakes and the Richter scale) when successive law firms across the country are involved. One plus one plus one, no longer equals three when one is dealing with complex multi-party multi-jurisdictional litigation.

///

13

> **b. Without a centralized process, motion practice will be duplicative, resulting in disparate judicial rulings and a tax on the judiciary.**

Merck has filed Answers in certain district courts, in others, it has filed Rule 12(b)(6) motions. The parties are already seeing inconsistent rulings. Without a centralized process, many different motions will result in just as many different rulings. This will be the end result even though the motions will be nearly identical and the underlying facts are identical. The inconsistencies will become even more pronounced for *Daubert* and summary judgment motions, given the complex medical, scientific, and legal concepts at issue in these actions. A single Court will achieve far greater consistency than the efforts of multiple judges and parties across the country. Additionally, duplicative motion practice encourages forum shopping and strains judicial resources.

> **c. Disputes amongst parties have occurred, and will continue to occur, without formal coordination.**

The primary moving papers discusses failed attempts to coordinate pre-trial proceeding informally. Given the state of affairs, formal consolidation is necessary to have reasonable and feasible scheduling given the magnitude of discovery to be exchanged in the cases. Formal coordination will eliminate redundancy.

///

///

**B.     An Appropriate Venue For These Cases is the District of Arizona or the Central District of California**

As shown above, centralization is appropriate for these cases. The next issue for the Panel to consider is the proper venue for transfer of these cases.  Plaintiffs submit that an appropriate venue for this litigation could be the District of Arizona or Central District of California.

The *Gramza* case in front of Judge Douglas L. Rayes and is the earliest filed federal court case.  *Gramza* appears to be the farther along procedurally than just about all other cases.  The case is at issue, there have been motions to compel filed and adjudicated, and Merck has produced certain discovery documents.  There are two additional Gardasil autoimmune personal injury cases that were recently filed in the District of Arizona (for a total of three cases pending in that Court) and there are nearly a dozen cases currently pending within the Ninth Circuit.  *In Re DePuy Orthopaedics, Inc.*, 753 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (transferring to the N.D. of Ohio because, among other things, several potential tag-along actions were already pending there).

The Central District of California would also be an efficient location for these cases.  All three (3) of the Interested Party Plaintiffs' cases are assigned to the Central District of California. The Panel has previously preferred venues that are geographically convenient, and easily located.  The Central District of California

meets each of these criteria. Air, automobile and/or train travel is convenient and easily accessible to the Central District Courthouses. In addition, counsel was just contact by defense counsel for Merck and they are based in Downtown Los Angeles, California. Judge James V. Selna and the Central District of California can serve as an appropriate forum for this MDL.

Dated: May 20, 2022

Respectfully submitted,

/s/ Anthony A. Liberatore
Anthony A. Liberatore, Esq.
(SBN: 208722)
anthony@alpc-law.com
**A. LIBERATORE, P.C.**
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (424) 285-8550
Facsimile: (310) 362-8810

*Counsel for Plaintiffs, Eduardo Atjian, II, Sydney M. Fetters, and Jacob D. Levy*

16