# BEFORE THE UNITED STATES
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: GARDASIL PRODUCTS        MDL DOCKET NO. 3036
LIABILITY LITIGATION

### DECLARATION OF ANTHONY A. LIBERATORE
### IN SUPPORT OF INTERESTED PARTY RESPONSE RE MOTION FOR
### TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR
### COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

I, Anthony A. Liberatore, declare and state as follows:

1.      I am an attorney and President at the Law Offices of A. Liberatore, P.C. I am duly admitted to practice before this Honorable Court and am the attorney of record for Plaintiffs, Eduardo Atjian, II, Sydney M. Fetters, and Jacob D. Levy.  I have personal knowledge of the facts stated below and if called to testify as a witness, I could and would so competently.  I make this declaration in support of Plaintiffs' Interested Party Response.

2.      Merck was recently served with the Summons and Complaints of all three represented plaintiffs, Eduardo Atjian, II, Sydney Fetters and Jacob Levy. Merck's responsive pleadings are due on or before June 6, 2022.   A Rule 26 Scheduling Conference is set in Sydney Fetters' case for June 22, 2022.   The conference will likely be continued to allow time for Merck to appear.

3.      I have spoken with other attorneys that represent plaintiffs in the Subject Actions and been informed that Merck has produced approximately 8,000,000 pages of documents in discovery.  I am also informed that discovery is far from complete and that additional documents will be produced.  It would be virtually

impossible for my office (me and staff) to review meaningfully 8,000,000 pages of documents and be ready for trial in less than a five-year period.

4. Attached hereto as **Exhibit A** is a true and correct copy of the Schedule of Actions. I intend to file more cases in the future involving identical liability claims and similar if not identical injury claims, all of which derive from autoimmune insult and dysfunction associated with administration of the Gardasil vaccine.

5. Attached hereto as **Exhibit B** is a true and correct copy of Merck's Memorandum of Law in Support of Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated Pretrial Proceedings in the matter of *In Re: Zostavax Products Liability Litigation* that was obtained from Pacer.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 20th day of May 2022 at Los Angeles, California.

Dated:  May 20, 2022                    Respectfully submitted,

                                        */s/ Anthony A. Liberatore*
                                        Anthony A. Liberatore, Esq.
                                        (SBN: 208722)
                                        anthony@alpc-law.com
                                        **A. LIBERATORE, P.C.**
                                        100 Wilshire Blvd., Suite 700
                                        Santa Monica, CA 90401
                                        Telephone:  (424) 285-8550
                                        Facsimile:  (310) 362-8810

                                        *Counsel for Plaintiffs, Eduardo Atjian, II, Sydney M. Fetters, and Jacob D. Levy*

**EXHIBIT "A"**

**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**IN RE: GARDASIL PRODUCTS LIABILITY LITIGATION**          **MDL DOCKET NO. 3036**

**SCHEDULE OF ACTIONS**

**Cases Where the Plaintiff's Are Represented By A. Liberatore, P.C. Are Highlighted**

| # | Plaintiff(s) | Defendants | Court | Civil Action No. | Judge Assigned |
|---|---|---|---|---|---|
| 1 | Jasmyne Gramza | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. Arizona | 2:20-cv-01425-DLR | District Judge Douglas L. Rayes |
| 2 | Adriana Merino | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. Arizona | 2:22-cv-00398-MHB | District Judge Michelle H. Burns |
| 3 | Allen Vela and Edna Barba, as parents of and on behalf of their minor child, J.V. | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. Arizona | 2:22-cv-00420-SPL | District Judge Steven P. Logan |

1

| # | Plaintiff(s) | Defendants | Court | Civil Action No. | Judge Assigned |
|---|---|---|---|---|---|
| 4 | Eduardo Atjian, II | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | C.D. California | 2:22-cv-01739-ABJ-RAO | District Judge Andre Birotte Jr. and Magistrate Judge Rozella A. Oliver |
| 5 | Sydney M. Fetters | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | C.D. California | 8:22-cv-00422-JVS-ADS | District Judge James V. Selna and Magistrate Judge Autumn D. Spaeth |
| 6 | Jacob D. Levy | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | C.D. California | 8:22-cv-00431-JVS-JDE | District Judge Fred W. Slaughter and Magistrate Judge John D. Early |
| 7 | Michael A. Colbath | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | S.D. California | 3:21-cv-120-TJW-DEB | District Judge Thomas J. Whelan and Magistrate Judge Daniel E. Butcher |
| 8 | Jeffrey K. Hoddick | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. Hawaii | 1:22-cv-00144-DKW-WRP | District Judge Derrick K. Watson and Magistrate Judge Wes Reber Porter |
| 9 | Skylee Butler | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. Massachusetts | 3:22-cv-10006-MGM | District Judge Mark G. Mastroianni |

| # | Plaintiff(s) | Defendants | Court | Civil Action No. | Judge Assigned |
|---|---|---|---|---|---|
| 10 | Emma Sullivan | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. New Jersey | 3:22-cv-00116-ZNQ-DEA | District Judge Zahid N. Quraishi and Magistrate Judge Douglas E. Arpert |
| 11 | Savannah Flores | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. Nevada | 3:21-cv-00166-HDM-CL | District Judge Miranda Du and Magistrate Judge Carla Baldwin |
| 12 | Julia Balasco | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. Rhode Island | 1:20-cv-00364-MSM-PAS | District Judge Mary S. McElroy and Magistrate Judge Patricia A. Sullivan |
| 13 | Abigail Stratton | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | D. South Carolina | 2:21-cv-02211-RMG | District Judge Richard Mark Gergel |
| 14 | Corinn Mcelerney | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | M.D. Florida | 8:21-cv-01814-WFJ-AEP | District Judge William F. Jung and Magistrate Judge Anthony E. Porcelli |
| 15 | Ruby Silver | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | M.D. Florida | 8:21-cv-02903-WFJ-AEP | District Judge William F. Jung and Magistrate Judge Anthony E. Porcelli |

