# EXHIBIT DD

1              SUPERIOR COURT OF CALIFORNIA

2                COUNTY OF LOS ANGELES

3     BEFORE THE HONORABLE JAY H. FORD, III, JUDGE PRESIDING

4                DEPARTMENT NUMBER O

5                    ---oOo---

6    HAYDEN SHAIN,                    )
                                      )
7              Plaintiff,            )    **Case No. 21STCV35340**
                                      )
8    vs.                             )
                                      )
9    MERCK & CO., INC., a New        )
     Jersey Corporation; MERCK       )
10   SHARP & DOHME CORP., a New      )
     Jersey Corporation; PROVIDENCE  )
11   ST. JOSEPH HEALTH NETWORK, a    )
     California Corporation; ALISA   )
12   A. BROMBERG, M.D., and DOES 1   )
     through 50, inclusive,          )
13                                    )
               Defendants.           )    **Pages 1 - 22**
14   _____)

15

16

17   **Stenographic Reporter's Transcript of Remote Proceedings**

18                Thursday, May 12, 2022

19

20

21   Stenographically Reported by:

22   Kelly L. Shainline,
     CSR No. 13476, RPR, CRR
23   Stenographic Court Reporter

24

25

                                                              1

CERTIFIED COPY

Bryce Reporting Services
(510) 828-9404
info@brycereporters.com

1    **APPEARANCES OF COUNSEL**:   (All via Remote)

2    For Plaintiff:

3          BAUM HEDLUND ARISTEI & GOLDMAN PC
           10940 Wilshire Boulevard, 17th Floor
4          Los Angeles, California 90024
           (310) 207-3233
5          **BY:  BIJAN ESFANDIARI, ATTORNEY AT LAW**
               besfandiari@baumhedlundlaw.com

6

7    For Defendants Merck & Co., Inc., and Merck Sharp &
     Dohme Corp.:

8

9          MORGAN, LEWIS & BOCKIUS LLP
           300 South Grand Avenue, 22nd Floor
10         Los Angeles, California 90071
           (213) 612-2500
11         **BY:  DEANNE MILLER, ATTORNEY AT LAW**
               deanne.miller@morganlewis.com

12

13   For Defendants Providence Health System - Southern
     California, erroneously sued and served as Providence
14   St. Joseph Health Network and Providence Saint John's
     Medical Foundation dba Saint John's Physician Partners:

15

16         DAVID WEISS LAW
           11340 W. Olympic Boulevard, Suite 100
17         Los Angeles, California  90064
           (310) 575-9566
18         **BY:  KELLY L. KISESKEY, ATTORNEY AT LAW**
               kiseskeyk@djwlaw.com

19

20   For Defendant Alisa A. Bromberg, M.D.:

21         LAW + BRANDMEYER, LLP
           2 North Lake Avenue, Suite 820
22         Pasadena, California  91101
           (626) 243-5500
23         **BY:  RYAN TROY COX, ATTORNEY AT LAW**
               rcox@lawbrandmeyer.com

24

25

                                                        2

| | |
|---|---|
| 1 | <u>Thursday, May 12, 2022</u>                                      <u>8:36 a.m.</u> |

2                        **P R O C E E D I N G S**

3                              ---oOo---

4              **THE COURT:**  Good morning, everyone.  Welcome

5    to Department O.

6              As I call the cases, I will state your name

7    and ask you to state your appearance.

8              Let me start with number one, Hayden Shain

9    versus Merck & Co.

10             Can the court reporter hear me?

11             **STENOGRAPHIC COURT REPORTER:**  Yes, Your Honor.

12             **THE COURT:**  Deanne Miller, state your

13   appearance.

14             **ATTORNEY MILLER:**  Yes.  Good morning.  Deanne

15   Miller from Morgan Lewis for the Merck defendants.

16             **THE COURT:**  Kelly Kiseskey.

17             You're still muted, Ms. Kiseskey.

18             **ATTORNEY KISESKEY:**  Good morning, Your Honor.

19             Kelly Kiseskey, David Weiss Law, on behalf of

20   defendants Providence Health System Southern California

21   and Providence Saint John's Medical Foundation dba Saint

22   John's Physician Partners.

23             **THE COURT:**  And Bijan Esfandiari.

24             **ATTORNEY ESFANDIARI:**  Good morning,

25   Your Honor.  Bijan Esfandiari on behalf of the

3

1    plaintiff, Hayden Shain.

