BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE: GARDASIL PRODUCTS      MDL DOCKET NO. 3036
LIABILITY LITIGATION

**INTERESTED PARTY RESPONSE IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS**

*Oral Argument Requested*

## I.   INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Elizabeth Landers, on behalf of her minor child, I.L. ("Plaintiff") in the action listed below[1] respectfully submits this Interested Party Response In Support of Plaintiffs' Sahara K. Walker et al. ("Movants") Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated Pretrial Purposes (Dkt. 1). As set forth below, Plaintiff agrees that centralization is appropriate. Indeed, centralization is consistent with the Panel's recent decision to consolidate personal injury claims concerning another Merck vaccine. *See In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 330 F. Supp. 3d 1378, 1379 (J.P.M.L. 2018) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings on *Daubert* issues and other pretrial matters; and conserve the resources of the parties, their counsel and the judiciary.").[2] Plaintiff further submits that the Panel should transfer these lawsuits to the

---

[1] *Elizabeth Landers, on behalf of her minor child, I.L. v. Merck & Co., Inc. & Merck Sharp & Dohme Corp.*, Case No. 2:22-cv-00160; In the United States District Court for the Southern District of West Virginia, Charleston Division.

[2] Merck sought centralization of Zostavax lawsuits, arguing that "[t]here now exists a critical need for coordination of pretrial proceedings to avoid duplicative, burdensome discovery of the defendants and perhaps experts, and inconsistent rulings on nearly identical pretrial motions." Exhibit 1: Memorandum of Law in Support of Merck & Co., Inc. and Merck Sharp & Dohme Corp.'s Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated Pretrial

Honorable Brian A. Jackson in the Middle District of Louisiana or to the Honorable Douglas L. Rayes in the District of Arizona.

## II.   TRANSFER AND CONSOLIDATION OF ALL ACTIONS IS APPROPRIATE UNDER 28 U.S.C. § 1407.

Plaintiff concurs with and joins in the arguments set forth in Movants' memorandum regarding the propriety of MDL coordination and consolidation. *See* Memorandum of Law In Support of Movants' Motion for Transfer (Dkt. 1-1) at pp. 1-20.

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Under Section 1407, centralization is appropriate when one or more common questions of fact are pending in different districts, a transfer would serve the convenience of parties and witnesses, and a transfer would promote the just and efficient conduct of the actions. *Id*. As shown below, these lawsuits satisfy all conditions for transfer.

### a.   The Gardasil lawsuits involve commonly asserted allegations.

Although Section 1407 does not require absolute uniformity of claims, all Gardasil lawsuits are premised on nearly identical factual allegations that arise from a defective and unreasonably dangerous vaccine. *See In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) ("We observe that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."). The Gardasil lawsuits are based on substantially similar underlying facts, including the following ones:

(1) Plaintiff received the Gardasil vaccine;

(2) Plaintiff relied on Merck's numerous representations regarding the safety and efficacy of the Gardasil vaccine;

---

Proceedings (Dkt. 1-1) at p. 1. As shown below, the same critical need exists for Gardasil lawsuits, which are "appropriate for pretrial coordination." *Id*. at p. 11 n.15.

(3) In designing and conducting clinical trials for Gardasil, Merck concealed the risks posed by Gardasil to falsely enhance Gardasil's safety profile;

(4) In marketing the Gardasil vaccine, Merck engaged in false advertising and disease mongering;

(5) Merck knew or should have known of the serious, debilitating risk of neurological injuries and autoimmune diseases;

(6) Merck failed to warn of the dangers and hazards associated with Gardasil; and

(7) Plaintiff suffered an autoimmune disease as a direct and proximate result of the Gardasil vaccine.

All the Gardasil lawsuits present common factual issues regarding the clinical trials, regulatory approval, manufacturing, pharmacovigilance, labeling, and marketing of Gardasil and Merck's knowledge of the adverse effects posed by that vaccine.[3] Although certain facts concerning individual plaintiffs will vary,[4] all Gardasil lawsuits share factual questions regarding general causation and the background science regarding the role that Gardasil has in causing injuries such as autoimmune diseases.[5] If Merck denies Gardasil's propensity to cause autoimmune diseases, these issues may require considerable pre-trial discovery, the determination of which will benefit all parties through consolidation.

