BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GARDASIL PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 3036 |

**INTERESTED PARTY RESPONSE
IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C.
§ 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiff Cooper Humphries (Cent. Dist. Ill.) ("**Humphries**") submits this Interested Party Response.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ........................................................................................................................ 1

II. FACTUAL BACKGROUND ..................................................................................................... 1

    A. Filed and Potential Cases as of May 20, 2022 .......................................................... 1

    B. Gardasil Factual Background .................................................................................... 3

III. LITIGATION BACKGROUND AND STATUS ........................................................... 4

    A. Common Factual Allegations ................................................................................... 5

    B. Common Defendants. ................................................................................................ 6

    C. Common Alleged Injuries. ........................................................................................ 6

    D. Common Procedural Status ....................................................................................... 6

    E. Informal Coordination is Not Feasible. ..................................................................... 7

IV. ARGUMENT .................................................................................................................... 8

    A. Centralization Is Warranted For These Cases ........................................................... 8

        1. Consolidation Is Appropriate Under Section 1407 ....................................... 8

        2. Informal Coordination is Impractical. ......................................................... 10

            a. Discovery will be difficult to informally coordinate within multiple districts with cases at various stages across the country. ............... 11

            b. Without a centralized process, motion practice will be duplicative, resulting in disparate judicial rulings and a tax on the judiciary. .. 11

            c. The number of cases and distinct courts warrant centralization over informal coordination ................................................................. 12

    B. An Appropriate Venue For These Cases is the District of Arizona ....................... 13

V. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bruesewitz v. Wyeth LLC*,
  562 U.S. 223 (2011) ............................................................................................................... 2

*In re Actos Prods. Liab. Litig.*,
  840 F. Supp. 2d 1356 (J.P.M.L. 2011) ................................................................................... 9

*In re Ahern Rentals, Inc., Trade Secret Litig.*,
  481 F.Supp.3d 1355 (J.P.M.L. 2020) ................................................................................... 11

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
  148 F. Supp. 3d 1383 (J.P.M.L. 2015) ................................................................................... 9

*In re Bard IVC Filters Prod. Liab. Litig.*,
  122 F. Supp. 3d 1375 (J.P.M.L. 2015) ................................................................................. 14

*In re Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*,
  896 F. Supp. 2d 1339 (J.P.M.L. 2012) ................................................................................... 9

*In Re DePuy Orthopaedics, Inc.*,
  753 F. Supp. 2d 1378 (J.P.M.L. 2010) ................................................................................. 13

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*,
  190 F.Supp. 3d 1361 (J.P.M.L. 2016) .................................................................................. 12

*In re Eliquis (Apixaban) Products Liability Litigation*,
  282 F.Supp. 3d 1354 (J.P.M.L 2017) ................................................................................... 13

*In re Farxiga (Dapagliflozin) Prods. Liab. Litig.*,
  273 F. Supp. 3d 1380 (J.P.M.L. 2017) ............................................................................. 9, 10

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
  997 F. Supp. 2d 1354 (J.P.M.L. 2014) ................................................................................... 1

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
  249 F.Supp.3d 1357 (J.P.M.L. 2017) ................................................................................... 12

*In re MLR, LLC, Patent Litig.*,
  269 F. Supp. 2d 1380 (J.P.M.L. 2003) ................................................................................... 9

*In re Onglyza (Saxagliptin) & Kombiglyze XR*,
  289 F. Supp. 3d 1357 (J.P.M.L. 2018) ................................................................................. 12

*In re Prempro Prods. Liab. Litig.*,
 254 F. Supp. 2d 1366 (J.P.M.L. 2003) ................................................................................. 10

*In re Proton Pump Inhibitor Prods. Liab. Litig. (No. II)*,
 261 F. Supp. 3d 1351 (J.P.M.L. 2017) ................................................................................... 9

*In re Roundup Prods Liab. Litig.*,
 214 F.Supp. 1346 (J.P.M.L 2016) ........................................................................................ 11

*In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig. (No. II)*,
 289 F. Supp. 3d 1335 (J.P.M.L. 2018) ................................................................................. 13

*In re Taxotere (Doxetaxel) Eye Injury Prods Liab. Litig.*,
 MDL No. 3203, 2022 WL 303562 (J.P.M.L. Feb. 1, 2022) ............................................. 8, 10

