# EXHIBIT 4

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SAHARA WALKER,<br><br>Plaintiff,<br><br>v.<br><br>MERCK & CO., INC. and MERCK SHARP & DOHME CORP.,<br><br>Defendants. | Case No. 3:20-cv-01048 |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR MODIFYING THE SCHEDULING ORDER**

Plaintiff's Ex Parte Application for an Order Modifying the Scheduling Order (Dkt. #30) (the "Ex Parte Application") should be denied. Instead, Defendants (collectively, "Merck") respectfully suggest that any extensions be limited and consistent with the Court's existing orders. The situation about which Plaintiff complains is of her own making. Merck's productions have been robust and timely. In fact, the vast majority of key regulatory and clinical documents were produced well over a year ago. Nonetheless, Plaintiff continues to expand her already-broad discovery requests, seeking millions of pages of documents from twenty-five (25) custodial and numerous noncustodial sources. Though Plaintiff has not explained what discovery she needs that Merck has yet to produce, it appears that Plaintiff is merely searching for something to support her predetermined expert opinions where no reliable scientific support exists.

Although Merck does not object to a reasonable extension of deadlines for the parties' expert disclosures and discovery cutoff, Plaintiff's more extensive requests should be denied because: (1) Merck has continuously participated in good faith and timely responded to

46958525

Plaintiff's discovery requests; (2) Plaintiff has had adequate time to prepare her case (more than is customary); (3) Plaintiff herself is responsible for the substantial volume of documents produced; and (4) Plaintiff's requested amendments run contrary to the Standing Order Governing Preliminary Pretrial Conference.

Merck is willing to agree, in good faith, to a moderate extension of deadlines, given Plaintiff's representations that she requires additional time to prepare her case. However, Merck does not believe good cause exists to modify the schedule to the extent that Plaintiff proposes, particularly given that a number of those modifications would violate the Standing Order. Nor does Merck believe it is necessary or appropriate to push the trial date back to the summer of 2023 or later. Accordingly, Merck has no objection to the Court adjusting some of the dates in the Scheduling Order, but does not believe Plaintiff's proposed dates should be accepted.

**I.    Merck Has Provided Good Faith and Timely Discovery Sufficient for Plaintiff's Expert Opinions.**

Merck's productions have been responsive and timely. Merck began reviewing custodial file documents in this matter based on the search terms to which the parties agreed on August 9, 2021, which resulted in rolling productions beginning in September 2021. And in the approximately fifteen (15) months this case has been pending, never once has Plaintiff sought Court intervention with respect to any purported untimeliness of production or deficiencies.

But Plaintiff has not been limited to the documents produced specifically in this matter. Because Merck produced documents originally in other, earlier-filed Gardasil cases and reproduced those productions in this matter, Plaintiff, through her counsel, has had access to relevant portions of the regulatory file and the vast majority of clinical documents related to her case since before this case was even filed. For example, Merck had made productions to

2

Plaintiff's counsel in the *Robi* case pending in California state court starting in May 2018.[1] These productions consisted of over 800,000 pages of documents, in addition to electronic files exceeding 134 gigabytes.[2] These productions included:

- Over 100 study-related reports for Gardasil and Gardasil 9 clinical studies. Clinical Study Reports are often extremely voluminous, providing details about the trial's investigational plan, the efficacy evaluations, the safety evaluations, documentation of the study findings, and extensive appendices (e.g., protocol amendments, patient information, consent forms, investigator information, individual patient data).

- Over 134 gigabytes of patient-level data that provide the footing for the analyses contained in the study reports, and which are the datasets that are submitted to the FDA to facilitate its evaluation of product safety and efficacy.

- 31 reports for animal studies, as well as studies conducted specifically on the aluminum adjuvant—the ingredient to which Plaintiff's theory of causation is specifically tied.

- Gardasil and Gardasil 9 Periodic Safety Update Reports ("PSURs"), which include analyses of events relevant to Plaintiff's alleged injuries.

- Tens of thousands of pages of Gardasil and Gardasil 9 adverse event related reports—regardless of the condition being reported.

This information is exhaustive. Plaintiff has not explained how this information is insufficient, or what exactly she needs for her experts' opinions that hasn't been produced.