| # | Plaintiff(s) | Defendants | Court | Civil Action No. | Judge Assigned |
|---|---|---|---|---|---|
| 16 | Ashley Muller | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Florida | 3:21-cv-01335-MCR-HTC | District Judge M. C. Rodgers and Magistrate Judge H. Cannon |
| 17 | Mark Thomas as Natural Parent and Legal Guardian of Z.T., a minor | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | S.D. Florida | 9:22-cv-80445-DMM | District Judge Donald M. Middlebrooks |
| 18 | Darby Hendrix | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Georgia | 1:22-cv-01171-JCJ | District Judge Steve C. Jones |
| 19 | Ken and Shaun Wingerter, on behalf of their minor child, H.W. | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Georgia | 1:22-cv-01178-ELR | District Judge Eleanor L. Ross |
| 20 | Cooper Humphries | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | C.D. Illinois | 4:21-cv-04154-SLD-JEH | District Judge Sara Lynn Darrow and Magistrate Judge Jonathan E. Hawley |
| 21 | Krista L. Landers | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Illinois (Eastern Division) | 1:22-cv-01696-TMD | District Judge Thomas M. Durkin |

4

| # | Plaintiff(s) | Defendants | Court | Civil Action No. | Judge Assigned |
|---|---|---|---|---|---|
| 22 | Tanja And Scott Wagner, on behalf of their child, S.W. | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Illinois (Eastern Division) | 1:22-cv-01717-EEB-SRH | District Judge Elaine E. Bucklo and Magistrate Judge Sunil R. Harjani |
| 23 | Jessica Raymer | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Illinois (Eastern Division) | 1:22-cv-01643-SLE-JC | District Judge Sara L. Ellis and Magistrate Judge Jeffrey Cole |
| 24 | Madelyn Lipscomb | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Indiana (Fort Wayne Division) | 1:22-cv-00116-HAB-SLC | District Judge Holly A Brady and Magistrate Judge Susan L Collins |
| 25 | Nalon A. Soileau | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | M.D. Louisiana | 3:22-cv-00210-BAJ-EWD | District Judge Brian A. Jackson and Magistrate Judge Erin Wilder-Doomes |
| 26 | Ashley Dalton | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | E.D. Michigan | 5:21-CV-12324-JEL-CIJ | District Judge Judith E. Levy and Magistrate Judge Curtis Ivy, Jr. |
| 27 | Maeson Derr | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | M.D. North Carolina | 1:22-cv-00212-WLO-JEP | District Judge William L. Osteen, Jr. and Magistrate Judge Joi Elizabeth Peake |

| # | Plaintiff(s) | Defendants | Court | Civil Action No. | Judge Assigned |
|---|---|---|---|---|---|
| 28 | Payton Bergin | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | W.D. North Carolina | 3:22-cv-00117-RJC-DK | District Judge Robert J. Conrad, Jr. and Magistrate Judge David Keesler |
| 29 | Kameron Hilton | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | W.D. North Carolina | 5:22-cv-00030-KDB-DK | District Judge Kenneth D. Bell and Magistrate Judge David Keesler |
| 30 | Madelyn Malloy | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | E.D. Texas | 6:21-cv-00506-JDK | District Judge Jeremy D. Kernodle |
| 31 | Madeline A. Counts | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | N.D. Texas | 4:22-cv-00241-MTP | District Judge Mark T. Pittman |
| 32 | Saharah Walker | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | W.D. Wisconsin | 3:20-cv-01048-jdp | District Judge James D. Peterson and Magistrate Judge Stephen L. Crocker |
| 33 | Elizabeth Landers, on behalf of her minor child, I.L. | MERCK & CO., INC. and MERCK SHARP & DOHME CORP. | S.D. West Virginia | 2:22-cv-00160-JRG | District Judge Joseph R. Goodwin |

6

**EXHIBIT "B"**

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: ZOSTAVAX PRODUCTS
LIABILITY LITIGATION

MDL DOCKET NO. _____

**MEMORANDUM OF LAW IN SUPPORT OF MERCK & CO., INC. AND MERCK
SHARP & DOHME CORP.'S MOTION FOR TRANSFER OF ACTIONS PURSUANT
TO 28 U.S.C. § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS**

**Venable LLP**
Dino S. Sangiamo
dssangiamo@venable.com
Michaela F. Roberts
mfroberts@venable.com
Christopher J. Conoscenti
cjconoscenti@Venable.com
750 East Pratt Street
Suite 900
Baltimore, MD 21202
Tel.: 410-244-7400
Fax: 410-244-7742

*Attorneys for Defendants Merck & Co., Inc.
and Merck Sharp & Dohme Corp.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

I.     Zostavax Factual Background.................................................................................... 2

II.    Litigation Background and Status.............................................................................. 3

       A.    Common Factual Allegations ........................................................................ 4
       B.    Common Defendants .................................................................................... 5
       C.    Common Alleged Injuries ............................................................................ 6
       D.    Common Procedural Status........................................................................... 6
       E.    State Court Zostavax Litigation Has Been Consolidated at Plaintiffs' Counsel's Request................................................................................................................ 8

III.    Argument ................................................................................................................ 10

       A.    Coordination Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Zostavax Litigation..................... 11
           1.    The Subject Actions Share Numerous Common Questions of Complex, Material Fact .................................................................................. 12
           2.    Transfer Will Serve the Convenience of the Parties ................................ 13
           3.    Transfer Will Promote the Just and Efficient Conduct of the Subject Actions ........................................................................................... 14
       B.    The Subject Actions Should Be Transferred to Either the Honorable James S. Moody in the Middle District of Florida or the Honorable Harvey Bartle III in the Eastern District of Pennsylvania ............................................................. 15
       C.    In the Alternative, Merck Proposes Coordination before the Honorable Joseph F. Bianco ................................................................................................... 19

CONCLUSION................................................................................................................. 20

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (hereinafter "Merck" or "Defendant") respectfully submit this Memorandum of Law in Support of their Motion for Transfer of the actions listed in the attached Schedule of Actions for coordinated pretrial proceedings.  For the reasons discussed below, the Subject Actions should be transferred and centralized in either the Middle District of Florida, before Judge James S. Moody, or the Eastern District of Pennsylvania, before Judge Harvey Bartle III.[1]