2              **THE COURT:**  And Ryan Troy Cox.

3              **ATTORNEY COX:**  Yes.  Good morning, Your Honor.

4    Ryan Cox on behalf of Dr. Bromberg.

5              **THE COURT:**  Okay.  Thank you for the case

6    management conference statements.

7              I think I want to have -- at least start off

8    with addressing some calendar matters.  But more

9    importantly, I know one of you mentioned, I think it was

10   the plaintiff mentioned that this is related to another

11   case, but I didn't see any notice of related case filed.

12             Mr. Esfandiari, what am I missing?

13             **ATTORNEY ESFANDIARI:**  So, Your Honor, this

14   case, there are four other similar Gardasil personal

15   injury cases filed in state courts in

16   Southern California.  One is in Los Angeles, one is in

17   Ventura, and two are in Orange County.  No consolidation

18   of any kind has occurred yet.

19             The one in Los Angeles, Robi, that has been

20   pending since 2016.  It was initiated by a different

21   firm --

22             **THE COURT:**  Let me interrupt you.

23             **ATTORNEY ESFANDIARI:**  Absolutely.

24             **THE COURT:**  So in your case management

25   conference, you list it as a related case, but no one's

                                                          4

1    related it yet and no notice of relation has been filed;

2    is that right?

3              ATTORNEY ESFANDIARI:  That is correct,

4    Your Honor.

5              THE COURT:  So what do you want me to do about

6    it?  Are you going to file a notice of related case or

7    just not pursue this?

8              ATTORNEY ESFANDIARI:  I was not planning on

9    it, Your Honor.  These are independent cases.  Unless

10   Your Honor wants me to.

11             THE COURT:  Okay.  They're not related.  Okay,

12   I just wanted to make sure that you confirmed that

13   they're not related for that purpose.

14             In terms of actually managing this case, has

15   there been any effort to try to coordinate them

16   statewide?

17             ATTORNEY ESFANDIARI:  Statewide, no.

18   Federalwide, yes.  There's an MDL petition pending, Your

19   Honor.  We should have a hearing on July 28th.

20             THE COURT:  I'm just concerned about the state

21   court.

22             ATTORNEY ESFANDIARI:  Nothing on the state

23   side yet, Your Honor.

24             THE COURT:  And what's your plan?  Is your

25   plan to try to get a bellwether lead case tried and

                                                      5

1    then, from the results of that, focus on the rest of the

2    case or not?

3              **ATTORNEY ESFANDIARI:**  Certainly if an MDL is

4    formed, that is the case.  Right now on the state side,

5    we only have five cases, so the five are manageable.

6    Obviously if things increase, then we may change.

7              But right now I believe the first case up for

8    trial, Your Honor, is the Robi case in Los Angeles, and

9    that is set for trial next year.

10             **THE COURT:**  Yeah, I see it's already got a

11   long cause assignment; is that right?

12             **ATTORNEY ESFANDIARI:**  That was put into the

13   complex division.  I didn't think it belonged there, but

14   yes, it's in the complex court.  It went around to

15   multiple judges, which caused some of the delay.  I

16   don't want to --

17             **THE COURT:**  What's your plan?  Do you want

18   this case to go to trial first or not?

19             **ATTORNEY ESFANDIARI:**  Oh, I'm always happy to

20   get an early trial date, Your Honor.  I would need at

21   least a year, I would imagine, just to get the records

22   of -- you know, and do discovery that we need to do with

23   respect to Merck.  But anything between nine to 12

24   months should be great.

25             **THE COURT:**  I mean, I'm setting out now about

6

1    12 months out.

2         Let me find out who from Merck -- are you the

3    same counsel in all the other cases that are being

4    brought regarding this drug, Ms. Miller?

5         **ATTORNEY MILLER:**  Good morning, Your Honor.

6    Yes, I am one of the counsel that is part of the larger

7    set of cases certainly in California and elsewhere.

8         **THE COURT:**  But in terms of the same firm.  So

9    you're involved in the other cases as well --

10        **ATTORNEY MILLER:**  That's correct.

11        **THE COURT:**  -- or your firm is?

12        **ATTORNEY MILLER:**  That's correct.

13        **THE COURT:**  So I'll confess.  My practice for

14   20 years was business litigation with a mix of all kinds

15   of other stuff, but toxic tort was not my forte.