Notably, Merck has acknowledged that there are common factual issues. Indeed, as Merck's counsel recently stated during a status conference in a pending Gardasil lawsuit, "***there***

---

[3] *See* Exhibit 1 at pp. 1-2 ("[T]he Subject Actions nevertheless present common, complex factual issues related to the design, regulatory approval, manufacture and marketing of Zostavax and Merck's knowledge of adverse effects alleged to be caused by the vaccine.").

[4] Virtually all personal injury cases involve case-specific causation issues; these minor factual differences, however, "have not been an impediment to centralization in the past." *In re Wright Med. Tech., Inc. Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012). Further, "[t]ransfer under Section 1407 does not require . . . even a majority of common factual or legal issues as a prerequisite to transfer." *In re Denture Cream Prods. Liab. Litig.*, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009).

[5] *See* Exhibit 1 at p. 1.

*are certainly some common issues* with respect to the injury." Memorandum of Law In Support of Movants' Motion for Transfer (Dkt. 1-1), Exhibit 1 (Transcript of December 18, 2020 hearing in *Gramza* at 25:7-8) (emphasis added). This statement by Merck's counsel further confirms the existence of common issues.

### b. Consolidation is the most efficient and convenient means to govern the litigation and would promote judicial economy.

As the Gardasil lawsuits share common factual questions, transfer would promote judicial economy and provide convenience for all parties. The substantially similar allegations will likely lead to overlapping or identical discovery issues and the need for Movants to seek similar discovery from Merck as it relates to the design, research and development, testing, marketing, and safety of Gardasil. Consolidation of Gardasil lawsuits will conserve judicial resources concerning these coinciding discovery matters and prevent duplicative discovery and inconsistent pretrial rulings. *See In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); *In re Wireless Tel. Servs. Antitrust Litig.*, 249 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (finding that centralization was appropriate to "prevent inconsistent pretrial rulings").

Gardasil lawsuits are already on file in twenty-five different federal courts spanning seventeen states. And it's quite likely that more lawsuits will be filed, thereby further meriting the transfer, centralization, and consolidation of these nationwide cases. Considering that the FDA approved Gardasil in 2006, that there are thirty-nine additional Gardasil cases that have already gone through the mandatory U.S. Court of Federal Claims process ("Vaccine Court") and likely will be filed in the next several months, and that there are fifty-two Gardasil cases currently pending in Vaccine Court, additional cases will almost certainly be filed. *See In re Camp Lejeune,*

*N.C. Water Contamination Litig.*, 763 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011) (finding that the possibility of "a large number of additional related actions to be filed" ultimately weighed in favor of centralization). Consolidation is necessary to efficiently adjudicate these cases.[6]

### c. Information coordination will not be effective.

In addressing the threshold matter of common factual questions, discussed above, the Panel must decide whether the common questions "are incapable of resolution through other available means such as informal coordination." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.33 (2004). The common factual questions in the Gardasil lawsuits cannot be adequately or efficiently addressed through informal coordination.

On its face, informal coordination of thirty-four pending cases in twenty-five different courts among eight law firms is simply not achievable. The Gardasil lawsuits are in differing stages of litigation in different states. Some cases are well underway and the courts in those cases have ruled on dispositive and non-dispositive motions; other cases have just been filed. Ensuring a consistent adjudication of claims through informal coordination is infeasible. *See In re Smitty's/CAM2 Tractor Hydraulic Fluid Mktg.*, *Sales Practices & Prods. Liab. Litig.*, 466 F. Supp. 3d 1380, 1382 (J.P.M.L. 2020) ("Voluntary coordination across these dispersed districts, especially given the complexity of the factual questions and the number and nature of discovery disputes, appears problematic.").

Further, as extensively discussed in Movants' Memorandum of Law, Movants' counsel and Merck's counsel engaged in extensive negotiations to establish informal coordination in pending Gardasil lawsuits. Memorandum of Law In Support of Movants' Motion for Transfer (Dkt. 1-1) at pp. 9-12. These efforts involved only five cases and two plaintiffs' firms, yet these

---

[6] To put it another way, "coordination would be fair and promote efficiency." Exhibit 1 at p. 10.

efforts were unsuccessful. *See id*. Currently, eight different law firms have filed Gardasil lawsuits. As informal coordination didn't work when two plaintiffs' firms were involved, it is far less likely that it will work with six more plaintiffs' firms.