*In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*,
 224 F.Supp.3d 1330 (J.P.M.L 2016) .................................................................................... 11

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
 330 F. Supp. 3d 1378 (J.P.M.L. 2018) ............................................................................... 8, 9

**Statutes**

28 U.S.C. § 1407 ........................................................................................................................ 8, 11

42 U.S.C.A. § 300aa-11 ................................................................................................................... 2

42 U.S.C.A. § 300aa-12 ................................................................................................................... 2

42 U.S.C.A. § 300aa-21 ................................................................................................................... 2

42 U.S.C.A. § 300aa-23 ................................................................................................................... 2

42 U.S.C.A. § 12 .............................................................................................................................. 2

**I.    INTRODUCTION**

Humphries supports centralization of these lawsuits, including his case. This MDL action is likely to become the largest litigation against a vaccine manufacturer for injuries caused by a vaccine. Centralization of these cases is warranted and necessary for efficiency and consistency in the rulings, therefore, the Panel should consider centralizing these cases as well as any subsequently filed cases involving common issues of fact. For the reasons discussed below, the Subject Actions should be transferred and centralized in either the District of Arizona before the Honorable Judge Douglas L. Rayes or the Western District of Wisconsin before the Honorable Judge James D. Peterson.

**II.    FACTUAL BACKGROUND**

   **A.    Filed and Potential Cases as of May 20, 2022**

As of May 20, 2022, there are approximately 34 civil actions pending in 26 different federal district courts across the U.S. where Plaintiffs allege they were injured after receiving Gardasil, Merck's "cervical cancer vaccine," which purportedly prevents a handful of strains of the Human Papillomavirus ("**HPV**") (the "**Subject Actions**"). These 34 actions are being handled by approximately eight different law firms.[1]

Plaintiffs seek to recover under theories of negligence, strict liability (failure to warn and manufacturing defect), breach of warranty, common law fraud and violation of various state laws. The undersigned law firm represents Plaintiff, Humphries, in his action against Defendants, Merck

---

[1] In addition, there are at least five Gardasil-related matters currently pending in state courts (namely, California). The pendency of state court matters supports the creation of an MDL because "an MDL will make it easier to coordinate, as needed, pretrial proceedings in both the state and federal cases, because there will now be just one judge handling the latter." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F. Supp. 2d 1354, 1356 (J.P.M.L. 2014).

1

& Co., Inc. and Merck Sharpe & Dohme Corp. (collectively "**Merck**"), for personal injuries, including, but not limited to, an autoimmune disease caused by the Gardasil vaccine.

In addition to the 34 Gardasil autoimmune cases pending in federal district courts, there are approximately 39 additional Gardasil autoimmune cases that have already gone through the mandatory U.S. Court of Federal Claims Vaccine Injury Compensation Program ("**Vaccine Court**") that will likely be filed in the coming months in federal courts across the country. There are an additional 52 Gardasil autoimmune cases currently pending in Vaccine Court, which upon conclusion of the Vaccine Court proceedings, will proceed with filing traditional tort claims in federal courts in the U.S., akin to the plaintiffs who currently have Gardasil tort cases pending in various district courts.[2] If all of the cases currently in Vaccine Court and those that have recently come out of Vaccine Court are filed in federal courts (which is more than likely), there will be over 120 Gardasil autoimmune personal injury cases in federal district courts.