The most recent productions have consisted of documents culled from the custodial files of Merck's current and former employees and have no conceivable bearing on the ability of

---

[1] Plaintiff acknowledges that Merck has agreed that Ms. Walker can rely on documents produced in two other cases, *Robi v. Merck & Co., Inc., et al.*, No. BC628589 (L.A. Cnty. Super. Ct.), and *Gramza v. Merck & Co. Inc., et al.*, No 20-cv-01425-DLR (D. Ariz.).

[2] For reference, industry standards provide that a gigabyte equates on average to 64,782 Microsoft Word files.

3

46958525

Plaintiff to prepare and produce expert reports. Although Merck cannot be certain of what expert opinions Plaintiff intends to proffer, Plaintiff alleges she sustained an autoimmune injury known as Postural Orthostatic Tachycardia Syndrome ("POTS"). Proof of causation is shown by expert testimony supported by reliable data, not by comments in stray e-mails. Setting aside the plethora of published, peer reviewed data and analyses that have investigated and determined that HPV vaccination with Gardasil does not increase the risk of Plaintiff's alleged injury (POTS), the materials Plaintiff's experts might need would include scientific information in published literature, governmental agency reports, reports of clinical studies, and other information related to the safety of the medicine. These types of documents – which were produced in previously filed cases – have all been in Plaintiff's counsel's possession for years.

> II.   **Plaintiff Has Had Adequate Time to Prepare Her Case.**

Plaintiff's counsel cannot credibly argue they are unable to review Merck's discovery in a reasonable period. An alleged POTS injury is also the subject of the pending *Robi* California state court action, filed in 2016 by the same plaintiff's counsel. In that case, the plaintiff issued 137 requests for production and 224 interrogatories, all with the goal of building a case that Gardasil causes POTS – a conclusion that is specifically denied by the CDC today.[3] It is difficult to imagine what more Plaintiff could need. While expert reports are not yet due in the *Robi* case, Plaintiff's experts have had years to review materials and mount a challenge to the CDC's findings.

This is not the first federal court to consider Plaintiff's proposed schedule. Plaintiff's counsel filed another case in United States District Court for South Carolina alleging the same

---

[3] CDC confirmed as recently as 2020 that "[o]ngoing safety monitoring through [the Vaccine Adverse Event Reporting System ('VAERS')] has not detected any safety concerns related to POTS following HPV vaccination." Schlinsog Dec., Ex. A, CDC, Questions about HPV Vaccine Safety, at 9, https://www.cdc.gov/vaccinesafety/vaccines/hpv/hpv-safety-faqs.html (last visited March 2, 2022).

injury (POTS) eight months after this action, *Stratton v. Merck & Co. Inc., et al.*, No. 2:21-cv-02211-RMG (D.S.C.). There, the court rejected a similar schedule to the one Plaintiff proposes here. That Court implemented a schedule where Plaintiff had to serve expert reports less than a year after filing.[4] As in that case, this Court should not countenance Plaintiff's attempts to delay, and it should move toward dispositive motions and trial as expeditiously as reasonable.

**III.     Plaintiff Has Demanded, and Continues to Demand, Overbroad and Expansive Discovery.**

The number of documents produced since September 2021 is entirely due to Plaintiff's broad requests in this case, and Plaintiff's request to rely on documents produced in other cases in July 2021. Specifically, Plaintiff insisted that Merck run over 400 search terms across over 40 custodial files, which generated overly broad, sweeping, voluminous productions. For example, Plaintiff insisted on generic search terms such as "animal," "association," "duty," "negative," "rates," "safe," "stomachache," "tired," and "tingling" (just to name a few). These exceedingly broad and numerous search terms generated hits on millions of documents, which Merck then had to review for responsiveness and privilege. Once the search terms were finalized in August 2021, Merck immediately began identifying and reviewing documents. As Plaintiff describes, additional productions were made in September 2021, November 2021, and February 2022. While Merck accepted Plaintiff's extremely broad search terms, it has always been Merck's position that Plaintiff should have propounded more targeted discovery.

Moreover, because there are other Gardasil-related cases brought by Plaintiff's counsel in other jurisdictions, Merck agreed to Plaintiff's request last summer to rely on documents

---

[4] *See* Schlinsog Dec., Ex. B, *Stratton v. Merck & Co. Inc., et al.*, Case No. 2:21-cv-02211-RMG (D.S.C.), February 3, 2022 Amended Scheduling Order, Dkt. No. 29. Plaintiff's references to two other Courts' scheduling orders are irrelevant, as the situations in those cases bear no resemblance to the present case. Merck readily agreed to an extension in *Balasco*, as the plaintiff's father had recently passed away. *Gramza* involves a completely different alleged injury than the one at issue here.