## **INTRODUCTION**

Merck is presently aware of 57 federal lawsuits in which it is alleged that a total of 117 individuals were injured after receiving Zostavax, Merck's FDA-approved vaccine indicated for the prevention of shingles.[2]  Those lawsuits (the "Subject Actions") are currently pending in nine federal districts before 21 different judges.  Plaintiffs in the Subject Actions allege injuries caused by the live, attenuated varicella-zoster virus (VZV), which is contained in the Zostavax vaccine.[3]  They seek to recover under product liability causes of action, including failure to warn, design defect, negligence, breach of warranty, and fraudulent misrepresentation.[4]

There now exists a critical need for coordination of pretrial proceedings to avoid duplicative, burdensome discovery of the defendants and perhaps experts, and inconsistent rulings on nearly identical pretrial motions.  Although the facts pertaining to individual plaintiffs will vary, the Subject Actions nevertheless present common, complex factual issues related to the design,

---

[1] In the alternative, Merck proposes that the Subject Actions be coordinated before Judge Joseph Bianco in the Eastern District of New York.

[2] Shingles is a painful rash that generally develops on one side of the face or body.

[3] Live vaccines use a weakened (or attenuated) form of the germ that causes a disease.  The resulting vaccine organism retains the ability to produce immunity, but does not cause illness.

[4] The allegations in the Subject Actions are substantively—and in many cases literally—the same, regardless of the differences in the jurisdictions in which they were filed or the plaintiffs' counsel who filed them.

1

regulatory approval, manufacture, and marketing of Zostavax and Merck's knowledge of adverse effects alleged to be caused by the vaccine.  Accordingly, transfer will "promote the just and efficient conduct of the actions" and the Subject Actions are suitable for transfer and coordination.

## I.     ZOSTAVAX FACTUAL BACKGROUND

On May 25, 2006, FDA approved Zostavax for use in preventing shingles in persons 60 years of age or older.[5]  On March 24, 2011, FDA broadened the indication and approved the use of Zostavax for the prevention of shingles in individuals 50 to 59 years old.  As part of Zostavax's initial licensure in 2006, Merck agreed to conduct specific post-licensure studies, including an observational study aimed at assessing the general safety of Zostavax.  Data from this and other studies continued to demonstrate no safety risks associated with Zostavax.[6]

The United States Centers for Disease Control and Prevention (CDC) also assessed the safety of Zostavax in a large study conducted in healthcare organizations participating in the Vaccine Safety Datalink[7] network.  The results of this study supported the findings from the clinical trials and provided reassurance that the vaccine is generally safe and well-tolerated.  There was no increased risk for cerebrovascular events, cardiovascular events, meningitis, encephalitis, encephalopathy, Ramsay-Hunt syndrome, or Bell's palsy following Zostavax vaccination.[8]

To date, after millions of vaccinations and dozens of clinical trials and observational studies, there has been only one published report of an individual developing vaccine-strain

---

[5] Zostavax continues to be licensed by the FDA.

[6] *See* Baxter, R., et al., *Safety of Zostavax – A cohort study in a managed care organization,* Vaccine (2012); *see also* Murray, A., et al., *Safety and tolerability of zoster vaccine in adults ≥ 60 years old*, Human Vaccines (2011).

[7] The Vaccine Safety Datalink (VSD) is a collaborative project between CDC's Immunization Safety Office and several health care organizations.  VSD evaluates and monitors the safety of a wide variety of vaccines, including Zostavax.

[8] *See* Tseng H.F., et al. *Safety of zoster vaccine in adults from a large managed-care cohort: a Vaccine Safety Datalink study*, J. Int. Med. (2012).

shingles potentially caused by the attenuated varicella zoster virus contained in Zostavax.[9]  Instead, cases of shingles following vaccination are generally the result of a natural reactivation of VZV that is unrelated to the vaccine.  One in three people in the United States will develop shingles in their lifetime (approximately one million people per year in the U.S.) and Zostavax is not 100% effective in preventing its development.[10]

Despite the established safety record for Zostavax, and despite the clear statements on the Zostavax label regarding its efficacy and potential side effects, plaintiffs in the Subject Actions allege that they were injured by the attenuated form of VZV contained in the vaccine.  Merck intends to defend against each of the Subject Actions, and, given the facts and issues regarding Merck's knowledge and conduct common to each of them, can do so most efficiently in a coordinated pretrial proceeding.

## II.  LITIGATION BACKGROUND AND STATUS

The first of the Subject Actions, *Dotter et al., v. Merck et al.*, No. 2:16-cv-04686 (E.D. Pa.) was filed on August 29, 2016.  The most recently filed Subject Action, *Kelly v. Merck et al.*, No. 6:18-cv-00604 (M.D. Fla.) was filed on April 18, 2018.  Currently, there are 57 Subject Actions pending in federal courts, involving 117 plaintiffs.  The Subject Actions are pending in nine federal districts before 21 different judges: the Eastern and Western Districts of Pennsylvania; the District of New Jersey; the Northern, Middle, and Southern Districts of Florida; the Eastern District of New York; the Eastern District of Wisconsin; and the District of Massachusetts.  The following

---

[9] *See* Tseng H. et al., *Herpes Zoster Caused by Vaccine-Strain Varicella Zoster Virus in an Immunocompetent Recipient of Zoster Vaccine*, Clinical Infectious Disease (2014).

[10] The Zostavax labeling has, at all times since its initial FDA approval, stated that "[v]accination does not result in protection of all vaccine recipients."  The labeling further states that "[t]he duration of protection beyond 4 years after vaccination with ZOSTAVAX is unknown.  The need for revaccination has not been defined."  *Id.*  Zostavax Label, *available at* https://www.fda.gov/downloads/biologicsbloodvaccines/vaccines/approvedproducts/ucm132831.pdf.

counsel represent plaintiffs in the Subject Actions: Marc J. Bern & Partners LLP (29 Subject Actions on behalf of 89 plaintiffs); Sadaka Associates LLC (17 Subject Actions on behalf of 17 plaintiffs),[11] Napoli Shkolnik (10 Subject Actions on behalf of 10 plaintiffs); and Aaronson & Associates P.C. (one Subject Action on behalf of one plaintiff). Regardless of the jurisdiction or plaintiffs' counsel, these Subject Actions contain common factual allegations, common defendants, and common injuries. Further, significant amounts of discovery remain in all cases.