16        I recently did preside over a priority toxic

17   tort case that involved one plaintiff and 27 defendants.

18   After much adieu, it ultimately ended in being settled

19   among all of them.

20        And I'm curious of what you folks think the

21   prospects are, at this early stage, of settlement,

22   knowing that from my experience most of these cases do

23   get settled.  But I'm not sure what's going on with this

24   drug.

25        What's your view, Ms. Miller?

7

1           **ATTORNEY MILLER:**  Your Honor, this is a

2    vaccine that is at issue, and we believe that the heart

3    of the litigation will focus on causation, among other

4    things.  The science in our view is very, very, very

5    good, supportive of the vaccine.  And so at the

6    appropriate time, we think that *Sargon* motions and

7    motions on causation will be the heart of the case.

8           So to answer your question, prospects for

9    settlement now, short of plaintiff recognizing the

10   science that's behind Gardasil, we don't believe the

11   prospects are there for settlement.

12           **THE COURT:**  You know, given the differing

13   standard for foundation for experts' testimony on

14   summary judgment motion versus trial, do you expect that

15   that motion will be a motion that'll have to be heard at

16   trial?  Or do you think that motion -- that issue can be

17   resolved at summary judgment?

18           **ATTORNEY MILLER:**  We believe it can be

19   resolved at summary judgment and we believe it even

20   could be resolved sooner if we bifurcate causation

21   issues and litigate them first, which is an option to

22   consider as well.

23           **THE COURT:**  But that's a trial.

24           **ATTORNEY MILLER:**  Probably first by motion,

25   right?  Bifurcated.  Tee up issues of causation first,

8

1    do discovery on general causation, and have motion

2    practice on that before proceeding further.  It's an

3    option.  We have discussed it in --

4              **THE COURT:**  So let me --

5              **ATTORNEY MILLER:**  Yeah.

6              **THE COURT:**  Let me get -- Mr. Esfandiari, have

7    you been successful in opposing those kind of motions

8    before?

9              **ATTORNEY ESFANDIARI:**  Yes, absolutely,

10   Your Honor.  The very first case, Robi, was bifurcated.

11   That happened before our firm got involved.  And that

12   bifurcation is the reason that a 2016 case still has not

13   gone to trial.  It just created delay upon delay.  All

14   of the other cases, bifurcation has been rejected.

15             **THE COURT:**  Let me interrupt you because I'm

16   curious.  You know, I've been down this road before with

17   these motions.  If it's a battle of the expert, it's

18   really hard to get a summary judgment motion granted in

19   these kind of cases, from my perspective, but I don't

20   know what the science will show.

21             Let me clue you all in to my style of

22   management.  If the parties come up with a detailed plan

23   for both completion of discovery that is focused on

24   leaning towards a path towards mediation and then

25   thereafter a detailed plan for adjudicating the case in

9

1    some way, whether it's a trial or some other plan of

2    stipulated facts, I am a fan of using the new rule under

3    CC 437c subdivision, I think it's -- I'm not sure which

4    subdivision it is.  It's a new subdivision that allows

5    the parties to stipulate to have me summarily adjudicate

6    something that otherwise would not be summarily

7    adjudicable.  I do entertain that on occasion.  I'm not

8    sure if that applies in this case.

9         But the bottom line is what I'm looking for

10   from you folks before this case explodes, and I'm not

11   suggesting it will, but I suspect it may have the

12   possibility of exploding, is that you come up with a

13   customized case management order, or I like to call it

14   scheduling order, that details out your discovery plan,

15   your law and motion plan, and a trial preparation plan

16   to the extent you can see that far ahead.

17        I do have a few case management rules that you

18   should incorporate into that.  The first is that with

19   respect to the Court's law and motion calendar and

20   reservation system, please do not make any reservation

21   in that system unless you're filing the motion within

22   two days thereafter.  I do not allow people to stockpile

23   or move at their will reservations, and I do cancel

24   reservations that don't comply with that rule.

25        And if that happens to you when you are ready

                                                      10

1    to file a motion, simply call the clerk and we'll revive

2    the reservation number for you so you don't have to pay

3    twice, and then you can get the next available date.

4           If you're looking ahead and say why aren't

5    there any open available reservations for four or five

6    months from now, because we don't allow you to set

7    motions for that far off.  We open them up as we need

8    to.