Informal coordination consequently is not a viable approach. It has not occurred, and it is unlikely to happen in any reasonable manner. *See In re Smitty's/CAM2*, 466 F. Supp. 3d at 1382 ("[T]he record before us indicates that the development of numerous and significant discovery disputes will be a significant obstacle to efficient coordination in this litigation.").

Plaintiff agrees with Movants' assertion that informal coordination of proceedings in various district courts will be uneconomical, obscure efficiency, and run counter to previous holdings supporting the creation of an MDL over informal coordination. *See In re Roundup Prods. Liab. Litig*., 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016) (holding centralization was warranted and that informal coordination was not practicable given the complex issues at stake, number of districts involved, and plaintiffs "spread across the country"). Movants also cite current discovery disputes that will reoccur in other Gardasil lawsuits, disputes that counsel seeks to avoid in order to maintain uniformity on what will certainly be nearly identical disputes, again ripe with the possibility for varying outcomes in different courts.[7] Therefore, an MDL would be a more convenient and proper vehicle for these actions than informal coordination, as it would properly address common factual issues, prevent inconsistent rulings, and conserve the resources of the judiciary and all parties. *See id*.; *see also In re Smitty's/CAM2*, 466 F. Supp. 3d at 1382.

### III. TWO COURTS ARE EQUALLY APPROPRIATE TRANSFER FORUMS.

The factors considered by the Panel in determining the appropriate MDL forum include: (1) the location of the parties, witnesses and documents; (2) the accessibility of the

---

[7] *See* Exhibit 1 at p. 15.

proposed transferee district to parties and witnesses; and (3) the respective caseloads of the proposed transferee district courts. *See In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931-32 (J.P.M.L. 1980).

As shown above, centralization is plainly appropriate for Gardasil lawsuits. The next issue for the Panel to consider is the proper venue for transfer of these cases. Plaintiff submits that the Middle District of Louisiana and the District of Arizona are equally appropriate venues for Gardasil lawsuits.

### a. The Middle District of Louisiana

The Middle District of Louisiana plainly qualifies as a proper venue for Gardasil lawsuits. One Gardasil lawsuit, *Soileau*, is on file there, and has been assigned to District Judge Brian A. Jackson and Magistrate Judge Erin Wilder-Doomes. This filing supports venue in the Middle District of Louisiana. *Cf. In re DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig.*, 753 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010).[8]

Moreover, the Middle District of Louisiana would be an efficient venue for Gardasil lawsuits because it has the capacity and bandwidth to oversee Gardasil lawsuits. No MDLs are pending in the Middle District of Louisiana. That Court has a full complement of district judges and magistrate judges. And out of ninety-four federal district courts in the United States, it was recently ranked as the third most productive court in the country based on statistics for fiscal years 2012-2018.[9] Further, the number of pending civil and criminal cases in the Middle District of

---

[8] Even if no cases were on file in the Middle District of Louisiana, the absence of a pending lawsuit "is not a bar to centralization in a particular district." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018) (citing *In re Bard IVC Filters Prods. Liab. Litig.*, 122 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2015)).
[9] *See* https://www.lamd.uscourts.gov/news/middle-district-louisiana-3rd-most-productive-us-district-court-feb2019 (last visited May 18, 2022).

Louisiana declined from 2020 to 2021.[10] Put simply, this Court "has the capacity and resources to successfully guide this litigation." *In re Aqueous*, 357 F. Supp. 3d at 1396.

Judge Jackson, in turn, likely has the necessary time to devote to a new MDL. And given Judge Jackson's lengthy judicial tenure, which includes service as Chief Judge for seven years, he undoubtedly would be a legitimate candidate to skillfully oversee this litigation. Assigning Gardasil lawsuits to Judge Jackson would continue the Panel's recent trend of giving judges their first opportunity to manage an MDL. *See In re Profemur Hip Implant Prods. Liab. Litig.*, 481 F. Supp. 3d 1350, 1353 (J.P.M.L. 2020) ("Two Profemur cases are pending in this district before Judge Kristine G. Baker, who has not yet had an opportunity to preside over an MDL docket."); *In re Stryker Orthopaedics LFIT V40 Femoral Head Prods. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) ("Five LFIT V40 cases in the District of Massachusetts are pending before Judge Indira Talwani, who has not yet had an opportunity to preside over an MDL docket."); *In re Roundup*, 214 F. Supp. 3d at 1348 ("[C]entralization in this district allows us to assign this litigation to the Honorable Vince Chhabria, a skilled jurist who has not yet had the opportunity to preside over an MDL.").