---

[2] For certain vaccines such as Gardasil, federal law, pursuant to Section 300aa-11 of the National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act"), generally does not permit a person to bring a civil action against a vaccine manufacturer until the injured person has first filed a petition in the Vaccine Court (i.e., United States Court of Federal Claims) and has obtained a judgement from the Vaccine Court. 42 U.S.C.A. § 300aa-11. After the Vaccine Court issues its judgment, the petitioner has the option of rejecting the judgment and electing to file a *civil action* against the manufacturer. 42 U.S.C.A. §§ 300aa-11(a)(2) & § 300aa-21(a). The Vaccine Court program is a no-fault system, discovery is generally not permitted (other than obtaining plaintiff's medical records) and monetary caps are placed on damages awarded through the vaccine court program. 42 U.S.C.A. §§ 12(d)(2)(E) (limits on discovery in Vaccine Court); 300aa-15 (damages limitations in Vaccine Court); *see also Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228 (2011) (discussing the vaccine court). Generally, the petitioner is required to participate in the program for at least 240 days and if no decision on the substantive merits has been reached by that time, she can decide to opt out of the program to pursue civil remedies against the vaccine manufacturer in either state or federal court. 42 U.S.C.A. § 300aa-21(b)(1) & § 300aa-12(d)(3) & 12(g); *Bruesewitz*, 562 U.S. at 228. Even if a judgment on the merits is issued by the vaccine court, the petitioner has the option to reject the judgment (whether favorable or adverse) and pursue traditional tort remedies under state common law against the vaccine manufacturer. 42 U.S.C.A. § 300aa-21; *Bruesewitz*, 562 U.S. at 228. Should a petitioner elect to pursue tort damages under state common law, neither the judgment nor the findings from the vaccine court are admissible in any future civil action. 42 U.S.C.A. § 300aa-23(e).

Moreover, undersigned counsel and other firms across the country are investigating many more Gardasil-related cases which are likely to be filed first in Vaccine Court and then in a federal district court once the case is dismissed from the Vaccine Court.[3]

Although the facts pertaining to individual plaintiffs will vary, the Subject Actions present common, complex factual issues related to the clinical trials, regulatory approval, manufacturing, pharmacovigilance, labeling and marketing of Gardasil and Merck's knowledge of the vaccine's adverse effects. Coordination of pretrial proceedings is necessary to avoid duplicative discovery, unduly burdensome discovery obligations, and inconsistent rulings on pretrial motions. Centralization will preserve resources of the parties, counsel, and the judiciary. Accordingly, transfer will promote the just and efficient conduct of the actions and the Subject Actions are suitable for transfer, coordination, and centralization.

### B. Gardasil Factual Background

In June 2006, after the Food and Drug Administration's ("**FDA**") fast-tracked review, Gardasil was approved for use in females ages 9 through 26 for the purported prevention of cervical cancer. In December 2014, the FDA approved Gardasil 9 (containing the same ingredients as Gardasil, but in higher quantities) for use in girls ages 9 through 26 and boys ages 9 through 15 for the purported prevention of cervical, vaginal, and anal cancers. This rush to FDA approval left unanswered questions relating to the efficacy and safety of the vaccine. Merck obscured information relating to these issues. Presently, Gardasil 9 has been approved for and is being promoted by Merck to males and females between 9 and 45 years of age, with an emphasis on pre-teens and their parents. In a best-case scenario, Gardasil causes immune hyperactivation and

---

[3] As way of example, undersigned counsel is aware of at least 50 additional Gardasil autoimmune cases awaiting to be filed in Vaccine Court.

production of anti-HPV antibodies to fend off certain strains of the HPV virus. In a worst-case scenario, it causes the immune system to lose its ability to differentiate human proteins from foreign proteins, causing the immune system to attack the body's own proteins and organs.

To stimulate an enhanced immune response, Merck added adjuvants to the Gardasil vaccine, including (but not limited to) a proprietary aluminum known as amorphous aluminum hydroxyphosphate sulfate (AAHS) and HPV LI-DNA fragments. Because of the peptide commonality between HPV and human proteins, the attack triggered by the Gardasil adjuvants can cause cross-reactions and dangerous attacks against human proteins. This process, which is referred to as "molecular mimicry," can cause autoimmune disorder.

### III.     **LITIGATION BACKGROUND AND STATUS**

As noted above, 34 Gardasil-related civil actions are currently pending in 26 different federal district courts: U.S. District Court for the District of Connecticut; U.S. District Court for the Western District of Wisconsin; U.S. District Court for the Middle District of Florida; U.S. District Court for the District of Rhode Island; U.S. District Court for the District of Massachusetts; U.S. District Court for the Southern District of California; U.S. District Court for the Eastern District of Michigan; U.S. District Court for the District of Nevada; U.S. District Court for the District of Arizona; U.S. District Court for the Central District of Illinois; U.S. District Court for the Eastern District of Texas; U.S. District Court for the Northern District of Florida; U.S. District Court for the District of South Carolina; U.S. District Court for the Central District of California, Western Division and Southern Division; U.S. District Court for the District of Hawaii; U.S. District Court for the District of New Jersey; U.S. District Court for the Middle District of Louisiana; U.S. District Court for the Middle District of North Carolina; U.S. District Court for the Northern District of Georgia; U.S. District Court for the Northern District of Illinois, Eastern