5

46958525

produced in other matters. This resulted in the production of millions of pages of documents from other cases in this case. While more recently produced in this case, Plaintiff's counsel has had access to these documents starting in May 2018.

IV.     **An Extension Should be Consistent with the Court's Existing Orders.**

Should the Court agree, Merck does not oppose providing Plaintiff a reasonable extension of time consistent with the Court's existing Orders. The Court's Preliminary Pretrial Conference Order (Dkt. #18) expressly rejects Plaintiff's proposed sequencing to have expert discovery and dispositive briefing occur after the Discovery Cutoff.[5] In addition, the Court's Standing Order Governing Preliminary Pretrial Conferences provides that the trial should be held 13-15 months after the preliminary pretrial conference. Plaintiff's motion seeks to extend the deadlines until the summer of 2023, given the proposed dispositive motion date, or at least 28 months after the Pretrial Conference. In the interests of providing Plaintiff some relief, Merck suggests the following modifications of the current Pretrial Conference Order:

| Deadline | Current Date Under Pretrial Conference Order | Merck's Proposed Amended Date |
| --- | --- | --- |
| Disclosure of liability experts (Plaintiff) | March 4, 2022 | April 20, 2022 |
| Disclosure of liability experts (Defendants) | April 4, 2022 | May 20, 2022 |
| Expert Rebuttals | April 18, 2022 | None[6] |

---

[5] *See* Preliminary Pretrial Conference Order (Dkt. #18) at 3, providing that "Parties are to undertake discovery in a manner that allows them to make or respond to dispositive motions within the scheduled deadlines. The fact that the general discovery deadline cutoff . . . occurs after the deadlines for filing and briefing dispositive motions is not a ground for requesting an extension of the motion and briefing deadlines."

[6] The Court's Preliminary Pretrial Order (Dkt. #18) set a date for rebuttal expert disclosures, but the text of the Order provides that

> This order does not allow a third round of rebuttal expert reports. Supplementation of an expert's report pursuant to Rule 26(e) must be in writing and must be served not later than five calendar days before the expert's deposition, or before the general discovery cutoff if no one deposes the expert. Supplementation under Rule 26(e) is appropriate only to correct mistakes and oversights, not to include new examples, illustrations, or analyses that could have been included in an original expert report. Any further expert report is allowed only by stipulation of all parties, or by leave of court.

| | | |
|---|---|---|
| Filing Dispositive Motions | May 2, 2022 | July 1, 2022 |
| Discovery Cutoff | June 30, 2022 | September 1, 2022 |
| Settlement Letters | September 2, 2022 | October 1, 2022 |
| Motions in limine | September 9, 2022 | October 21, 2022 |
| Responses to motions in limine | September 23, 2022 | November 4, 2022 |
| Final Pretrial Conference | October 6, 2022 | November 17, 2022 |
| Trial | October 17, 2022 | December 5, 2022 |

**V.      Conclusion.**

Defendants respectfully request this Court enter the above scheduling order.

DATED this 4th day of March, 2022

*s/ Allen C. Schlinsog, Jr.*
Allen C. Schlinsog, Jr.
WI State Bar ID No. 1025656
aschlinsog@reinhartlaw.com
Monica A. Mark
WI State Bar ID No. 1082428
mmark@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202

and

VENABLE LLP
Sally W. Bryan (*pro hac vice*)
SRBryan@Venable.com
Dino S. Sangiamo (*pro hac vice*)
DSSangiamo@Venable.com
Christina L. Gaarder *(pro hac vice)*
CLGaarder@Venable.com
Venable LLP
750 E. Pratt St., Suite 900
Baltimore, MD 21202
Telephone: 410-244-7400
Facsimile: 410-244-7742

*Attorneys for Defendants*

---

Merck suggests that the Court eliminate the rebuttal expert disclosure deadline and permit supplementation according to the practice described above.  If Plaintiff discovers a true need for a rebuttal expert report, the parties can stipulate to such a report or Plaintiff may seek leave of Court.