A. **Common Factual Allegations.**

Plaintiffs in the Subject Actions allege that they were injured by the live, attenuated virus contained in Zostavax. *See, e.g.,* Compl., *Hiram v. Merck et al.*, No. 1:18-cv-00051 (Doc. 24) ¶ 69 (N.D. Fla.) ("Under-attenuated live virus creates an increased risk of developing the disease the vaccine was to prevent."); Compl., *Bockus v. Merck et al.*, No. 8:18-cv-00715 (Doc. 1) ¶ 27 (M.D. Fla.) (same allegation as *Hiram*, despite different plaintiff's counsel and different alleged injury). Plaintiffs uniformly allege that Merck marketed Zostavax without adequate warnings concerning the potential adverse events that could result from using a live, attenuated vaccine. *See, e.g.,* Compl., *Elmegreen v. Merck et al.*, No. 2:17-cv-02044 (Doc.1) ¶ 57 (E.D. Pa.) ("Merck failed to exercise due care in the labeling of Zostavax and failed to issue to consumers and/or their healthcare providers adequate warnings as to the risk of serious bodily injury, including viral infection, resulting from its use."); Compl., *Albisano et al., v. Merck et al.*, No. 2:18-cv-00365 (Doc. 1-3) ¶ 140 (E.D.N.Y) ("Merck failed to adequately warn the medical community and consumers of the product, including the Plaintiffs and their healthcare providers, of the dangers and risk of harm associated with the use and administration of its ZOSTAVAX vaccine."); Compl.,

---

[11] In one case pending in the Eastern District of Pennsylvania, Sadaka Associates LLC's motion to withdraw as counsel was granted and thus plaintiff is proceeding *pro se* as of this filing. *See* Order, April 19, 2018, *Rodriguez v. Merck et al.*, No. 2:17-cv-00485 (Doc. 39) (E.D. Pa.).

*Brown et al., v. Merck et al.*, No. 3:18-cv-02460 (Doc. 1) ¶ 77 (D.N.J.) (same as *Albisano*, despite different plaintiffs' counsel).

Plaintiffs also allege that Zostavax was defectively designed. *See, e.g.,* Compl., *Erickson v. Merck et al.*, No. 5:17-cv-00562 (Doc. 64) ¶ 128 (M.D. Fla.) ("Merck knew, or should have known, that consumers, such as the Plaintiff, would foreseeably suffer injury as a result of Merck's failure to exercise ordinary care in their design of ZOSTAVAX."); Compl., *Jones et al., v. Merck et al.*, No. 5:18-cv-00144 (Doc. 1) ¶ 64 (M.D. Fla.) ("Merck knew and had reason to know that its Zostavax vaccine was inherently defective and unreasonably dangerous as designed, formulated, and manufactured by Merck.").

The allegations, therefore, all concern the same basic facts insofar as they pertain to Merck's design, development, marketing, and monitoring of Zostavax.

### B. Common Defendants.

Merck, as the sole manufacturer of Zostavax, is a named defendant in all of the Subject Actions. In addition to Merck, some plaintiffs in the Subject Actions name McKesson Corporation ("McKesson") as a defendant. McKesson supports consolidation of the Subject Actions. McKesson serves as a distributor of Zostavax and is commonly alleged to have been an alter ego of Merck and therefore jointly and severally liable for all damages alleged to have been caused by Merck. *See, e.g.*, Compl., *Everts et al., v. Merck et al*., No. 2:18-cv-00020 (Doc. 1-1) ¶ 27 (E.D. Wi.) (alleging that "any individuality and separateness between them has ceased and these particular Defendants are alter egos"). As such, the same facts alleged against Merck are also alleged against McKesson.[12] No other defendants are named in the Related Cases.

_____

[12] McKesson is a common defendant in pharmaceutical product liability litigation and is therefore routinely included in consolidated proceedings. *See, e.g., In re Eliquis (Apixaban Prods. Liab. Litig.,* 282 F. Supp. 3d 1354 (J.P.M.L. 2017) (including McKesson in consolidated proceedings); *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378 (J.P.M.L. 2015) (same).

## C.    Common Alleged Injuries.

All of the plaintiffs in the Subject Actions allege that, at some point after the FDA approved Zostavax, they were vaccinated and thereafter experienced an injury.  All plaintiffs likewise allege that their injuries were caused by the live, attenuated virus contained in the vaccine  *See, e.g.*, Compl., *Deker v. Merck et al.,* No. 8:18-cv-00650 (Doc. 22) ¶¶ 8, 69 (M.D. Fla.) (alleging shingles and that "[u]nder-attenuated live virus creates an increased risk of developing the disease the vaccine was to prevent"); Compl., *Pinkstaff et al., v. Merck et al.*, No. 3:17-cv-12212 (Doc. 1) ¶ 26, 46 (D.N.J.) (same);  Compl., *Dotter et al. v. Merck et al.*, No. 2:16-cv-04686 (Doc. 1) ¶¶ 30, 51 (alleging herpes encephalitis and that "[o]nce injected, attenuated live virus has been shown to recombine into more virulent strains causing disease").  The factual investigation in all cases, therefore, will focus on the same issue of Merck's knowledge that the live, attenuated, strain of VZV used in Zostavax could cause plaintiffs' injuries and whether Merck had a duty to adjust its warnings accordingly.

## D.    Common Procedural Status.

As noted above, the first Subject Action was filed in August 2016 and the most recent filing was in April 2018.  The majority of the Subject Actions (38) were filed in 2017, but already in 2018, 18 additional actions have been filed.  Merck has no reason to believe that the pace of filings will slow in the immediate future.  Although the earlier-filed Subject Actions pending in the Eastern District of Pennsylvania have progressed the furthest thus far, significant discovery remains in all cases.  A brief summary of the current status of the Related Cases follows.