9           So my backlog right now with summary judgments

10   and demurrers is probably about out four months.  I had

11   it down to three months at one point, almost statutory

12   notice for MSJs, and then I went on vacation and took

13   time off and then people filed more motions.

14           So please keep that in mind when you're

15   anticipating filing a motion.

16           The absence of an available hearing date for a

17   motion that's timely does not extend the deadline to

18   file any motion, in particular for summary judgment

19   motions or otherwise.

20           With respect to discovery disputes, I will

21   require an informal discovery conference to be held

22   before I hear any motion to compel further discovery as

23   well as a motion for protective order to limit

24   discovery.  To arrange for that conference, you simply

25   call the clerk and she'll get that set up for you.

11

1          In some of my larger cases where the parties

2     are unable to meet and confer and resolve their

3     discovery disputes themselves, especially if those

4     disputes go beyond privilege, then I often consider

5     appointing the discovery referee, not to punish the

6     parties, but because simply my backlog of an available

7     time, I cannot devote all my available time to resolving

8     your discovery disputes.

9          My view of discovery is you do not need me to

10    get involved in any discovery disputes unless it

11    involves issues of privilege.  Anything about

12    wordsmithing or quibbling over the scope of a request is

13    something you should be able to handle.  And burdensome

14    is often asserted and rarely proved in terms of

15    something being overly burdensome.  But each case is

16    unique so I'll let you figure out how you want to manage

17    the case.

18          Have you been litigating with each other on

19    these other cases, all of you that are appearing today?

20          **ATTORNEY ESFANDIARI:**  Not all of us,

21    Your Honor.  Ms. Miller and I have.  Obviously the

22    doctor defendants are new.  But Ms. Miller and I have at

23    least a dozen other, if not more, almost 20 other cases

24    with each other.

25          **THE COURT:**  Well, my experience when counsel

12

1    keep working -- opposing the same lawyers, they do learn

2    to work together and without engaging in wars of

3    attrition.  Have you reached that point where you're

4    able to work together without trying to engage in a war

5    of attrition?

6            **ATTORNEY ESFANDIARI:**  The good thing is

7    there's multiple lawyers on each side so when one -- you

8    know, the temperature goes up, others come to cool it

9    down.  So it has been, you know, a nice working

10   relationship, Your Honor.  It hasn't been a, you know,

11   beautiful marriage or anything, but we have been moving

12   forward.

13           **THE COURT:**   I have no objection to aggressive

14   lawyering as long as it's professional and makes sense.

15   All right.  But if I see that this is blowing up, then I

16   will start to micromanage it.  And everybody hates that,

17   including me.

18           So my intention is I can go ahead and get your

19   trial date in the books now.  If you say you already

20   have a plan in place and you know what you're doing and

21   don't need me to force you to put pen to paper to get

22   any scheduling orders down, I would set what I call an

23   ADR discovery status conference six months from now just

24   to check in with you and see where you're at, make sure

25   discovery is proceeding, and finding out whether you've

                                                        13

1     discovered that path towards mediation, because I would

2     expect there to be a mediation held.

3            And my only question for you, Ms. Miller, and

4     the other defense counsel is do you see the wisdom of

5     going to mediation when the risk is greatest, which is

6     before your motions are heard rather than after?  What

7     do you think, Ms. Miller?

8         **ATTORNEY MILLER:**  Your Honor, I think that

9     scheduling mediation after motions are heard would make

10    more sense than before.

11        **THE COURT:**  Okay.  Because that ups the anti

12    if they're denied obviously.  Understood.  I'll let you

13    proceed that way.

14           So that's why I want you to come up with

15    preferably a stipulation and proposed order that I'll

16    sign that'll detail the schedule.  You can make it as

17    detailed as you can or not.  It's not binding.  It could

18    be changed by stipulation.  It could be changed for good

19    cause.  Just make sure that you have a plan, and I'll

20    stay out of your ways while you follow that plan.

21           How soon do you think you could file that --

22    or be prepared to file that proposed order?

23        **ATTORNEY ESFANDIARI:**  Can we do it in about

24    10 days, Your Honor, 10 days to two weeks?  Just given

25    the number of parties.