The Panel has previously favored venues that are geographically convenient and easily located. The Middle District of Louisiana meets both criteria. That Court is in Baton Rouge, which is slightly more than an hour's drive from New Orleans, and which is a "geographically central forum for this nationwide litigation." *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014); *see also In re Stryker*, 249 F. Supp. 3d at 1356. In sum, the Middle

---

[10] *See* https://www.uscourts.gov/statistics-reports/statistical-tables-federal-judiciary-december-2021 (last visited May 18, 2022).

District of Louisiana is an appropriate forum for this MDL. *See In re Xarelto*, 65 F. Supp. 3d at 1405.

### b. The District of Arizona

Moreover, Plaintiff agrees with Movants that the District of Arizona is an appropriate venue for this litigation. One of the first Gardasil cases filed, *Gramza*, has been assigned to Judge Douglas L. Rayes, and substantial activity has already occurred in that case.[11] The Court has considered and ruled on dispositive motions and has decided two motions to compel filed by Merck. The Court has also entered a protective order and a privilege log order.

The parties have actively litigated *Gramza*. Merck has produced internal documents in that case; the depositions of both plaintiffs and their mothers have occurred. The discovery deadline in *Gramza* is October 3, 2022; the deadline to file dispositive motions is March 3, 2023.

The District of Arizona would be an efficient and a convenient location for this litigation. There currently are no vacancies in that judicial district. Further, the number of civil cases dropped substantially from 2019 to 2020.[12] These statistics show that Gardasil lawsuits could proceed expeditiously in that Court.[13]

Plaintiff also believes that Judge Rayes is a legitimate candidate to supervise this litigation. Judge Rayes is not currently overseeing an MDL and he likely has the time to devote to a new MDL. And given his experience, he could ably oversee Gardasil lawsuits. Finally, as the Panel has

---

[11] Two other Gardasil lawsuits have recently been filed in the District of Arizona. There are almost a dozen Gardasil cases pending within the Ninth Circuit. This concentration of cases supports transfer to the District of Arizona. *See In re DePuy*, 753 F. Supp. 2d at 1380.

[12] *See* https://www.azd.uscourts.gov/sites/default/files/FY2020_Annual_Report.pdf, at page 2 (last visited May 18, 2022).

[13] *See* https://www.azd.uscourts.gov/sites/default/files/FY2020_Annual_Report.pdf, at page 6 (last visited May 18, 2022) (noting that the number of civil case terminations increased from 4,743 in 2019 to 9,830 in 2020).

previously observed, the District of Arizona is both convenient and accessible. *See In re Bard*, 122 F. Supp. 3d at 1377. The District of Arizona, in short, also is an appropriate venue.

## **CONCLUSION**

For these reasons, Plaintiff Elizabeth Landers, on behalf of her minor child, I.L. respectfully requests the Panel order coordinated or consolidated proceedings for Gardasil and transfer all pending and future cases to the Honorable Brian A. Jackson in the Middle District of Louisiana or to the Honorable Douglas L. Rayes in the District of Arizona.

Dated: May 20, 2022  **MORGAN & MORGAN, P.A.**

/s/ Paul J. Pennock
Paul J. Pennock
Jonathan M. Sedgh
MORGAN & MORGAN, P.A.
350 5th Ave Suite 6705
New York, NY 10118
Phone: (212) 738-6839
Fax: (813) 222-2439
Email: ppennock@forthepeople.com
Email: jsedgh@forthepeople.com

By: /s/ Mark E. Troy
Mark E. Troy
WV Bar ID 6678
MORGAN & MORGAN, P.A.
222 Capitol Street, Suite 200A
Charleston, WV 25301
Phone: (304) 345-1122
Fax: (304) 414-5692
Email: mtroy@forthepeople.com

Attorneys for Plaintiff Elizabeth Landers, on behalf of her minor child, I.L.