Division; U.S. District Court for the Northern District of Indiana, Fort Wayne Division; U.S. District Court for the Northern District of Texas; U.S. District Court for the Southern District of Florida; U.S. District Court for the Southern District of West Virginia; and U.S. District Court for the Western District of North Carolina. Plaintiffs in the Subject Actions are represented by the following eight separate law firms: Baum Hedlund Aristei & Goldman, P.C.; Mullins Duncan Harrell & Russell PLLC; Van Cott & Talamante, PLLC; A Liberatore Law Offices PC; Siri & Glimstad LLP; Bronster Fujichaku Robbins; Pendley Baudin & Coffin, LLP; and Morgan & Morgan.

As is demonstrated by the diversity of jurisdictions and respective counsel for the Subject Actions, it will be impossible to informally coordinate this litigation, as discussed in further detail below. However, aside from the diversity of jurisdictions and counsel, the Subject Actions share many common features which mandate centralization. More specifically, the Subject Actions stem from common factual allegations, involve common Defendants, a common mechanism of injury, and common damages. Furthermore, the current procedural posture and status of discovery also point to centralization as a favorable method for case administration.

    A.    **<u>Common Factual Allegations</u>**

Plaintiffs in the Subject Actions allege they were injured by the Gardasil vaccine, which, through the unintended processes of molecular mimicry, caused Plaintiffs to develop autoimmune disorder, POTS/Orthostatic Intolerance and ITP. Plaintiffs allege Merck concealed the known dangers of Gardasil and that Merck's targeted consumers and that doctors did not know the true risks. Plaintiffs have universally alleged throughout the Subject Actions that Merck breached its duty of reasonable care and failed to exercise ordinary care in the research, manufacturing, testing, marketing, pharmacovigilance, promotion, and labeling of Gardasil.

Given that Plaintiffs' allegations stem from the same basic facts, involve the same injuries and a common mechanism of injury, centralization is appropriate.

### B. Common Defendants

Merck, as the sole manufacturer of Gardasil, is the Defendant in each of the Subject Actions. As the sole manufacturer, Merck will also be the Defendant in any of the "tag-along" matters that are expected to be filed, accordingly, centralization is appropriate.

### C. Common Alleged Injuries

The Plaintiffs in the Subject Actions allege they received the Gardasil vaccine and through the mechanism of action known as molecular mimicry, receipt of the Gardasil vaccine caused them to develop autoimmune disorders. All Plaintiffs likewise allege their injuries were caused by Merck's deceptive and deficient research, manufacturing, testing, marketing, promotion, and labeling of Gardasil. The factual investigation in all cases will focus on whether Gardasil has unreasonably dangerous side effects, whether Merck adequately warned of side effects and whether Gardasil caused Plaintiffs' injuries. The commonality among Plaintiffs' injuries further warrants centralization.

### D. Common Procedural Status

The first Subject Action was filed on July 17, 2020 (*Gramza*) and the most recent Gardasil autoimmune injury case was filed on or about April 5, 2022. As noted above, at least 91 additional actions are expected to be filed in the coming months (39 have exited Vaccine Court and are expected to be filed soon and 52 are in Vaccine Court and will be filed after the conclusion of the Vaccine Court). Further, there is nothing that suggests the pace of filings will slow in the future, rather, it appears these injuries and filings will continue. Many firms that market for vaccine injury cases do not seek out Gardasil cases, however, if marketing campaigns were to commence for

Gardasil injury cases, the number of potential cases could be in the thousands.

While Merck has produced documents in some of the Subject Actions, Merck has not produced documents in the Humphries case or to the undersigned's knowledge, in the majority of the 34 cases currently filed throughout the country. To date, no depositions of Merck company witnesses have taken place and expert discovery has not yet begun.