There are currently seven Subject Actions, involving a total of seven plaintiffs, pending in the Eastern District of Pennsylvania.  All of these cases are before the Honorable Harvey Bartle III.  Thus far in discovery, Merck has begun to depose plaintiffs and their relevant medical providers, as well as to collect plaintiffs' medical records.  In response to plaintiffs' discovery

requests, Merck has produced nearly 200,000 company documents. In addition, plaintiffs have noticed the depositions of four Merck witnesses. To date, no depositions of Merck company witnesses have taken place and expert discovery has not begun.[13] According to the scheduling orders currently in effect in the Subject Actions pending in the Eastern District of Pennsylvania, the parties shall complete fact discovery in some cases by May 31, 2018, and expert discovery by October 31, 2018. *See, e.g.*, Order (Doc. 43), *Dotter et al., v. Merck et al.*, No. 2:16-cv-04686 (E.D. Pa.). In other cases, fact discovery must be completed by June 29, 2018, and expert discovery by November 30, 2018. *See, e.g.*, Order (Doc. 34), *Molouki v. Merck et al.*, No. 2:17-cv-01983 (E.D. Pa.).

There are currently 27 Subject Actions, involving 28 plaintiffs, pending in United States District Courts in Florida. These cases are before 13 different judges. Twenty-one cases are pending in the Middle District of Florida, four cases are pending in the Northern District of Florida, and two cases are pending in the Southern District of Florida. These cases are all in the very early stages of discovery and no depositions have taken place thus far. Initial scheduling orders have been entered in 16 cases, with trial dates set in 2019 and 2020. There are 21 motions to dismiss pending in these cases, in which Merck argues, *inter alia*, that plaintiffs have not pled their fraud-related claims with the particularity required by Rule 9(b). Those motions, which are substantively identical, are pending before eight different judges.

There are currently five Subject Actions, involving 64 plaintiffs, pending in the Eastern District of New York before two different judges. Discovery has not yet begun in these cases and there are currently three motions to dismiss pending before the Honorable Joseph F. Bianco. These

---

[13] It bears noting that although the cases currently pending in the Eastern District of Pennsylvania are the earliest-filed cases, current plaintiffs' counsel, Sadaka Associates LLC, only assumed responsibility for the cases in September 2017.

motions make nearly identical arguments as those currently pending in the Florida Subject Actions. Merck also intends to move to dismiss the fraud-related claims in the other two Related Cases pending in the Eastern District of New York, one of which is before Judge Bianco and the other of which is before the Honorable Sandra J. Feuerstein.

There are currently 15 Subject Actions, involving 15 plaintiffs, pending in the District of New Jersey before two different judges.  These cases are all in the very early stages of discovery and no depositions have taken place.  Scheduling orders have been entered in four cases, but no trial dates have been set thus far.

There is currently one Subject Action pending in each of the Eastern District of Wisconsin, the District of Massachusetts, and the Western District of Pennsylvania.  Discovery has not yet begun in these cases.  However, motions to dismiss plaintiffs' fraud-related claims are pending in each case, and those motions are substantively identical to the pending motions to dismiss in Florida and New York courts.

In sum, the Subject Actions are in the relatively early stages of fact discovery.  Although Merck has begun to pursue discovery from many plaintiffs, thus far no Merck witness depositions have taken place.  In addition, expert discovery has not yet begun and trials are not expected to commence for at least another year.  However, the parties are on the precipice of receiving potentially conflicting orders with respect to Merck's motions to dismiss plaintiffs' fraud-related claims.  Currently, there are 27 substantively identical motions to dismiss pending before 13 different judges.

### E.    State Court Zostavax Litigation Has Been Consolidated at Plaintiffs' Counsel's Request.

Although not subject to this Motion, there are currently 57 Zostavax product liability

actions pending in state courts in New Jersey, California, and Florida.[14]  The allegations, claims, and injuries in the state court actions are largely the same as those in the Subject Actions.  Counsel for plaintiffs have moved to consolidate for pretrial proceedings those cases in New Jersey and California.  In California, plaintiffs' firm Marc J. Bern & Partners LLP filed a petition for coordination on January 5, 2018.  In that petition, plaintiffs' counsel argued that coordination was appropriate because the cases "all contain claims against the same and/or affiliated defendant entities under the same causes of action, which include substantially overlapping facts and legal theories involving product liability actions arising from injuries the plaintiffs received after they were injected with the ZOSTAVAX vaccine." Exhibit 1, Petition for Coordination ¶ 2, *Haladjian et al. v. Merck et al.*, No. BC674554 (Sup. Ct. Cal., Jan. 5, 2018).  In addition, plaintiffs' counsel argued that coordination would "advance the convenience of the parties, witnesses, and counsel" and would help "avoid the risk of duplicative and inconsistent rulings, orders and judgments."  *Id.*  The California court agreed and granted the petition on February 23, 2018.  *See* Exhibit 2, Notice of Granting of Petition for Coordination and Notice of Order as to the Scope of the Stay Pending Coordination, Zostavax Product Cases, JCCP 4962 (Sup. Ct. Cal., Mar. 7, 2018).  There are currently 10 Zostavax cases involving 260 plaintiffs subject to this coordination order.

In New Jersey state court, both Marc J. Bern & Partners LLP and Sadaka Associates LLC petitioned the court to consolidate pending Zostavax cases for pretrial proceedings.  *See* Exhibit 3, Letter from Mark T. Sadaka, Esq. to Ms. Taironda E. Phoenix, Administrative Office of the Courts (Feb. 15, 2018); Exhibit 4, Letter from Thomas J. Joyce, Esq. to Hon. Glenn A. Grant, Administrative Office of the Courts of the State of New Jersey (Mar. 6, 2018).  Counsel for Sadaka

---

[14] With respect to the single case pending in Florida state court, Merck is currently assessing whether it can be removed to federal court.  If it were to be removed, that case, involving seven plaintiffs, would be subject to any Transfer Order by this Court.