                                                            14

1          **THE COURT:**  Mr. Esfandiari, that's fine.  What

2    I think I'll do, rather than set the trial date now, I

3    think I'll let you come up with a timetable for the

4    trial based on all the work you're going to do and the

5    discovery and the law and motion.  When you propose the

6    trial date and the ADR conference, like I said, work in

7    an ADR discovery conference with me about six months in,

8    and then if you want to have the trial about 12 to 13

9    months out, that's consistent with my schedule.

10          You can call the clerk and get what will

11   likely be the next available date, and she can give that

12   to you and then just request that date or soon

13   thereafter as the Court can allow in case something

14   changes.

15          The trials are always set on Monday at 10:00.

16   The final status conference is always set on the

17   preceding Monday at 9:30.  And you'll include in that

18   order the Court's order to fully comply with LA Superior

19   Court Local Rule 3.25 subdivisions (f) and (g).

20          How many different defendants are there going

21   to be here?  Have you got them all in the case?

22          **ATTORNEY ESFANDIARI:**  Yes, Your Honor.  I

23   don't believe anyone else is going to be added at this

24   point.

25          **THE COURT:**  All right.  Because when it comes

                                                    15

1    to summary judgment motions -- yeah, okay.  I won't have

2    a problem.  I likely won't combine the summary judgment

3    motions for the hearing date, but I can -- last time I

4    dealt with 27 motions for summary judgment so this will

5    be a piece of cake compared to that.

6          All right.  Anything else you want to discuss

7    with me regarding the Court's case management before I

8    let you go and continue this hearing so you can submit

9    that proposed order?

10         I'll put this hearing out for at least a month

11   or two to make sure that you got the plan squared away

12   and everything signed off.  And if I sign that order,

13   then that'll vacate the next case management conference.

14         **THE CLERK:**  We have a demurrer on June 2nd.

15         **THE COURT:**  Oh, we do have a demurrer on

16   calendar.  That's right.  I was going to move -- so I

17   was going to adjust your calendaring dates.

18         With respect to the demurrer, I was going to

19   talk to you about that because I'm going to move the

20   motion to strike up, I think, to be heard at the same

21   time as the demurrer on June 2nd.  Actually is that --

22   I'm not sure if that still gives you statutory notice.

23         Do you have any objection of me moving that

24   up, Mr. Esfandiari?

25         **ATTORNEY ESFANDIARI:**  Is it just the motion to

16

1    strike, Your Honor?

2            THE COURT:  Well, right now on June 2nd is the

3    demurrer --

4            ATTORNEY ESFANDIARI:  Right.

5            THE COURT:  -- brought by Merck -- no, brought

6    by Dr. Bromberg.

7            ATTORNEY ESFANDIARI:  Right.

8            THE COURT:  The motion -- I'm sorry.  Take it

9    back.

10           If -- this is a demurrer by Merck with a

11   motion to strike.  So maybe I do need to keep those

12   separate.  I was looking for an open hole that might

13   have been freed up, but I don't see it.  So I'll start

14   dealing with the demurrer on July 2nd, and I'll continue

15   this case management conference to that day.

16           THE CLERK:  June 2nd.

17           THE COURT:  June 2nd, I'm sorry.  June 2nd.

18           So, Ms. Miller, I want you to think about -- I

19   mean, we've got this one right around the corner.  Both

20   counsel for Dr. Bromberg and Merck, I want you to think

21   about the wisdom of a demurrer versus a summary judgment

22   motion.  And the only reason I say that is you see how

23   long that backlog is.  You got one of my worst dates,

24   Ms. Miller, in terms of how far off it is, probably

25   because people are reserving dates and I haven't got

17

1    around to cancel them.  So if I do that and I can move

2    it up, I will.

3            But I've found that I'm not a big fan of

4    granting leave to amend when someone has had four months

5    to think about whether there are any facts that they

6    could add to avoid the demurrer.

7            So, Mr. Esfandiari, I definitely want you to

8    meet and confer with Ms. Miller and whoever is

9    representing Dr. Bromberg to see if by chance I were to

10   find that the demurrer should be sustained, are there

11   any facts that you can think of that you would want to

12   add, or have you put in everything in that you could

13   possibly put in to avoid the demurrer?  Because if it's

14   the latter, I'm going to sustain without leave to amend,

15   if I'm granting -- sustaining it.  And if it's the

16   former, I would encourage you to stipulate to file an

17   amended complaint.  This is still your first complaint,

18   right?  So you can file an amended complaint to get all

19   those facts in.  Because I'm going to really be tough on

20   you in terms of you meeting your burden to show me what

21   additional facts you can allege if I were to consider

22   granting leave to amend.