Given the current early stage of the Subject Actions, the fact that no depositions of Merck employees have taken place, expert discovery has yet to initiate, and the earliest trial date is not until next year (2023), the time is ripe to centralize these cases, and reap the maximum benefits from the creation of an MDL in terms of efficiency and preservation of resources. In the absence of centralization, the parties will inevitably face inconsistent rulings, duplicative and burdensome discovery obligations, and conflicting scheduling orders.

### E. **Informal Coordination is Not Feasible**

Clearly, informal coordination of 34 pending matters in 26 different courts among eight law firms is simply not achievable. This difficulty is demonstrated by prior unsuccessful efforts between two plaintiffs' firms, Baum Hedlund Aristei & Goldman, P.C., and Morgan & Morgan, and two firms representing Merck, including Venable, LLP and Goldman Ismail Tomaselli Brennan & Baum, LLP.

Although great efforts were made to informally coordinate these cases, these efforts were unsuccessful. The inability of counsel to informally coordinate five cases with only two sets of plaintiffs' firms confirms that coordination across the now 34 Gardasil cases pending in 26 different district courts, involving at least eight different plaintiffs' law firms, is not feasible and centralization is needed to ensure the just, efficient handling of these cases.

## IV. ARGUMENT

### A. Centralization Is Warranted For These Cases

#### 1. Consolidation Is Appropriate Under Section 1407

Under 28 U.S.C. § 1407, the Panel may consolidate multiple cases if the moving parties sufficiently demonstrate that (1) the lawsuits involve one or more common questions of fact; (2) consolidation will best serve the convenience of the parties and witnesses; and (3) consolidation will promote the just and efficient conduct of such lawsuits. 28 U.S.C. § 1407(a).

As shown herein, the Gardasil lawsuits meet the statutory requirements for centralization, and on this record, centralization in one district court for pre-trial proceedings is the most appropriate course of action for the Panel to take. Thus, centralization and coordination of pretrial proceedings against Merck is clearly warranted. *See, e.g.*, *In re Taxotere (Doxetaxel) Eye Injury Prods Liab. Litig.*, MDL No. 3203, 2022 WL 303562, at *1-*3 (J.P.M.L. Feb. 1, 2022) (recently granting centralization of thirteen lawsuits filed against Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. arising out of eye injuries suffered by Taxotere users); *see also In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 330 F. Supp. 3d 1378, 1379 (J.P.M.L. 2018) (granting Merck's motion for centralization in cases wherein plaintiffs alleged they had suffered various types of injuries, including encephalitis, optical nerve damage, kidney and liver damage, Bell's palsy, Guillain Barre Syndrome, and other injuries as due to Merck's shingles vaccine).

First, each Gardasil lawsuit alleges nearly identical facts against the same two Merck entities and concerning the same vaccine. Each lawsuit contains almost identical allegations about Gardasil and its propensity to cause neurological injuries and autoimmune diseases. In turn, Merck will deny plaintiffs' allegations. These defenses will involve common questions of fact on both liability and causation.

Second, centralization before one MDL court will prevent inconsistent judicial rulings, eliminate duplicative discovery, will be more convenient to the parties, witnesses, and their counsel, and will conserve the resources of the judiciary, the parties, and their counsel. *See, In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 330 F. Supp. 3d at 1379 (highlighting that consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* issues and other pretrial matters, and conserve resources); *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (consolidation before a single transferee judge allows for consideration of "all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions.").[4] A transferee judge can "employ any number of techniques … to manage pretrial proceedings efficiently." *In re Proton Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1354 (J.P.M.L. 2017). Consequently, "formal centralization under section 1407 is the best course." *Id*.

The lawsuits alleging injuries due to Merck's Gardasil vaccine are based upon substantially similar, if not identical, allegations, therefore, the parties will address similar issues in discovery, and in some cases identical issues, especially those involving causation, plaintiffs' injuries, and the misrepresentations on which plaintiffs relied. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1385 (J.P.M.L. 2015) (deeming transfer appropriate where related actions shared factual issues related to allegations of injuries from a defective warming system); *see also In re Actos Prods. Liab. Litig.*, 840 F. Supp. 2d 1356 (J.P.M.L. 2011) (granting consolidation where: (1) the actions involved common questions of fact regarding

---

[4] *See also In re Farxiga (Dapagliflozin) Prods. Liab. Litig.*, 273 F. Supp. 3d 1380, 1380-83 (J.P.M.L. 2017) (same); *In re Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, 896 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012) (same).