Associates LLC argued that a "mass tort . . . is warranted at this time because a large number of parties have presented themselves with claims that have common, recurring issues of law and fact that are associated with Merck's Zostavax vaccine."  In addition, plaintiff's counsel argued that "the number of Plaintiffs will only grow as more people realize they have been injured by Merck's Zostavax vaccine."  Likewise, counsel for Marc J. Bern & Partners LLP argued that "[a]ll pending Zostavax Litigation cases involve hundreds of claims with common, recurrent issues of law and fact that are associated with a single product."  Plaintiffs' counsel further argued that there was a "high degree of commonality" because all plaintiffs were allegedly injured by the same vaccine and all alleged the same causes of action.  Plaintiffs' counsel also argued that consolidation would promote efficiency and fairness by avoiding "inconsistent rulings on substantively identical issues of law and/or fact."  Plaintiffs' counsel also noted that his firm "anticipate[s] filing significant additional" cases.  The Court has not yet ruled on Plaintiffs' petition for Multicounty Litigation designation in New Jersey.

As is demonstrated by these petitions in New Jersey and California, there is no dispute between counsel for the parties that Zostavax product liability cases involve common questions of fact and that coordination would be fair and promote efficiency.

## III.   <u>ARGUMENT</u>

The Subject Actions, along with future tag-along actions, should be transferred and consolidated for pretrial coordination.  The Subject Actions would benefit substantially from coordinated pretrial proceedings because they involve product liability claims related to the design, testing, regulatory approval, manufacture, and marketing of the same product–Zostavax–and therefore present many complex, common questions of fact.  Coordination will minimize the risk of duplicative discovery, prevent inconsistent pretrial rulings (including on currently pending motions), and conserve the resources of the parties, their counsel, and the courts.  For the reasons

discussed below, Judge Moody's court in the Middle District of Florida and Judge Bartle's court in the Eastern District of Pennsylvania are equally appropriate venues for the Zostavax multidistrict litigation ("MDL").[15]

### A.    Coordination Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Zostavax Litigation.

28 U.S.C. § 1407(a) authorizes the coordination and consolidation of civil actions pending in different federal district courts, when (1) the "actions involv[e] one or more common questions of fact;" (2) transfer "will be for the convenience of parties and witnesses;" and (3) transfer "will promote the just and efficient conduct of such actions."  This Panel has frequently found that the consolidation and coordination of product liability actions involving FDA-approved products is appropriate under Section 1407, including in litigation with the same or fewer pending cases than here.  *See, e.g.*, *In re Eliquis (Apixaban) Prod. Liab. Litig.*, 282 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017) (consolidating 34 actions pending in 13 districts related to an anticoagulant medication); *In re: Benicar (Olmesartan) Prods. Liab. Litig.*, 2015 WL 1518503, at *1 (J.P.M.L. Apr. 3, 2015) (consolidating 15 actions related to a prescription drug alleged to have caused gastrointestinal injuries); *In re Tylenol Mktg., Sales Practices & Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) (consolidating 27 actions with allegations that Tylenol can cause liver damage); *In re Effexor (Venlafaxine Hydrochloride) Prods. Liab. Litig.*, 959 F. Supp.2d 1359 (J.P.M.L. 2013) (consolidating nine prescription drug products liability actions pending in five districts); *In re Zoloft Prods. Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) (consolidating 57 prescription drug products liability actions and noting that "[c]entralized proceedings have helped

---

[15] Based on the preliminary information alleged in plaintiffs' complaints and/or produced to date in discovery, Merck considers the Subject Actions to be appropriate for pretrial coordination. Different factors will apply, different considerations will apply, and additional plaintiff-specific information will be relevant at the trial stage.  In filing this petition, Merck maintains its position that multi-plaintiff trials would be inappropriate in these cases.

to efficiently resolve dockets involving far fewer than 'thousands' of claims, even in cases involving drug-related products liability claims"); *In re: NuvaRing Prods. Liab. Litig.*, 572 F. Supp. 2d 1382 (J.P.M.L. 2008) (consolidating 11 actions related to the marketing and use of a contraceptive product).  The Panel should do the same here, where the Subject Actions satisfy each of the requirements of 28 U.S.C. § 1407(a).

### 1.     The Subject Actions Share Numerous Common Questions of Complex, Material Fact.

As discussed above, the complaints in the Subject Actions contain common allegations regarding Merck's failure to warn of the risks associated with the live, attenuated strain of VZV contained in Zostavax.  Discovery in the Subject Actions will necessarily involve investigation of issues common to all cases, such as Merck's research and development of Zostavax, its labeling of the vaccine, and its monitoring of safety issues.  In granting transfer orders in product liability actions related to FDA-approved products, the Panel recognizes that "[i]ssues concerning the development, manufacture, regulatory approval, labeling, and marketing of the drugs thus are common to all actions."  *In re: Benicar (Olmesartan) Prods. Liab. Litig.*, 96 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015); *see also In re Chantix (Varenicline) Prods. Liab. Litig.*, 655 F. Supp. 2d 1346, 1346 (J.P.M.L. 2009) ("All 37 actions share factual issues regarding, *inter alia*, Pfizer's design, testing, manufacture, and marketing of Chantix.").

In addition, plaintiffs in the Subject Actions commonly allege injuries related to VZV and as such these cases will benefit from coordination.  *See In re: Lipitor (Atorvastatin Calcium) Mktg., Salespractices & Prods. Liab. Litig. (No. II),* 997 F. Supp. 2d 1354, 1356–57 (J.P.M.L. 2014) (consolidating cases that "share factual issues arising from common allegations that taking Lipitor can cause women to develop type 2 diabetes"); *In re: Nexium (Esomeprazole) Prods. Liab. Litig.*, 908 F. Supp. 2d 1362, 1364 (J.P.M.L. 2012) (consolidating actions with the common allegation

that a drug caused "bone-related injuries such as osteoporosis, bone deterioration or loss, and broken bones"). Variances in the types of alleged VZV-related injuries do not prevent consolidation, as "a complete identity or even majority" of common questions of fact are not required to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004). Particularly in products liability litigation, the Panel acknowledges that plaintiff-specific questions of causation are not an impediment to centralization where common questions of fact predominate." *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014) ("Almost all personal injury litigation involves question of causation that are plaintiff-specific."); *In re: Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014) ("The Panel has rejected the argument that products liability actions must allege identical injuries to warrant centralization."); *In re: Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) (ordering coordination and noting that "while the specific [injuries] alleged vary somewhat among the plaintiffs, all actions will share discovery relating to general medical causation; factual discovery will overlap concerning Pfizer's research, testing, and warnings; and expert discovery and *Daubert* motions will overlap to some degree").