23           In fact, the folks who have gotten to know me

24   will actually draft a proposed amended complaint and

25   have it attached to their opposition just in case.  So

                                                              18

1    I'll leave it to you because it's not uncommon for me to

2    find that the declaration saying please give me leave to

3    amend because I think I can come up with more facts is

4    not going to be sufficient.  Because I definitely want

5    to get past the demurrer stage because that's the

6    biggest backlog in my toolbox.

7             And, Ms. Miller, for you, you're much more

8    likely to get a dispositive ruling.  And if you can get

9    the case adjudicated as a matter of law, you're much

10   more likely to get it on a summary judgment motion than

11   you are on a demurrer.

12            So those are some thoughts to think about in

13   terms of how this case progresses.

14            And then if there's anything else you need --

15   and finally, the final case management rule I have is

16   that I do entertain informal conferences with counsel if

17   all counsel stipulate to have them with me.

18            I don't make any orders in those conferences

19   unless they're stipulated to, but I do find them

20   particularly helpful to deal with scheduling issues,

21   avoiding ex parte applications.

22            And in your case, the most appropriate thing

23   that might come up is coming up with the stipulation for

24   me to hear some kind of motion that doesn't squarely fit

25   within the summery adjudication motion or otherwise or

                                                      19

1    the bifurcation issue you're talking about.  That would

2    be the perfect thing to have an informal conference

3    over, to let me know how that works, what your plan is

4    and whether I'm willing to do it.  Because generally I

5    don't bifurcate trials if it forces me to hear the same

6    evidence twice.

7              All right.  Any questions?

8              **ATTORNEY MILLER:**  Just one point of

9    clarification, Your Honor.

10             So for now we will keep -- and I appreciate

11   Your Honor's comments and we will consider them

12   carefully, but we will keep the demurrer and motion to

13   strike that Merck filed on the August date unless

14   something frees up sooner on your calendar; is that

15   right?

16             **THE COURT:**  That's right.  That's right.

17             **ATTORNEY MILLER:**  Okay.

18             **THE COURT:**  I think the demurrers are probably

19   going to have sufficient differences that are just not

20   worth it for me to combine them.

21             **ATTORNEY MILLER:**  Probably true.  Okay.  Very

22   good.  Thank you.

23             **THE COURT:**  Okay.  Then why don't I go ahead

24   and if -- we've got everybody here.  Is notice waived to

25   the continuance of this case management conference to

                                                          20

1    July 2nd with the minutes reflecting the parties will

2    work on a proposed case management scheduling order.

3              **THE CLERK:**  June 2nd.

4              **THE COURT:**  June 2nd.

5              **ATTORNEY ESFANDIARI:**  Notice waived.

6    June 2nd, yes, Your Honor.

7              **ATTORNEY KISESKEY:**  Yes, Your Honor, notice is

8    waived.

9              **THE COURT:**  Okay.  Thank you all.

10             **ATTORNEY COX:**  Yes, Your Honor notice is

11   waived.

12             **ATTORNEY MILLER:**  Yes, Your Honor.  Thank you

13   very much.

14             **THE COURT:**  You're welcome.

15             (Proceedings adjourned at 8:56 a.m.)

16

17

18

19

20

21

22

23

24

25

                                                    21

1    State of California                )
                                        )
2    County of Alameda                  )

3

4        I, Kelly L. Shainline, Certified Court Reporter at

5    the Superior Court of California, County of Alameda, do

6    hereby certify:

7        That I was present via LACourt at the time of the

8    above proceedings;

9        That I took down in machine shorthand notes all

10   proceedings had and testimony given;

11       That I thereafter transcribed said shorthand notes

12   with the aid of a computer;

13       That the above and foregoing is a full, true, and

14   correct transcription of said shorthand notes, and a

15   full, true and correct transcript of all proceedings had

16   and testimony taken;

17       That I am not a party to the action or related to a

18   party or counsel;

19       That I have no financial or other interest in the

20   outcome of the action.

21   Dated:  May 15, 2022

22

23   _____

24       Kelly L. Shainline, CSR No. 13476, CRR

25

                                                        22