9

whether the pharmaceutical drug could cause cancer and whether defendants concealed their knowledge of the risk and failed to provide adequate warnings, and (2) centralization would eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary).

Finally, as noted above, the need for centralization is warranted because there are already 34 Gardasil lawsuits on file in 26 different federal district courts across the country. These lawsuits span nine federal circuits. Taken together, these cases will ultimately result in separate scheduling orders and duplicative discovery and pretrial practices if an MDL is not created. The Panel should therefore authorize an MDL so that pretrial proceedings "will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003); *see also In re Taxotere (Doxetaxel) Eye Injury Prods Liab. Litig.*, MDL No. 3203, 2022 WL 303562, at *1 (granting centralization for 13 lawsuits); *In re Farxiga*, 273 F. Supp. 3d at 1381-82 (granting centralization for 18 lawsuits that involved "allegations that ingestion of the drug Farxiga may cause a variety of injuries").

## 2. **Informal Coordination is Impractical**

Informal coordination is not a practical alternative to centralization for these cases. "[T]he number of actions, districts, and involved counsel, and the complexity of the litigation, make effective coordination on an informal basis impracticable." *In re Uber Tech., Inc.*, *Data Breach Litig.*, 304 F.Supp.1351, 1354 (J.P.M.L. 2018) (informal coordination was not a practicable alternative to centralization where ten actions, with a potential for seven more, were pending in nine districts). It would be inefficient and uneconomical to engage in informal coordination amongst so many different cases, districts, and involved counsel, and as previously discussed,

attempts at informal coordination of the first five filed cases proved to be futile and impractical. *See In re Roundup Prods Liab. Litig.*, 214 F.Supp. 1346, 1348 (J.P.M.L 2016) (concluding informal coordination of 37 actions pending in 21 districts was not practicable).

### a. Discovery will be difficult to informally coordinate within multiple districts with cases at various stages across the country.

"The number of involved districts … pose[s] [a] significant obstacle[] to informal coordination" especially for discovery. *In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, 224 F.Supp.3d 1330, 1331 (J.P.M.L 2016). As is common in an MDL proceeding, plaintiffs anticipate taking the depositions of treating physicians, third-party witnesses, and current and former employees of Merck who worked on Gardasil, many of whom will be deposed in multiple cases or will discuss overlapping issues. It would be very difficult to informally coordinate the timing and scope of this discovery across numerous cases in different stages of litigation. "[A] single court can more effectively manage the discovery disputes … likely to arise, including those relating to discovery from third party witnesses, depositions of apex witnesses, and the scope of relevant discovery, generally." *In re Ahern Rentals, Inc., Trade Secret Litig.*, 481 F.Supp.3d 1355, 1356 (J.P.M.L. 2020) (granting consolidation in lieu of informal coordination for ten actions pending in eight districts). Centralization of these proceedings, rather than informal coordination, would thus be more convenient for the parties and witnesses and would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407 (a).

### b. Without a centralized process, motion practice will be duplicative, resulting in disparate judicial rulings and a tax on the judiciary.

As previously discussed, while Merck has filed Answers in certain district courts, in others, it has filed Rule 12(b)(6) motions and the parties are already seeing inconsistent rulings. With no centralized process, duplicative staggered motions will result in inconsistent rulings on nearly identical motions and underlying facts. This becomes particularly likely for *Daubert* and summary

judgment motions, given the complex medical, scientific, and legal concepts at issue in these actions. A single Court reviewer will achieve far greater consistency than the efforts of multiple judges and parties across the country. "Were this litigation smaller, such duplicative discovery and motion practice might be effectively coordinated on an informal basis by the parties and involved courts." *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 190 F.Supp.3d 1361, 1362 (J.P.M.L. 2016). But "[c]entralization of these … actions before a single judge will yield greater efficiency and cost benefits for both the parties and the courts than informal cooperation and coordination can achieve." *Id.* at 1363 (holding that "centralization [was] the best option" for that litigation involving twenty actions in separate district courts).