### 2.    Transfer Will Serve the Convenience of the Parties.

This Panel has consistently recognized that centralization benefits both plaintiffs and defendants by reducing discovery delays and costs, and allowing plaintiffs' counsel to coordinate their pretrial efforts. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("[I]t is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."). The issues of fact that are common to all of the

Subject Actions mean that the same witnesses (both fact and expert) and documents will be relevant to all cases.  Coordination will allow the parties to streamline discovery such that witnesses need not be deposed repeatedly and discovery disputes need not be endlessly re-litigated in each individual action.  Instead, depositions and discovery requests can be negotiated in a universal manner, saving the parties time, money, and unnecessary frustration.  *See In re: Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1372 (J.P.M.L. 2011) ("[P]rudent counsel likely will combine their forces and apportion their workload in order to streamline the efforts of the parties, their counsel and the judiciary.").

### 3.    Transfer Will Promote the Just and Efficient Conduct of the Subject Actions.

Finally, coordination will "promote the just and efficient conduct" of the Subject Actions. 28 U.S.C. § 1407(a).  In addition to eliminating duplicative discovery, consolidation will prevent inconsistent pretrial rulings.  *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary."); *In re: Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369, 1369 (J.P.M.L. 2010) ("We see substantial benefits for judicial economy and more consistent rulings as a consequence of centralization.").  As noted above, there are currently 27 motions to dismiss pending before 13 different judges, all of which address an identical issue in a near identical manner.  As the Zostavax litigation proceeds, there will undoubtedly be more legal issues common to all cases that require the parties to seek judicial intervention.  Without coordination, it is nearly inevitable that the parties will receive differing orders on similar or identical issues, leading to inefficiencies as the parties are required to proceed in different ways in different jurisdictions.  For example, it is likely that the parties will retain the same experts in multiple

Subject Actions.  Multiple federal judges will therefore likely receive similar or identical *Daubert* motions seeking to exclude these witnesses.  Not only is this inefficient, but it may also lead to inconsistent rulings on a key aspect of the litigation.  *See In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, 176 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016) ("Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* and other issues, and conserve the resources of the parties, their counsel, and the judiciary.").

In sum, coordination of the Related Cases will serve the convenience of the parties, eliminate costly and duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the courts, the parties, and their counsel.  For all these reasons, Merck's motion to transfer and coordinate should be granted.

**B.    The Subject Actions Should Be Transferred to Either the Honorable James S. Moody in the Middle District of Florida or the Honorable Harvey Bartle III in the Eastern District of Pennsylvania.**

There are two, equally appropriate venues for this coordinated proceeding: Judge Moody's court in the Middle District of Florida and Judge Bartle's court in the Eastern District of Pennsylvania.  Both judges have considerable experience with the Zostavax litigation and with the management of coordinated proceedings involving pharmaceutical products.  The Panel considers a number of factors in determining the most appropriate transferee court, including: (a) the convenience and location of the parties, witnesses, and documents; (b) the experience of the district and judge in overseeing MDLs; (c) the location of earlier-filed Subject Actions and the relative degree of progress achieved in pending actions; and (d) the agreement of the parties.

First, both the Middle District of Florida and the Eastern District of Pennsylvania are convenient to the parties.   The Middle District of Florida is a sensible location because the largest number of Subject Actions are pending in Florida federal courts, and specifically in that district. *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (selecting the transferee

15

district with "the majority of pending actions"). As noted above, there are 26 Subject Actions in Florida, with 20 pending in the Middle District of Florida. Moreover, 27 plaintiffs – more than 23% of the plaintiffs in the Subject Actions – reside in Florida. Tampa is also easily accessible to the parties and witnesses because of the nearby major international airport, which is only 15 minutes from the courthouse. *See In re: Auto Body Shop Antitrust Litig.,* 37 F. Supp. 3d 1388, 1391 (J.P.M.L. 2014) (selecting the Middle District of Florida for MDL proceedings because "it is easily accessible for th[e] nationwide litigation").

Likewise, the Eastern District of Pennsylvania is convenient because of its location. It is both geographically close—approximately 80 miles away—and easily accessible to Merck's headquarters and other relevant facilities. The Merck employees responsible for the development, manufacturing, labeling, and marketing of Zostavax all work at Merck's facilities in Pennsylvania and New Jersey. Thus, the Merck witnesses relevant to this litigation are located in close proximity to the Eastern District of Pennsylvania. *See, e.g.*, *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.,* 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) (transferring to the Eastern District of Pennsylvania where defendants were based in New Jersey and Pennsylvania because "many of defendants' witnesses and documents are likely to be found in or near" there). Moreover, for counsel, parties, and witnesses traveling from other jurisdictions, Philadelphia is served by a major international airport and offers plentiful accommodations. *See In re Impulse Monitoring, Inc. Aetna Intraoperative Monitoring Servs. Claims and ERISA Litig.*, 53 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (finding that Eastern District of Pennsylvania was a "readily accessible district" in which to centralize the multidistrict litigation).

Second, the earliest Subject Actions, including the first-filed, were filed in the Middle District of Florida and the Eastern District of Pennsylvania. The first three Florida Subject Actions

were filed on August 21, 2017 in the Middle District, meaning that they were filed before any Subject Actions in New Jersey, Wisconsin, New York, Massachusetts, or the Western District of Pennsylvania. These cases represent the full scope of the litigation, as they include cases with all defendants named in the Subject Actions and multiple alleged injuries. Although these cases are in the early stages of discovery, Judge Moody has familiarity with the issues through the three motions to dismiss that are pending in his court. Judge Moody has already issued two opinions deciding motions to dismiss filed by Merck and co-defendant McKesson.[16] *See In re: MI Windows & Doors, Inc. Prods. Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012) (selecting a transferee district because "[o]ne of the earliest filed . . . actions [wa]s pending in that district" and the judge was "familiar with the litigation"); *In re: Refco Sec. Litig.*, 530 F. Supp. 2d 1350, 1351 (J.P.M.L. 2007) (selecting a transferee court because "the judge to whom we are assigning this litigation has already developed familiarity with the issues present in this docket as a result of presiding over motion practice and other pretrial proceedings in the actions pending before him").