Additionally, duplicative motion practice encourages forum shopping and strains judicial resources. As cases are guided by different scheduling orders, motions are filed and ruled upon at different times, which means that unsuccessful matters in one jurisdiction can be re-framed and re-litigated in other jurisdictions. This incentivizes forum shopping (which Merck has already undertaken by filing Answers in jurisdictions in which it feels it would lose a motion to dismiss but filing such motions in other jurisdictions even though the complaints are nearly identical) and places a strain on the judiciary. Informal coordination cannot practically eliminate these risks within so many cases and districts. MDL "[c]entralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* and other issues, and conserve the resources of the parties, their counsel, and the judiciary." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 249 F.Supp.3d 1357, 1361 (J.P.M.L. 2017).

        **c.**    **The number of cases and distinct courts warrant centralization over informal coordination.**

The Panel has routinely found informal coordination to be unworkable where, as here, multiple cases are on file in several federal courts. *See In re Onglyza (Saxagliptin) & Kombiglyze*

*XR*, 289 F. Supp. 3d 1357, 1358 (J.P.M.L. 2018) ("Informal coordination among 84 cases across the nation does not seem feasible …"); *In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig. (No. II)*, 289 F. Supp. 3d 1335, 1337 (J.P.M.L. 2018) ("There are now 40 actions pending in 21 districts …"); *In re Eliquis (Apixaban) Prods. Liab. Litig.*, 282 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017) ("There are now a total of 53 actions pending in 17 districts …")

**B.     An Appropriate Venue For These Cases is the District of Arizona**

As shown above, centralization is appropriate for these cases. The next issue for the Panel to consider is the proper venue for transfer of these cases. Plaintiff submits that an appropriate venue for this litigation could be the District of Arizona.

The *Gramza* case is in front of Judge Douglas L. Rayes and is the earliest filed federal court case. The docket shows that Merck has Answered the Complaint and Plaintiff's Memorandum of Law In Support of Transfer notes that in *Gramza,* Merck has produced various internal documents in and the court has adjudicated motions to compel filed by Merck. In addition to *Gramza*, there are two additional Gardasil autoimmune personal injury cases that were recently filed in the District of Arizona (for a total of three cases pending in that Court) and there are nearly a dozen cases currently pending within the Ninth Circuit. *In Re DePuy Orthopaedics, Inc.*, 753 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (transferring to the N.D. of Ohio because, among other things, several potential tag-along actions were already pending there).

The District of Arizona would also be an efficient location for these cases, as that Court currently only has one MDL before it with none of them assigned to Judge Rayes. Accordingly, Judge Rayes more likely has the necessary time to devote to a new MDL. Given Judge Rayes' experience, he would undoubtedly be a legitimate candidate to ably oversee this litigation.

The Panel has previously preferred venues that are geographically convenient, and easily

13

located. The District of Arizona meets each of these criteria. The Court is located in Phoenix which is easily accessible, and this Panel has previously observed that "[t]he District of Arizona is not burdened by many MDLs and has the capacity and resources to successfully guide this litigation." *In re Bard IVC Filters Prod. Liab. Litig.*, 122 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015). The District of Arizona can serve as an appropriate forum for this MDL.[5]

## V.   CONCLUSION

Humphries supports the Motion to Transfer these similar actions to the District of Arizona, or alternatively, the Western District of Wisconsin.

Dated:  May 20, 2022                                                  Respectfully submitted,

*/s/ Jessica A. Wallace*
Jessica Wallace (Fl. Bar. 1008325)
jwallace@sirillp.com
**SIRI & GLIMSTAD LLP**
200 Park Avenue, Seventeenth Floor
New York, NY 10166
Telephone: (212) 532-1091
Facsimile: (646) 417-5967

*Counsel for Plaintiff Cooper Humphries*

---

[5] Alternatively, the undersigned counsel proposes the Hon. Judge James D. Peterson in the Western District of Wisconsin where the Walker case, one of the first filed Gardasil cases, is currently pending, and it was in this Court that Merck and undersigned counsel had initially agreed upon to attempt informal coordination (i.e., agreeing that any ruling made by Judge Peterson as to discovery disputes would be binding on the other five Gardasil cases that were part of the informal coordination process), however, as discussed supra, the plans to informally coordinate failed as one of the other courts (*Stratton*).

14