Similarly, Judge Bartle is familiar with the litigation because the first-filed Subject Action is pending in his court and the Subject Actions in his Court have progressed the furthest. Judge Bartle has decided 11 motions to dismiss[17] and two motions for summary judgment.[18] The cases before Judge Bartle are the only Subject Actions in which Merck has produced documents and they are the only Subject Actions in which any depositions have taken place. Thus far, Merck has

---

[16] *See* Order, *Erickson v. Merck & Co., Inc.*, No. 5:17-cv-00562 (Doc. 43); Order, *Erickson v. Merck & Co., Inc.*, No. 5:17-cv-00562 (Doc. 61) (M.D. Fla.).

[17] *See Bentley v. Merck & Co., Inc.*, 2017 WL 2349708, at *2 (E.D. Pa. May 30, 2017) (dismissing, with prejudice, ten Zostavax claims); *Bloom v. Merck & Co., Inc.*, No. 2:17-cv-01789 (Doc. 16) (E.D. Pa. May 31, 2017) (dismissing, with prejudice, similar fraud claim alleged in eleventh Zostavax case).

[18] *See Juday v. Merck & Co., Inc.*, 2017 WL 1374527 (E.D. Pa. Apr. 17, 2017), *aff'd sub nom. Juday v. Merck & Co., Inc*., 2018 WL 1616863 (3d Cir. Apr. 4, 2018); Order (Doc. 42), *Billeci et al., v. Merck et al.*, No. 2:17-cv-00486 (E.D. Pa.).

taken 46 depositions of plaintiffs and medical providers in Subject Actions pending in the Eastern District of Pennsylvania.  *See In re Wholesale Grocery Prod. Antitrust Litig.*, 663 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) (selecting transferee court because "the first-filed action is pending there, and pretrial proceedings in that action have proceeded efficiently"); *In re GMAC Ins. Mgmt. Corp. Overtime Pay Litig.*, 342 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) (selecting transferee court because "the first-filed and most advanced action is pending there").

Third, both the Middle District of Florida and the Eastern District of Pennsylvania have significant experience handling multidistrict litigation involving pharmaceutical products liability actions.  *See, e.g.*, *In re Seroquel Prods. Liab. Litig.*, 447 F. Supp. 2d 1376 (J.P.M.L. 2006) (centralized in the Middle District of Florida); *In re Effexor Prods. Liab. Litig.*, 959 F. Supp. 2d 1359 (J.P.M.L. 2013) (centralized in the Eastern District of Pennsylvania); *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013) (same).  Both judges have also personally managed large-scale pharmaceutical products liability MDLs.  Judge Moody presided over *In re: Accutane (Isotretinoin) Products Liability Litigation* (MDL No. 1626), and Judge Bartle presided over *In Re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation* (MDL No. 1203), a coordinated litigation involving thousands of Subject Actions.  Thus, there is no question that Judge Moody and Judge Bartle, as well as their respective courts, are more than capable of managing the efficient coordination of the Subject Actions here.  *See, e.g.*, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) (transferring actions to an experienced MDL judge, who "deftly presided" over "another large pharmaceutical products liability litigation").

Finally, the parties' counsel has conferred and come to partial agreement on the appropriate forum. Merck and McKesson agree that either the Middle District of Florida or the Eastern District of Pennsylvania, before Judge Moody or Bartle, respectively, would be an appropriate venue for the coordinated proceeding. Sadaka Associates LLC, representing plaintiffs in 17 Subject Actions, agrees that the Eastern District of Pennsylvania (before Judge Bartle) would be a suitable venue. *See, e.g.*, *In re Vytorin/Zetia Mktg., Sales Practices & Prods. Liab. Litig.*, 543 F. Supp. 2d 1378, 1380 (J.P.M.L. 2008) (selecting transferee district because, among other reasons, it "enjoys the support of defendants and several plaintiffs"); *In re SFBC Int'l, Inc., Secs. & Derivative Litig*, 435 F. Supp. 2d 1355, 1356 (J.P.M.L. 2006) (transferring to the District of New Jersey because it was "preferred transferee forum of several responding parties"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 435 F. Supp. 2d 1342, 1344 (J.P.M.L. 2006) (transferring the docket to the Eastern District of New York because it "enjoys the support of numerous parties to this litigation").

### C. In the Alternative, Merck Proposes Coordination before the Honorable Joseph F. Bianco.

In the alternative, Merck requests that the Subject Actions be transferred to Judge Bianco in the Eastern District of New York. There are currently four Subject Actions, involving 53 plaintiffs, pending before Judge Bianco. Judge Bianco is therefore presiding over the largest number of plaintiffs in the Zostavax federal litigation, and nearly half of all the plaintiffs in the Subject Actions. Moreover, the Eastern District of New York is clearly a convenient location to the parties, as all plaintiffs' counsel in the Subject Actions are based in the region, and defense counsel maintains an office in New York City. Merck's headquarters and relevant facilities are also located within the region. In addition to being close to three major international airports in the New York City area, Central Islip maintains its own airport within 15 minutes of the courthouse and is thus easily accessible to parties and witnesses from other jurisdictions.

## <u>CONCLUSION</u>

For the reasons set forth above, Merck requests that this Panel transfer the Subject Actions

for coordinated pretrial proceedings before Judge James S. Moody in the Middle District of Florida

or to the Eastern District of Pennsylvania, before Judge Harvey Bartle III.

Dated: April 20, 2018

<div style="margin-left: 40%;">

Respectfully submitted,

**VENABLE LLP**

/s/ Michaela F. Roberts
Michaela F. Roberts
Dino S. Sangiamo
Christopher J. Conoscenti
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Tel.: 410-244-7400
Fax: 410-244-7742
mfroberts@venable.com

*Attorneys for Defendants Merck & Co., Inc.
and Merck Sharp & Dohme Corp.*

</div>