# EXHIBIT 5



October 28, 2021

_**VIA ELECTRONIC MAIL**_

Lisa C. Dykstra                          Deanne L. Miller
**Morgan, Lewis & Bockius LLP**          **Morgan, Lewis & Bockius LLP**
1701 Market St.                          300 South Grand Avenue
Philadelphia, PA 19103-2921              Twenty-Second Floor
lisa.dykstra@morganlewis.com             Los Angeles, CA 90071-3132
                                         deanne.miller@morganlewis.com

      Re:      _Otto v. Merck, et al._, Case No. 30-2020-01160496-CU-PL-WJC

Dear Counsel:

      This letter concerns Merck's deficient responses to Plaintiff's First Set of Requests for Production of Documents and First Set of Special Interrogatories. We hope that, in response to this letter, Merck will supplement its responses to avoid the need for court intervention. To the extent Merck does not agree to supplement its responses to any of these discovery requests, please let me know a date and time you are available to further meet and confer.

      Before getting into individual discovery requests, Plaintiff will first address some overarching issues.

**The universe of documents Merck has agreed to produce in response to Plaintiff's discovery requests is arbitrarily limited:**

      Like in its response to discovery requests in _Gramza_, here, it appears Merck predetermined what documents it was willing to produce prior to reviewing Plaintiff's discovery requests. Ultimately, the majority of material Merck has agreed to produce in response to Plaintiff's specific document requests (excluding interrogatory responses, custodial files, and a few outliers) can be counted on one hand: they are _final_ study reports for Gardasil 4, not Gardasil 9, and no drafts or related documents, without the underlying raw data, the IND application and INDS related to Gardasil 4 and portions of the BLA for Gardasil 4, without the marketing or manufacturing sections, and _final_ PSURs related to Gardasil 4. This is plainly insufficient.

**Custodians:**

      Here, Merck makes repeated reference to twelve custodians. This number obviously predates later discussion between Plaintiff's and Merck's counsel regarding

10940 Wilshire Boulevard, Suite 1600, Los Angeles, CA 90024

80 East Sir Francis Drake Boulevard, Suite 3J, Larkspur, CA 94939 | 2101 L Street, N.W., Suite 800, Washington, D.C. 20037

(310) 207-3233 | baumhedlundlaw.com | (202) 466-0513



*Gramza.* Based on those conversations, Plaintiff believes that the accurate custodial count is now 25. Plaintiff accordingly interprets Merck's references to custodial files with this later, larger number in mind, and asks that the responses be amended accordingly.

**Search terms:**

Plaintiff also seeks to impose later agreements as to search terms on *Otto* discovery, notwithstanding the more limited understanding referenced in Merck's responses to *Otto* discovery requests. Plaintiff wishes to, at a minimum, use the "Proposed Search Terms" sent to Merck counsel on July 29, 2021, and any additional terms that may be justified by the requests and facts at issue in this case. Accordingly, we expect that all documents that are being produced in *Robi* and *Gramza* pursuant to the search terms agreed upon in those cases, to be likewise produced in this case, and ask that Merck's responses be amended accordingly. As noted above, plaintiff of course also reserves his right to seek additional documents as may be called for in his requests and given the facts of his case.

**Non-custodial searches**

Ongoing conversations in *Gramza* have resulted in Merck agreeing to search non-custodial searches for certain categories of documents (marketing, for example). Plaintiff expects the same effort with respect to *Otto* requests that call for similar sources of information.

**Gardasil 9:**

Merck appears to once again be refusing to produce any documents or information related to Gardasil 9. Again, Merck's response to these discovery requests predate subsequent conversations between the parties' counsel in which Merck agreed to produce documents related to Gardasil 9. Plaintiff obviously wants Gardasil 9 information here as well and asks that Merck amend its responses accordingly.

To reiterate why Gardasil 9 is important: Plaintiff and her experts and consultants wish to review the Gardasil 9 data as they are probative of the safety profile of Gardasil given the similarities between the two vaccines. Gardasil and Gardasil 9 are discussed and treated as being within the same class of vaccines by both Merck as well as by the medical community – indeed, Merck's counsel has indicated that the vaccines were so similar that they were jointly studied at times by Merck. Given the similarities of the two vaccines, that Merck owns both vaccines and performed the studies for both vaccines and that Gardasil 9 has now replaced Gardasil on the market, plaintiff and her expert consultants should be permitted access to the Gardasil 9 studies as requested to enable them to analyze and make any permissible extrapolations they deem necessary.

Moreover, consultants advise that the Gardasil 9 data is also relevant to the



examination of dose response. Dose response (biological gradient) is one of the Bradford Hill criteria for determining causation. According to Hill, "An increasing amount of exposure increases the risk. If a dose-response relationship is present, it is strong evidence for a causal relationship." Hill, The environment and disease: association or causation?, 58 PROC R SOC MED 295 (1965).

Gardasil 9 contains more virus-like particles (270 micrograms vs 200 micrograms) and aluminum-containing adjuvant (500 micrograms vs 225 micrograms) compared to Gardasil quadrivalent vaccine. See Cervantes et.al., Discrepancies in the evaluation of the safety of the human papilloma) virus vaccine, 113 MEM INST OSWALDO CRUZ 180063 (2018). See also, Product Inserts for both products.

Gardasil 9 studies will also be useful in helping our medical consultants find out which of the reported adverse effects of HPV vaccines are caused by the vaccine and/or the aluminum adjuvant. Moreover, as previously noted, other researchers and the medical community discuss these two vaccines as a class and have recommended reviewing the raw data from both Gardasil and Gardasil 9 in order to reach meaningful conclusions concerning the safety and risk profile of these vaccines. See e.g., Doshi et al., Call to action: RIAT restoration of previously unpublished methodology in Gardasil vaccine trials, 346 BRIT.MEDICAL J. 2865 (2013) (recommending and planning to review the raw data for both Gardasil and Gardasil 9 to assess safety risks for Gardasil vaccines as a class). Accordingly, as part of its production, Merck should also be compelled to produce all Gardasil 9 studies (including all raw data and case report forms) and other responsive documents that reference Gardasil 9. Given that Merck itself views them similarly and relied upon Gardasil data to support promoting and securing approval of the Gardasil 9 vaccine, and the medical community treats the two vaccines as belonging to a single class, both should be produced.

### *Robi* production:

In discussions that occurred after Merck's *Otto* discovery responses were served, Merck made the representation that the *Robi* production can be used in other Gardasil litigations. Merck's responses to discovery requests in *Balasco* make good on this representation; Merck referred Plaintiff Balasco to the *Robi* production in response to a variety of discovery requests. Here, many requests are either identical to or closely resemble requests in *Balasco* in which Merck instructed Balasco to look to the *Robi* production (see, e.g., *Otto* RFP Nos. 3-4, 11-13, 16-17, 25-26, 29, 33, 36, 38-39, 45, 51-53, 55, 62, 76 & 79). Plaintiff Otto is currently operating under the assumption that he will be able to use the *Robi (and Gramza)* production in his litigation. That said, notwithstanding this agreement, Plaintiff wishes to preserve all objections and concerns expressed above and below, as the *Robi* production is limited to causation, and as Plaintiff still has some problems with the limitations that Merck has expressed in its discovery responses here and in *Balasco*.



## REQUESTS FOR PRODUCTION OF DOCUMENTS:

Given that there are 96 RFPs that require discussion here, Plaintiff will break the RFPs into categories, and address each category separately.

### Samples (RFP Nos. 1 & 2)

These requests ask for Merck to produce samples of Gardasil (both Gardasil and Gardasil-9) and Amorphous Aluminum Hydroxyphosphate Sulfate ("AAHS"). Merck objects to producing the Gardasil samples (RFP No. 1) on grounds that the request is "impossible and improper" as it seeks production of samples of vaccine that Merck is prohibited by law from distributing to Plaintiff. Merck also objects to this Request as overly broad, unduly burdensome, not relevant to the subject matter of this action, and as not proportional to the needs of this case, particularly to the extent it seeks production of products other than the quadrivalent human papillomavirus vaccine, GARDASIL®.

Plaintiff has every right to test Gardasil and Gardasil-9 samples as part of their discovery and investigation in this case and there is no justification for Merck's refusal to provide the requested samples.  We ask that you please amend your response and produce the responsive samples.

Regarding the AAHS request (RFP No. 2), Merck objects that the request is overly broad, burdensome, not relevant, not proportional, that AAHS, on its own, is not the vaccine at issue in this case, and it seeks Merck's proprietary formulation, which is highly confidential and commercially sensitive.

This request is highly relevant. As you are aware, AAHS has never been examined or tested outside of Merck and our experts have requested a sampling so they can conduct their own testing and analysis. As you are also aware, it is Plaintiff's contention that AAHS is one of the likely culprits in causing injury in these cases. As such, there is no justification for Merck's refusal to produce a sample of the concoction. As to any confidentiality or commercial sensitivity concerns, we have already negotiated a global protective order that would prohibit the disclosure of Merck's proprietary aluminum adjuvant and address Merck's concerns. We ask that you please amend your response and produce the responsive samples.

### Studies and related documents (RFP Nos. 3-9, 15-30)

These requests seek a host of relevant studies and documents associated with those studies. RFP Nos. 3-6, 21-22 & 25-30 ask for specific studies. RFP Nos. 7-9 & 23-24 ask for documents pertaining to these studies.

"STUDIES" was defined as "all databases containing data from YOUR STUDIES (e.g. clinical trials databases), laboratory research; laboratory tests; preclinical studies;



animal studies; insect studies; studies that are part of the Investigational New Drug ("IND") application; clinical studies; human clinical trials, including Phase I trials, Phase II trials, and Phase III trials; studies that are part of the Biologics License Application; post-licensing studies, including Phase IV trials and monitoring studies; meta-analyses, data collection (including patient chart reviews), analyses of adverse event reports obtained from any source, causality assessments, independent observations, retrospective analyses, analytical analyses, ecological analyses, epidemiological studies, review and analysis of case reports, review of journal articles, and any other analyses conducted in the United States or in any other country, to gather information on GARDASIL, whether or not conducted for regulatory purposes."

Plaintiff further explained that: "For Requests that ask YOU to produce "STUDIES," please include as part of YOUR production: (a) the raw data (i.e. case report forms) from each of the STUDIES; (b) draft clinical study reports; (c) protocols for each STUDY; (d) modifications, if any, to the protocols of each STUDY; (e) interim study reports for each STUDY; (f) final study reports for each STUDY; (g) adverse events reported by test subjects (if applicable) in each STUDY; (h) adverse events reported by investigators in each STUDY; (i) adverse events YOU reported to regulatory officials for each STUDY; (j) new medical conditions reported by test subjects (if applicable) in each STUDY; (k) new medical conditions reported by investigators in each STUDY; (l) new medical conditions YOU reported to government officials for each STUDY; (m) investigator notes from each STUDY; (n) draft and final copies of patient consent forms (if applicable) from each STUDY; (o) memoranda, Power Point or other slide show presentations that discuss any of the STUDIES or the results of any STUDIES; (p) meeting minutes concerning any of the STUDIES; (q) efficacy analyses for each STUDY; (r) safety analyses for each STUDY; (s) adverse event analyses for each STUDY; and (t) meta-analyses of any of the STUDIES."

Notwithstanding this, Merck has chosen to interpret these requests as calls for "reports" of studies. This is plainly insufficient; Merck should broaden its production to include additional responsive documents consonant with Plaintiff's definition and instruction regarding production of "studies."

Moreover, Merck rattles of a list of boilerplate objections to most of these requests. To highlight, Merck's responses to RFP Nos. 3-6, 15-20, 25-26 & 29 contain variations of the same theme: objections based on overbreadth and undue burden because of a perceived lack of temporal, geographic, or subject matter narrowing; objections based on relevance, overbreadth, and undue burden because the request seeks documents not pertaining to quadrivalent human papillomavirus vaccine, or because the request seeks ex-U.S. documents or documents pertaining to Gardasil manufacture or marketing; and objections based on vagueness and ambiguity because of the presence of undefined words and phrases like "ingredients" or "publicly disclosed" in the requests.



Regarding the temporal/geographic restriction objection, given that the safety and efficacy of Gardasil has no temporal or geographic bounds, Plaintiff does not understand the objection, and it is not clear whether Merck is withholding documents based on this objection. Merck is required to state whether any responsive material is being withheld on the basis of this (or any other) objection.

Regarding the objections to requests that seek documents concerning manufacturing and Merck's business or business practice outside of the United States, I am not sure how these requests are seeking such information and ask Merck to explain. Also, Merck must identify whether it is withholding any material based on this objection. And Regarding the "non-quadrivalent HPV vaccine objection," Plaintiff refers Merck to his general statement regarding the relevance of Gardasil 9 discovery.

Merck also objects that "ingredients" is vague and ambiguous and not defined. Plaintiff presumes that Merck knows the ingredients of its own product and is not using this objection as an excuse to avoid producing responsive documents. Merck has a similar objection concerning use of the phrase "publicly disclosed" (see, e.g. RFP No. 26). Plaintiff is not sure what is confusing about this phrase. The same is true for other objections "vague and ambiguous" objections found throughout the responses. Please advise.

Moreover, in its Response to RFP No. 5, Merck objects on the grounds the request purportedly seeks documents related to a design This objection, like Merck's design defect arguments in its motions to dismiss, is a red herring; Plaintiff has not pleaded a design defect claim, and Plaintiff's Request here does not somehow magically transform his allegations into a design defect claim.

Plaintiff will next discuss RFP Nos. 15-20. These all seek documents, including, but not limited to, communications, concerning Gardasil studies and ingredients. To these, Merck makes many of the same objections outlined above, and offers to produce documents found within custodial files. Again, Plaintiff assumes that the expanded custodians and search terms list will be used in Merck's production, notwithstanding what is reflected in these responses.

There are a few more specific issues to be addressed within this section. First, Merck flatly objects to RFP Nos. 21 & 22; it refuses to produce any responsive documents. In doing so, it characterizes these requests as argumentative. They are not argumentative; they are simply asking for studies that failed to show safety and efficacy. If Merck does not have any studies that fit this description, that is one thing, but outright refusing to produce relevant documents because of a perceived argumentative nature is inappropriate. Plaintiff will move to compel should Merck fail to revise its position. Second, Merck characterizes RFP Nos. 27, 28 & 30 as premature and more appropriately suited to the expert discovery phase of the litigation. Plaintiff disagrees. These studies are crucial to Plaintiff's claims, and Merck's proffered explanation for



withholding documents is not legitimate. As such, Plaintiff will move to compel should Merck fail to revise its position.

## RFP No. 10

This request seeks all communications internally or with third parties concerning replacing any of the ingredients of Gardasil. Merck recycles objections outlined above ("ingredients" as vague and ambiguous; temporal/geographic scope; non-quadrivalent HPV vaccine; ex-U.S. documents; and design defect) and refuses to produce responsive documents. For the reasons outline above, these objections are meritless. Plaintiff seeks highly relevant material with this request, as this request gets at the core issues of Gardasil's safety and efficacy.

## Adverse Events (RFP Nos. 11-14, 51-56, 62-65)

This set of requests concerns, on some level, adverse events. I will address 11-14 first. These three get at similar things: RFP No. 11 asks for all documents, including, but not limited to, internal or third-party communications, that relate to, discuss, or mention any adverse events associated with the Gardasil vaccines or any of the ingredients; RFP No. 12 asks for the same, but specifically focuses on autoimmune related adverse events; RFP No. 13 is the same for carcinogenicity, genotoxicity, congenital abnormalities, or any fertility-related adverse events; and RFP No. 14 asks for all documents, including, but not limited to, internal or third-party communications, that relate to, discuss, or mention any deaths that were considered associated or possibly associated with the GARDASIL vaccines or any of its ingredients.

Merck issues similar objections to these four requests. In addition to making objections discussed above, here, Merck objects to the extent they require Merck to obtain and produce information concerning any entity other than Merck on the grounds that such a Request is unduly burdensome and seeks documents not within Merck's possession, custody, or control. Merck also objects to this Request to the extent it seeks documents that would disclose information in violation of a patient's and/or reporter's right to confidentiality under federal law. Pursuant to 21 C.F.R. §§ 601.51(e)(3), 600.80(h) and 20.63(f), and 42 U.S.C. §§ 300aa-25(c), the names and certain other identifying information of any person or persons reporting adverse experiences of patients after being vaccinated with vaccines and the names and certain other identifying information of any such patients shall be redacted from any responsive information and/or documents produced in this litigation.

Regarding the former concern, Plaintiff is only seeking documents within Merck's possession, custody, or control. That said, Plaintiff maintains Merck has an obligation to produce documents within its possession, custody, or control that are responsive to these requests. Regarding the latter concern, notwithstanding Merck's objection, Merck



still has an obligation to directly respond to Plaintiff's specific requests and comply with the Discovery Rules. Given this, Merck's refusal to produce any documents in response to RFP No. 14 is unacceptable; Merck should produce responsive documents, or Plaintiff will move to compel a response.

Next, Plaintiff will address RFP Nos. 51-56. These largely concern adverse event reporting. RFP No. 51 asks for All adverse events YOU have reported to the Vaccine Adverse Event Reporting System ("VAERS"), the Secretary of the Department of Health and Human Services, the World Health Organization's VigiBase, or any other regulatory agency, that relate to GARDASIL or any of its ingredients. Merck asserts the same boilerplate objections as set forth above and states that it will produce "an appropriate extract of data from Merck's adverse event database that maintains available information for adverse experience reports received by Merck for conditions Plaintiff alleges she developed as a result of her Gardasil injection." Merck also states it will produce final study reports submitted to the FDA, final Periodic Safety Update Reports, the IND applications and INDs (same as above) and portions of the BLA.

It is Plaintiff's understanding that all adverse event reports related to Gardasil and Gardasil 9 are housed in Merck's MARRS database.

According to Merck's Adverse Event Report Form (AER) Guidelines, Merck collects initial and follow-up information for adverse events for patients participating in all Merck-sponsored studies anywhere in the world. In lieu of producing the full adverse event database for Gardasil and Gardasil 9, Merck instead wants to limit the production of adverse event data. In doing so, it appears Merck is seeking to create substantially more work and create further delay in order to limit and unreasonably narrow the production. All data concerning adverse and toxic reactions resulting from Gardasil in both animals and humans is relevant to the issue of determining risk. See *In re Neurontin Mktg., Sales Practices, & Prod. Liab. Litig.*, 612 F. Supp. 2d 116, 153-156, n.68 (D. Mass. 2009) (experts were given access to defendant's "Adverse Event Databases" and these experts, among other things, relied upon defendant's adverse event database and adverse event data and case reports to support their general causation opinions).

First, it would be much easier for Merck to produce the entire database, which is an electronic database, rather than narrowly pick and choose side effects to extract from the database.

Second, there are countless examples of AER coding errors and oversights that make Merck's proposal a bad idea. First, it is very unlikely that a limitation to Plaintiff's specific diagnoses will capture the myriad of conditions related to Mr. Otto's symptoms and diagnoses.

Third, patient experiences are not always adequately covered by coding



dictionaries such as MedDRA, which Plaintiff assumes Merck will be proposing as it did in Robi. Plaintiff's experts need all AERs in order to properly analyze and detect patterns, clustering and constellations of symptoms, not to mention detect coding errors.

Lastly, given that autoimmune disease incapsulates multiple maladies and symptoms, the coding issues outlined above, plaintiffs' experts and consultants will need access to the entire adverse event database for Gardasil and Gardasil 9, so that the experts/consultants can for themselves determine which symptoms, reports, and ailments are indicative of Mr. Otto's conditions or symptoms of autoimmune disease and how they are related to the general causation analysis in this case.

RFP Nos. 52-56 all ask for documents, including but not limited to, communications, concerning post-marketing investigation/analysis or causality assessments pertaining to adverse events, as well as documents concerning failure to comply with reporting requirements and regulations. Merck issues its standard boilerplate objections and agrees to produce custodial files for all of these requests, plus the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; portions of the GARDASIL® BLA; and final GARDASIL® Periodic Safety Update Reports for RFP Nos. 55 and 56. Again, if Merck is withholding relevant documents for any of these requests, it must indicate that it is doing so. See above regarding Plaintiff's understanding of custodians and search terms in play for these requests. Mr. Otto expects Merck to produce all communications concerning the investigations, analysis and causality assessment that it has performed on all of the adverse events it has received, including but not limited to, the adverse events and symptoms that are of the same nature or similar to those experienced by Mr. Otto. Please amend your response to confirm you will be producing responsive documents and produce the responsive documents, otherwise, Plaintiff will seek to compel your client's compliance.

RFP Nos. 62-65 pertain to adverse event analysis and database storage. RFP No. 62 asks for any databases used by Merck to record, store and/or document adverse events pertaining to Gardasil or any of its ingredients. Notwithstanding its usual objections, Merck agrees to produce an extract of its adverse event database related to Plaintiff's alleged injuries. Merck seems deliberately to be misinterpreting Plaintiff's request. Plaintiff seeks all documents, including communications discussing any post-marketing safety analyses or studies of Gardasil either performed by Merck or any third parties. Plaintiff is not seeking an extract of Merck's adverse event database concerning Plaintiff's alleged injuries. Merck should produce the entirety of the databases. Merck's responses to RFPs 63-65 contain the standard boilerplate plus objections to producing documents that are publicly available or otherwise equally available from third parties, including the published literature concerning Gardasil. Merck still agrees to produce documents from custodial files plus other things it has already agreed to produce. The same admonition applies here: if Merck is withholding responsive documents, it must identify what it is withholding.



**Regulatory (RFP Nos. 31-42)**

RFP No. 31 sought all applications Merck submitted to the FDA that pertained to the Gardasil vaccines. Merck makes a host of its usual objections, and offers to produce the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; and portions of the GARDASIL® BLA. Moreover, Merck seems to indicate that it will not produce documents found in the Investigational New Drug Applications or Biologics License Application related to GARDASIL® that relate to GARDASIL® manufacturing or marketing. As to the manufacturing and marketing sections, unlike in *Robi*, this case is bifurcated so there is no justification for Merck's arbitrary decision to withhold the manufacturing and marketing section of the BLAs for Gardasil 4 and Gardasil 9. Merck should produce *all* the relevant applications, and if it plans to withhold any, Merck should identify what it is withholding, pursuant to the Discovery Rules.

RFP No. 32 sought Merck's full Regulatory file for the Gardasil vaccines. In addition to its usual objections, Merck objects that "regulatory file" is vague and ambiguous and not defined and also objects to documents related to manufacturing and marketing. Merck has agreed to produce "portions" of the BLA for Gardasil 4 and the IND application (presumably sans the manufacturing and marketing portions, although Merck does not explicitly state as such) and INDs for the three monovalent HPV VLPs (types 11, 16, and 18). Plaintiff reiterates her argument that Gardasil 9 is relevant, as set forth above, and Merck should voluntarily produce these documents. And again, as to the manufacturing and marketing sections, unlike in *Robi*, this case is not bifurcated so there is no justification for Merck's arbitrary decision to withhold the manufacturing and marketing section of the BLAs for Gardasil 4 and Gardasil 9. Merck should produce the full IND applications, INDs, BLAs for both Gardasil 4 and Gardasil 9 as well as any other files containing regulatory correspondence, internal communications related to regulatory matters, minutes of regulatory related meetings, etc. Merck is in the best position to know where and how documents related to regulatory matters are housed and kept.

RFP Nos. 33-34 both deal with FDA communications concerning Gardasil. Merck repeats its boilerplate objections as in RFP No. 32 above, and Plaintiff refers Merck to his response above. Given that Merck relies heavily upon the FDA's approval of the Gardasil vaccines, Plaintiff is entitled to obtain all of Merck's communications with the agency, and all documents concerning those communications.

RFP No. 35 asks for all documents, including, but not limited to, communications, containing or discussing any inspection reports, Form 483s, warning letters, or any other deficiency letters concerning Merck facilities or Gardasil or any of its ingredients. Merck recycles objections previously discussed, but refuses to produce any responsive documents. Surely Merck could produce *some* responsive documents consistent with its objections. Should Merck fail to produce any documents in response to this request,



Plaintiff will move to compel.

RFP Nos. 36-39 ask for communications with regulatory bodies along with the documents associated with those communications. Merck makes its standard objections, but agrees to produce custodial files (alongside the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; and portions of the GARDASIL® BLA for RFP No. 38). Plaintiff expects the custodial searches to reflect the expanded set of custodians and search terms.

RFP Nos. 40 and 41 ask for documents concerning financial compensation paid to members of federal regulatory bodies. Merck issues terse boilerplate objections to these requests, and refuses to produce any responsive documents. Merck's objections are without merit. Plaintiff is entitled to obtain documents reflecting payments Merck has made to third parties related to Gardasil in order to identify financial conflicts of interest and biases, and to assess the credibility of those whose representations about the safety and efficacy of Gardasil Merck relies on.

RFP No. 42 also asks for documents concerning financial compensation. Specifically, it asks for all documents that identify the names of third-party individuals or entities that have ever received royalty or licensing payments, or other similar remuneration or compensation, from Merck from the sale of Gardasil or any of its ingredients. Plaintiff refers Merck to its answer regarding Merck's response to RFP Nos. 41 and 42.

**Labels and Safety Information (RFP Nos. 43-50)**

RFP Nos. 43-46 all concern Gardasil labels. RFP No. 43 asks for all draft and final copies of all package inserts and labels for Gardasil vaccines. Merck makes it standard objections regarding lack of geographic and temporal restrictions and non-quadrivalent HPV vaccine and ex-U.S. documents. Notwithstanding this, it has agreed to produce FDA-approved package inserts for GARDASIL® since it has been marketed in the United States. This is insufficient; Plaintiff has also asked for draft package inserts and labels. Please advise.

RFP Nos. 47-49 request documents pertaining to some particular parts of the Gardasil labels. Merck issues a boilerplate objection to the three requests: "Merck incorporates by reference its General Objections. Merck further objects to this Request as irrelevant, overly broad, unduly burdensome and not proportional to the needs of this case, as it seeks documents unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation, particularly as it seeks documents regarding labeling decisions made more than a decade ago and made even more irrelevant in the absence of any evidence in this case that Plaintiff's prescribing physicians relied upon any of the tables that are the subject of this Request; and to the extent it seeks documents concerning products other than the



quadrivalent human papillomavirus vaccine, GARDASIL®." (Merck's response to RFP No. 49 contained a further objection: "Merck also objects to this Request as improper as it seeks to have Merck construct documents for a hypothetical GARDASIL® label that is not the GARDASIL® label approved by the FDA.") Merck refuses to produce any documents in response to these requests. Merck's objections are baseless. These requests get at some of the core issues in this litigation: the safety of Gardasil, and whether or not the Gardasil labels contained misrepresentations or omissions. Moreover, Merck's objection concerning physician reliance is immaterial at this stage in the litigation, where Plaintiff-specific discovery has yet to occur in detail. Furthermore, Plaintiff has alleged he and his mother were exposed to Merck's misrepresentations through misleading advertising, and all product advertising is constrained by the contents of the label. Merck should produce relevant documents in its possession, custody, or control.

Regarding RFP No. 50, Merck makes many of the same boilerplate objections discussed above. If Merck is withholding responsive documents based on these objections, Merck must inform Plaintiff what is being withheld. And as explained above, Plaintiff anticipates receiving documents contained in the custodial files of the expanded set of custodians.

**Post-Marketing Safety Analysis (RFP Nos. 60 and 61)**

These requests ask for documents concerning Gardasil post-marketing safety analysis. Merck makes its same boilerplate objections, and agrees to produce documents from custodial files (plus portions of the Gardasil BLA). In addition, as Merck is relying upon studies and analysis conducted by foreign regulators, including but not limited to European regulators, its jurisdictional objections are without merit. This request specifically includes analysis that it was asked to conduct on behalf of foreign regulators (and communications regarding the same). Plaintiff expects Merck to provide amended responses and all responsive documents. If Merck is withholding responsive documents based on these objections, Merck must inform Plaintiff what is being withheld.

**Standard Operating Procedures (RFP No. 66)**

This request asks for Merck's standard operating procedures in effect between 2005 and the present that relate to collecting, analyzing, and reporting adverse events. Merck makes some of its standard objections (geographic, temporal, and subject matter scope; non-quadrivalent HPV vaccine; Gardasil manufacturing; ex-U.S.), but refuses to produce any documents. Plaintiff is entitled to all of Merck's standard operating procedures related to Gardasil so that she and her experts can compare what Merck did relative to Gardasil, whether it was compliant with its own operating procedures and/or whether those procedures were adequate. To the extent Merck objects for geographic of subject matter reasons, Merck is obligated to produce non-objectionable operating



procedures and tell Plaintiff what is being withheld so that Plaintiff can make an informed decision on whether to pursue these other operating procedures. To the extent that Merck is concerned with overbreadth with regard to the types of operating procedures sought, Plaintiff requests that Merck provide a list of operating procedures so that Plaintiff can select some of the most relevant ones.

## Marketing (RFP Nos. 67-70)

RFP No. 67 asks for all marketing plans or similar documents that Merck prepared to promote the sale, safety and/or efficacy of Gardasil vaccines. Merck objects to the request as overly broad, unduly burdensome, no temporal or geographic restrictions, it objects to Gardasil 9, and specifically objects to the extent the request seeks documents related to marketing and sales other than those related to Plaintiff's healthcare providers and/or sales and marketing activities limited to California and seeks documents regarding Merck's business and business activities outside of the United States. Merck has not offered to produce any documents responsive to this request. Merck's refusal to produce any documents responsive to this request is without merit. Merck is obligated to produce any marketing plans, product launch plans and similar documents to which it does not object and to explain what it is withholding according to its objections, again so that Plaintiff can make an informed decision on whether to pursue the withheld documents. The documents responsive to this request should not be limited to sales and marketing only in California because marketing and launch plans begin with overall plans that trickle down to the regional level.

Regarding RFP Nos. 68-70, Merck makes its standard boilerplate objections, and offers to produce information concerning print and television advertisements distributed in Orange County, California from 2012 to March 2015 (and third parties utilized for these advertisements), if any and to the extent accessible. Merck's temporal limitation is unwarranted; marketing long before Plaintiff received her injection is relevant and could very well have impacted events leading to her receipt of the vaccine. Plaintiff expects Merck to provide amended responses and all responsive documents.

## Influencing Scientific Opinion (RFP Nos. 71-78)

These requests all pertain to Merck's efforts to influence scientific opinion on Gardasil. Merck refuses to produce documents responsive to requests 71, 73-75, and 78, and issues boilerplate objections in doing so. Plaintiff believes these requests are highly relevant to several of Plaintiff's claims, and Merck's objections and refusal to produce any documents responsive to this request are not well taken. Plaintiff is entitled to discover whether Merck has had a hand in any published studies related to Gardasil (and geography has zero bearing on the issue). Moreover, Plaintiff is entitled to discover details regarding financial compensation paid to third parties to promote the safety and efficacy of Gardasil. Lastly, Plaintiff is also entitled to discover documents concerning Merck's efforts to discredit authors critical of Gardasil's safety and efficacy. Plaintiff expects Merck to provide amended responses and all responsive documents.



**Plans (RFP Nos. 79 & 80)**

These requests ask for Gardasil publication plans and product launch plans, respectively. Merck agrees to produce the publication plans, but refuses to produce any product launch plans pursuant to its boilerplate objections. Plaintiff does not understand Merck's outright refusal to produce responsive documents. Please advise.

**Organizational Hierarchy (RFP No. 81)**

This request asks for all documents, including, but not limited to, charts, depicting the organizational structure, chain of command, and/or hierarchy in effect between 1995 and the present with respect to the Gardasil vaccines or any of its ingredients. Merck refuses to produce any responsive documents, objecting on geographic/subject matter scope grounds; non-quadrivalent HPV vaccine and ex-U.S. documents grounds; and vagueness grounds. Merck's refusal to produce responsive documents is inappropriate. Surely Merck has some responsive documents in its possession that fit within the parameters of its objections. That is not to say that Merck's objections are well taken; just that Merck's refusal to produce documents is even less well taken. Plaintiff expects Merck to provide amended responses and produce responsive documents.

**Plaintiff-specific documents (RFP Nos. 57-59, 82-85)**

This set of requests specifically relates to the factual circumstances unique Plaintiff Otto. RFP Nos. 57-59 relate to Otto-specific adverse event reporting. Merck makes its standard boilerplate objections, and agrees to produce documents contained in custodial files plus the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; portions of the GARDASIL® BLA; and final GARDASIL® Periodic Safety Update Reports for RFP Nos. 57 and 58. Merck should advise if it is withholding any relevant documents on the basis of its objections. Plaintiff is seeking documents pertaining to plaintiff-specific causation here, and as such, they are crucial to Plaintiff's claims. Plaintiff expects Merck to provide amended responses and produce responsive documents.

RFP No. 82 seeks all documents, including, but not limited to, communications, that contain or discuss the results of all batch or lot testing performed on the batch or lot of GARDASIL vaccines that were administered to Zachariah Otto. Merck makes its standard boilerplate objections, but offers to produce release protocols, to the extent accessible, for the lots of vaccines purportedly provided to Plaintiff. This is plainly insufficient. Plaintiff has asked for all documents pertaining to this lot, including, but not limited to, communications. Plaintiff expects Merck to provide amended responses and produce responsive documents.

RFP No. 83 seeks all documents, including, but not limited to, communications,



that identify or discuss all locations (identified by name, address, and phone number) that received Gardasil vaccines from the same batches as those that were administered to Zachariah Otto. Merck makes its boilerplate objections, but further objects to this request as "impossible to respond as Merck has no lot-identifying information for the lots of GARDASIL® Plaintiff alleges he received." Plaintiff finds it hard to believe that Merck has no relevant information here. Plaintiff expects Merck to provide amended responses and produce responsive documents.

RFP No. 84 seeks all of Merck's communications with Zachariah Otto's medical providers, including but not limited to Hemesh Mahesh Patel, D.O., Timothy Allyn Munzing, M.D., and Nigel L. Kent, M.D., Southern California Permanente Medical Group, and Kaiser Foundation Hospitals, or any of their respective agents, concerning Gardasil or any of its ingredients. Merck makes it standard boilerplate objections, but offers to produce "information responsive to this Request, if any and to the extent accessible, memorializing GARDASIL®-related detail calls with Plaintiff's vaccinating physician made by Merck Professional Representative(s) for the time period 2012 to March 2015." Plaintiff sees no reason for Merck's limitations here; all communications between Merck and Plaintiff's medical providers and Kaiser concerning Gardasil are relevant, and this would include (but not be limited to) communications that Merck had with Kaiser and its agents in jointly preparing/financing the article *Surveillance of autoimmune conditions following routine use of quadrivalent human papillomavirus vaccine* published in the Journal of Internal Medicine. Plaintiff expects Merck to provide amended responses and produce responsive documents.

RFP No. 85 seeks All DOCUMENTS reflecting all meals, financial contributions, remunerations, payments, royalties, prizes, gifts, or trips Merck has provided to any of Zachariah Otto's medical providers, including, but not limited to, Hemesh Mahesh Patel, D.O., Timothy Allyn Munzing, M.D., and Nigel L. Kent, M.D., Southern California Permanente Medical Group, and Kaiser Foundation Hospitals. Merck issues boilerplate objections and declines to produce responsive documents. Plaintiff is seeking highly-relevant plaintiff-specific information with this request. Merck's refusal to produce any documents is groundless. Plaintiff expects Merck to provide amended responses and produce responsive documents.

## Kaiser (RFP Nos. 86-87)

RFP No. 86 seeks All COMMUNICATIONS YOU have had with Kaiser Permanente concerning GARDASIL. Merck issues boilerplate objections, with a further objection that the request is not limited communications between Merck and Plaintiff's vaccinating physician. Merck offers to produce the same information if offers in response to RFP No. 84. Merck misunderstands the nature of this request. What Plaintiff is seeking here is broader than the plaintiff-specific information discussed above. Rather, Plaintiff is seeking all Merck communications with Kaiser concerning Gardasil given the plaintiff-specific facts, *and* given Kaiser's role in conducting Gardasil



studies. Merck should produce these communications. Plaintiff expects Merck to provide amended responses and produce responsive documents.

RFP No. 87 seeks all documents (including but not limited to communications, drafts and final copies of clinical study reports, drafts of manuscripts, red-line edits made to manuscripts, redline edits made to clinical study reports or study design protocols) that pertain to any surveillance studies that Merck and/or Kaiser Permanente have conducted on Gardasil, including but not limited the study that was published by Merck and Kaiser Permanente in 2011 (Chao et al., Surveillance of autoimmune conditions following routine use of quadrivalent human papillomavirus vaccine, 271 J. Int. Med. 193 (2011)). Merck issues boilerplate objections but agrees to produce documents from custodial files and portions of the Gardasil BLA. If Merck is withholding responsive documents based on these objections, Merck must inform Plaintiff what is being withheld. Plaintiff expects Merck to provide amended responses and produce responsive documents.

## Employee files (RFP Nos. 88-93)

This set of requests ask for documents from the files of Merck employees most qualified to testify about certain issues. Merck issues boilerplate objections and refuses to produce documents in response to any of these requests. This is inappropriate. Please advise.

## Document retention (RFP No. 94)

This request asks for all documents that identify or discuss whether any of Merck's documents that would be relevant to this litigation, or otherwise would be responsive to plaintiff's document requests, have been intentionally or inadvertently destroyed. Merck refuses to produce documents in response to this request, issuing boilerplate objections. Plaintiff is entitled to discover documents related to Merck's shortcomings, if any, regarding retention and production of relevant documents in this litigation. Merck's objection and refusal to produce is unavailing. Plaintiff expects Merck to provide amended responses and produce responsive documents.

## Robi (RFP No. 95)

As discussed above, Otto expects Merck to permit him to use all documents produced in the Robi case. There is no prejudice or burden on Merck to permit such use given that both Robi and Otto are represented by the same firms and the use of previously produced documents is supported by the case law, see *Raymond Handling Concepts Corp. v. Superior Court*, 39 Cal. App. 4th 584, 590 (1995).



## Affirmative Defenses (RFP No. 96)

This request asks for all documents that Merck contends supports its Affirmative Defenses. Merck objects to this request as premature, and refuses to produce documents as a result, but it "expressly reserves the right to amend its response pending further investigation." This request is not premature; Merck can always produce what it has now, and then supplement with additional documents in the future.

# SPECIAL INTERROGATORIES

Plaintiff has propounded 90 special interrogatories in this litigation. Merck has refused to respond to many of these requests (ROG Nos. 2, 23-25, 27, 30, 33-34, 36-39, 44-46, 49, 51, 67-70, 74, 78, 80, 83-84, and 87). These will be addressed first.

## Interrogatories to which Merck refuses to respond

ROG No. 2 asks for Merck to "IDENTIFY all YOUR employees and custodians who received YOUR litigation hold (or similar spoliation letters) for the GARDASIL litigations." Merck objects to the interrogatory because it seeks information that is protected from discovery by the attorney-client privilege and/or work-product doctrine. Merck also objects to this Special Interrogatory as irrelevant, overly broad, unduly burdensome and not proportional to the needs of this case, as it seeks information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation. Merck further objects to this Special Interrogatory because the terms "similar spoliation letters" and "GARDASIL litigations" as used in this Special Interrogatory are vague and ambiguous. Merck also objects to this Special Interrogatory to the extent it seeks information concerning products other than the quadrivalent human papillomavirus vaccine, GARDASIL®. Plaintiff is confused as to why Merck thinks this interrogatory is unrelated to the subject matter involved in this litigation, as it is literally about this litigation. Please advise regarding Merck's failure to answer.

ROG No. 23 asks for Merck to "IDENTIFY all individuals and ENTITIES who have received royalty payments (including licensing fees) related to GARDASIL or any of its ingredients." Merck objects to this interrogatory as irrelevant, overly broad, unduly burdensome and not proportional to the needs of this case, as it seeks information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation. Merck also objects to this Special Interrogatory as overbroad, burdensome, and harassing because it requests the identity of "all individuals and ENTITIES" who have received royalty payments or licensing fees related to GARDASIL® or any of its ingredients without any temporal or geographic restrictions. Merck further objects to this Special Interrogatory as irrelevant, overly broad, unduly burdensome and not proportional to the needs of this case, particularly to the extent that this Special Interrogatory is construed to request information concerning



products other than the quadrivalent human papillomavirus vaccine, GARDASIL®, and to the extent it seeks information relating to Merck's business or business practices outside of the 50 United States and the District of Columbia. Plaintiff is entitled to discover this information, as it is highly relevant to issues of bias in the scientific landscape surrounding Gardasil. Please advise.

ROG No. 24 asks for Merck to "Identify all remunerations YOU have ever made to co-defendants, KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, NIGEL L. KENT, M.D.; TIMOTHY ALLYN MUNZING, M.D. or HEMESH MAHESH PATEL, D.O. For each remuneration, please state (a) the date of remuneration; (b) the amount or nature of the remuneration; (c) the recipient of the remuneration; (d) the names of your employees who have knowledge of the remunerations; and (d) the purpose of the remuneration." Merck makes the same boilerplate objections as above, but further objects that the interrogatory is unduly burdensome to the extent it purports to require Merck to create a document or provide a compilation, abstract, audit, and/or other document summary that does not currently exist or can be assembled by Plaintiff with substantially the same effort as it would require of Merck. Plaintiff disagrees that he can generate this information "with substantially the same effort as it would require of Merck." Moreover, Merck outright refuses to even identify the remunerations, so its quibble with the format of the information is a bit puzzling. Merck should identify the remunerations and comply with the interrogatory.

ROG No. 25 asks for Merck to "Identify all remunerations YOU have ever made to KAISER that pertain to GARDASIL. For each remuneration, please state (a) the date of remuneration; (b) the amount or nature of the remuneration; (c) the recipient of the remuneration; (d) the names of your employees who have knowledge of the remunerations; and (d) the purpose of the remuneration." Merck objects in the same fashion as it did to ROG No. 24. See above response.

ROG No. 27 asks for Merck to "Please explain in detail why YOU were contemplating replacing the Amorphous Aluminum Hydroxyphosphate Sulfate ("AAHS") adjuvant in GARDASIL with another adjuvant, and as part of YOUR response, please IDENTIFY: (a) all individuals who were involved in these discussions; (b) the dates these discussions took place; (c) the prospective candidates to replace AAHS; (d) the testing YOU performed on the replacement candidates; and (e) why YOU ultimately decided to not replace AAHS." Merck issues a boilerplate objection and refuses to answer. This interrogatory is highly relevant for several of Plaintiff's claims. Please advise.

ROG No. 30 asks "If YOU contend that GARDASIL *does not* causes auto-immune injuries, please IDENTIFY all witnesses that support YOUR contention." Merck issues boilerplate objections, and further objects that it should not have to answer because "the full subset of data, information and facts upon which Merck will rely in this litigation to respond to this and other issues should be determined at a later stage of the proceeding." Merck's objections are immaterial, for Merck is still able to identify witness



and then later supplement its responses. Please advise as to Merck's failure to do this.

ROG No. 33 asks Merck to "Please explain in detail why in some of the tables of YOUR package insert for GARDASIL YOU did not identify the results from the saline placebo control group individually." Merck issues boilerplate objections. Plaintiff is not sure why Merck refuses to answer this interrogatory. Please advise.

ROG No. 34 asks Merck to "Please explain why in some of the tables in YOUR package insert for GARDASIL YOU combined the AAHS control group and the saline placebo control group data together in reporting the control group results." Plaintiff has every right to learn why Merch chose to present its safety data in an obfuscated manner and to learn the true numbers for each of the separate testing and control groups so that her experts can independently analyze the numbers. Merck issues boilerplate objections. Plaintiff is not sure why Merck refuses to answer this interrogatory. Please advise.

ROG No. 36: "YOUR current GARDASIL label states: 'In all of the clinical trials with GARDASIL 9 subjects were evaluated for new medical conditions potentially indicative of a systemic autoimmune disorder. In total, 2.2% (351/15,703) of GARDASIL 9 recipients and 3.3% (240/7,378) of GARDASIL recipients reported new medical conditions potentially indicative of systemic autoimmune disorders, which were similar to rates reported following GARDASIL, AAHS control, or saline placebo in historical clinical trials.'

Please provide: (a) the rates of new medical conditions potentially indicative of systemic autoimmune disorders in the Gardasil group in historical clinical trials; (b) the rates of new medical conditions potentially indicative of systemic autoimmune disorders in the AAHS control group in historical clinical trials; and (c) the rates of new medical conditions potentially indicative of systemic autoimmune disorders in the saline placebo group in historical clinical trials. In identifying the rates, please provide the numerator, denominator, and the percentage similar to how YOU have identified the rates for Gardasil and Gardasil-9 patients in the portion of YOUR label quoted above."

Merck objects to this Special Interrogatory as irrelevant, overly broad, unduly burdensome and not proportional to the needs of this case, as it seeks information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation, including because it seeks information concerning a product other than the quadrivalent human papillomavirus vaccine, GARDASIL®, and seeks information regarding labeling that the Plaintiff's prescribing physicians could not have relied upon as Plaintiff alleges he was vaccinated with GARDASIL®. Merck also objects to this Special Interrogatory because term "historical clinical trials" as used in this Special Interrogatory is vague and ambiguous. This interrogatory is highly relevant to causation and liability for the reasons articulated *supra*. It is unclear why Merck refuses to answer. Please advise.

ROG No. 37 asks "If any governmental agency in any country has either restricted, rescinded or limited the use, mandate, or approval of GARDASIL due to



safety risks, please (a) identify the names of the countries and agencies; (b) state the specific actions that the country undertook with respect to GARDASIL; (c) state what safety risks led to the country or agency restricting, rescinding or limiting the use, mandate or approval of GARDASIL." Merck issues standard boilerplate objections as well as an objection to the extent it seeks information that is publicly available and otherwise equally accessible to both parties. This information is not equally accessible to both parties. It is also highly relevant to causation and liability and is also relevant to the issue of notice. Please advise as to Merck's refusal to answer.

ROG No. 38 asks for Merck to "IDENTIFY all ingredients YOU ever considered including in the GARDASIL vaccines." Merck issues boilerplate objections to this interrogatory, and refuses to answer it. Plaintiff is confused as to why Merck cannot answer this question. Please advise.

ROG No. 39 asks "For any ingredient YOU considered incorporating into the GARDASIL vaccine but ultimately did not incorporate, please state all facts that explain why YOU chose not to incorporate each such ingredient." Please see Plaintiff's paragraph regarding ROG No. 38 above, as it is applicable to this interrogatory.

ROG No. 42 asks "If YOU contend that GARDASIL prevents cervical cancer, please IDENTIFY all persons that support YOUR contention." Merck makes boilerplate objections and refuses to answer the interrogatory. Merck should answer; it can always indicate that it reserves the right to supplement the list later, as it does when it answers regarding studies. In its marketing Merck proclaims that Gardasil prevents cancer and Plaintiff has every right to ascertain the witnesses and documents that support Merck's proclamations.

ROG No. 44 asks "If YOU contend that GARDASIL prevents specific strains of the human papillomavirus (HPV), please identify the strains and state all facts that support YOUR contention. Merck objects to this Special Interrogatory because, as written, it is vague and ambiguous. There is abundant data establishing that GARDASIL® prevents cervical cancer and precancerous or dysplastic lesions caused by specific strains of human papillomavirus, in both published literature and in the documents to be produced by Merck. However, the full subset of the data, information and facts upon which Merck will rely in this litigation to respond to this and other issues should be determined at a later stage of the proceeding. Merck further objects to this Special Interrogatory as overly broad, unduly burdensome, not relevant to the subject matter of this action, and as not proportional to the needs of this case, including to the extent that this Special Interrogatory is construed to request information concerning products other than the quadrivalent human papillomavirus vaccine, GARDASIL®. This information is highly relevant to several of Plaintiff's causes of action. Please advise as to Merck's refusal to answer.

ROG No. 45 asks "If YOU contend that GARDASIL prevents specific strains of



the human papillomavirus (HPV), please IDENTIFY all persons that support YOUR contention." Please refer to Plaintiff's answer regarding ROG No. 44 above.

ROG No. 46 asks "If YOU contend that GARDASIL prevents specific strains of the human papillomavirus (HPV), please IDENTIFY all DOCUMENTS that support YOUR contention." Please refer to Plaintiff's answer regarding ROG No. 44 above.

ROG No. 49 asks "Is the aluminum content of GARDASIL vaccines consistent across the globe, or does it vary by country/region?" Merck issues boilerplate objections to this interrogatory. Plaintiff is confused as to why Merck refuses to answer this question. This is highly relevant to causation, and has nothing to do with a design defect claim, as Merck suggests. Please advise.

ROG No. 51 asks "Why is the aluminum content of Gardasil-9 different than the original Gardasil vaccine?" Plaintiff has every right to learn why Merck added more aluminum to Gardasil-9, and Merck's objections are without merit (Plaintiff refers Merck to *supra*, ROG No. 49).

ROG No. 67 asks "Has the FDA ever issued a "Warning Letter" to YOU that pertained in any respect to GARDASIL?" Merck issues boilerplate objections and refuses to answer, though it notes it will revisit its response upon proper narrowing by Plaintiff to the vaccine lots that he received. Plaintiff does not believe such narrowing is necessary, for such a warning letter need not be batch/lot specific. Moreover, this information is relevant to several of Plaintiff's causes of action and to combat Merck's affirmative defenses that it has complied with all FDA regualtions. Please advise as to Merck's refusal to answer.

ROG No. 68 asks "If the FDA has ever issued a 'Warning Letter' to YOU that pertained in any respect to GARDASIL, please (a) identify the date of each 'Warning Letter'; (b) state what regulatory or statutory deviations that the FDA had identified in its "Warning Letter(s)'; and (c) identify the dates of each of YOUR responses to the FDA's 'Warning Letter(s).'" Given that Merck makes the same objections, Plaintiff refers Merck to the above paragraph regarding ROG No. 67.

ROG No. 69 asks "Has the FDA ever issued a "Form 483" to YOU that pertained in any respect to GARDASIL?" Given that Merck makes the same objections, Plaintiff refers Merck to the above paragraph regarding ROG No. 67. Again, lot/batch narrowing is not appropriate, as this interrogatory is relevant to Gardasil's safety profile, which is in turn relevant to several of Plaintiff's causes of action and to counter Merck's affirmative defenses.

ROG No. 70 asks "If the FDA has ever issued a 'Form 483' to YOU that pertained in any respect to GARDASIL, please (a) identify the date of each 'Form 483' YOU received; (b) state what potential regulatory or statutory violations that the FDA



had identified in its 'Form 483'; and (c) identify the dates of each of YOUR responses to the FDA concerning the 'Form 483.'" Please see the preceding paragraph regarding ROG No. 69 for a response to Merck's objections.

ROG No. 74 asks Merck to "Please IDENTIFY all drafts of the GARDASIL labels (including drafts that were never implemented)." Merck issues its boilerplate objections and refuses to answer. This interrogatory is highly relevant to Plaintiff's failure to warn claim. Please advise as to Merck's refusal to answer.

ROG No. 78 asks Merck to "Please IDENTIFY all third parties YOU have retained to assess whether GARDASIL is associated with autoimmune injuries." Merck issues its boilerplate objections and refuses to answer. This interrogatory is relevant to causation. Merck also objects to the interrogatory as premature and as seeking information protected by the work product doctrine to the extent that it seeks the identification of expert witnesses retained in connection with litigation. Plaintiff is not seeking the identification of expert witnesses. Given this, please advise as to Merck's refusal to answer. Moreover, Merck also objects to the interrogatory to the extent it seeks information or documents pertaining to alleged injuries or alleged reactions other than those that Plaintiff allegedly suffered following his alleged administration of Gardasil. Merck's objection is immaterial, as Plaintiff should be entitled to discover information pertaining to *all* autoimmune injuries, given the similar mechanisms of injury and the overlapping constellation of symptoms and conditions shared by many autoimmune patients, including Plaintiff Otto.

ROG No. 80 asks Merck to "Please IDENTIFY all third parties YOU have retained to assess whether GARDASIL is associated with any of the following adverse events: Postural Orthostatic Tachycardia Syndrome, Orthostatic Intolerance, Dysautonomia, Fibromyalgia, Neurological Injuries, Chronic Fatigue Syndrome or Small Fiber Neuropathy." Merck issues the same objections as it does to ROG No. 79. Please refer to Plaintiff's response in the preceding paragraph. Plaintiff further adds here that this interrogatory asks about the specific conditions with which Plaintiff Otto has been diagnosed. Please advise as to your failure to answer.

ROG No. 83 asks "Do YOU provide any incentives to healthcare organizations, including but not limited to KAISER or any Kaiser Permanente entity, to inject their patients with GARDASIL?" Merck issues standard boilerplate objections to this interrogatory. Please advise as to your refusal to answer.

ROG No. 84 asks Merck to "Please explain in detail what incentives YOU provide to healthcare organizations, including but not limited to KAISER or any Kaiser Permanente entity, to inject their patients with GARDASIL." This information is relevant as Kaiser is a co-defendant and Otto has every right to know if there was any incentive agreements between Merck and Kaiser concerning Gardasil vaccinations. Merck issues standard boilerplate objections to this interrogatory. Please advise as to your



refusal to answer.

ROG No. 87 asks Merck to "Please IDENTIFY all KEY OPINION LEADERS YOU have utilized to support or promote the safety and efficacy of GARDASIL." This request is relevant to identify key witnesses, which is one of the functions of interrogatories. Merck issues standard boilerplate objections to this interrogatory. Please advise as to your refusal to answer.

We ask that you please amend your response (and objections) and provide substantive responses to all of the above referenced interrogatories.

## Other interrogatories

ROG No. 1 asks for Merck to "IDENTIFY all individuals and ENTITIES involved in the: (a) design; (b) manufacturing; (c) labeling; and (d) distribution of GARDASIL." Merck issues boilerplate objections, and further objects to the interrogatory as unduly burdensome to the extent it purports to require Merck to create a document or provide a compilation, abstract, audit, and/or other document summary that does not currently exist or can be assembled by Plaintiff with substantially the same effort as it would require of Merck. Merck then states that information responsive to this interrogatory can be found in the final Clinical Study Reports for Merck GARADASIL® clinical studies; final reports for Merck GARDASIL® postlicensure studies; final reports for Merck GARDASIL® preclinical studies, including studies conducted on the adjuvant contained in GARDASIL® (Amorphous Aluminum Hydroxyphosphate Sulfate); the GARDASIL® Investigational New Drug ("IND") Application; the INDs for the three monovalent HPV Virus-Like Particles ("VLPs"), types 11, 16, and 18; and portions of the GARDASILR® Biologics License Application ("BLA"). Plaintiff would like to know if it is Merck's position that all individuals and entities involved in the design, manufacturing, labeling, and distribution of GARDASIL are identified within these documents. If there are additional individuals and entities involved, Merck must identify those as well.

ROG Nos. 10-17 all ask Merck to identify different types of adverse event reports. Merck issues lengthy objections to these interrogatories. For instance, in response to ROG No. 10, Merck objects to because the terms "auto-immune related adverse event reports," "auto-immune injury," "constellation of symptoms," and "causality determination" as used in this Special Interrogatory are vague and ambiguous. Merck also objects to this Special Interrogatory as overbroad, burdensome, and harassing because it requests the identification of "all auto-immune related adverse event reports" without any temporal or geographic restrictions or an attempt to more narrowly define the categories of adverse event reports sought. Merck further objects to this Special Interrogatory as overly broad, unduly burdensome, not relevant to the subject matter of this action, and as not proportional to the needs of this case to the extent it seeks information or documents pertaining to alleged injuries or alleged reactions other than those that Plaintiff allegedly suffered following his alleged



administration of GARDASIL®, and to the extent that this Special Interrogatory is construed to inquire into studies other than Merck studies on GARDASIL® when injected or its components when individually injected. Merck also objects to this Special Interrogatory as improper and unduly burdensome in its request for the information listed in sub-part (e) as such requested information is unnecessary and beyond what would be required to reasonably identify an adverse event report responsive to this Special Interrogatory. Merck further objects to this Special Interrogatory to the extent it seeks information relating to Merck's business or business practices outside of the 50 United States and the District of Columbia. Merck also objects to this Special Interrogatory as unduly burdensome to the extent it purports to require Merck to create a document or provide a compilation, abstract, audit, and/or other document summary that does not currently exist or can be assembled by Plaintiff with substantially the same effort as it would require of Merck. Merck further objects to this Special Interrogatory because it requests Merck to disclose the "names of all individuals involved in the reporting of the adverse event." Such a disclosure would violate the patient's and/or reporter's right to confidentiality under federal law. Pursuant to 21 C.F.R. §§ 601.51(e)(3), 600.80(h) and 20.63(f), and 42 U.S.C. §§ 300aa-25(c), the names and certain other identifying information of any person or persons reporting adverse experiences of patients after being vaccinated with vaccines and the names and certain other identifying information of any such patients shall be redacted from any responsive information and/or documents produced in this litigation.

Notwithstanding these objections, Merck states that information responsive to these requests can be found in final Clinical Study Reports for Merck GARDASIL® clinical studies; final reports for Merck GARDASIL® post-licensure studies; patient-level SAS data that accompanied GARDASIL® Clinical Study Reports as submitted to the FDA; final copies of GARDASIL® Periodic Safety Update Reports; the GARDASIL® Investigational New Drug ("IND") Application; the INDs for the three monovalent HPV Virus-Like Particles ("VLPs"), types 11, 16, and 18; and portions of the GARDASIL® Biologics License Application ("BLA"). Is it Merck's position that all the information sought in these interrogatories is contained in these sources? If not, Merck supplement its response with the proper identifications.

ROG No. 52 asks "Have all forms of GARDASIL included YOUR proprietary AAHS adjuvant?" Merck issues boilerplate objections and states it will produce "FDA-approved package inserts for GARDASIL® since it has been marketed in the United States containing information responsive to this Special Interrogatory." Plaintiff is looking for a "yes or no" answer here. Please respond accordingly.

ROG Nos. 53-64 are a series of contention interrogatories and related inquiries. Merck answers the contention interrogatories (ROG Nos. 53, 57, and 61), but is evasive with the rest. These remaining interrogatories call for Merck to identify facts and witness supporting its contentions. For each of these, Merck issues a short boilerplate objection (Merck incorporates by reference its General Objections. The full subset of the data,



information and facts upon which Merck will rely in this litigation to respond to this and other issues should be determined at a later stage of the proceeding. Merck further objects to this Special Interrogatory as overly broad, unduly burdensome, not relevant to the subject matter of this action, and as not proportional to the needs of this case, including to the extent that this Special Interrogatory is construed to request information concerning products other than the quadrivalent human papillomavirus vaccine, GARDASIL®) and then states that the GARDASIL® Investigational New Drug ("IND") Application; the INDs for the three monovalent HPV Virus-Like Particles ("VLPs"), types 11, 16, and 18; and portions of the GARDASIL® Biologics License Application ("BLA") containing information responsive to this Special Interrogatory. This is not a sufficient response. Merck should identify the information sought in the interrogatories, and to the extent that information is not complete, Merck can supplement its responses in the future.

ROG No. 65 asks "Has the Food Drug Administration ("FDA") ever accused YOU of failing to comply with any federal laws or federal regulations with respect to GARDASIL?" ROG No. 66 asks "If the Food Drug Administration ("FDA") ever accused YOU of failing to comply with any federal laws or federal regulations with respect to GARDASIL, please (a) IDENTIFY all instances when the FDA informed YOU; (b) the specific regulations and laws which the FDA accused YOU of breaching; (c) the specific conduct which YOU undertook or failed to undertake which the FDA had determined was in violation of any federal laws or regulations." Merck issues boilerplate objections to these interrogatories, and states, as it does elsewhere, that the GARDASIL® Investigational New Drug ("IND") Application; the INDs for the three monovalent HPV Virus-Like Particles ("VLPs"), types 11, 16, and 18; and portions of the GARDASIL® Biologics License Application ("BLA") containing information, if any, responsive to this Special Interrogatory. This is not a sufficient answer. ROG No. 65 is a yes or no question which Merck does not answer, and it is highly implausible that Merck's answer to ROG No. 66 contains the information sought in the interrogatory.

ROG Nos. 71-73, 77, and 79 ask for Merck to identify certain individuals within the company who were responsible for certain Gardasil-related tasks. Merck issues boilerplate objections to these requests and offers to meeting minutes from the teams involved with the tasks. Is it Merck's position that these minutes identify all the individuals sought in ROG Nos. 71-73, 77, and 79? Also please identify the bates numbers of the minutes which you contend are responsive to these requests.

ROG No. 81 asks Merck to identify "all marketing or promotional material concerning GARDASIL that YOU provided to KAISER." Merck issues boilerplate objections but states it will produce "information, if any and to the extent accessible, memorializing GARDASIL®-related detail calls with Plaintiff's vaccinating physician made by Merck Professional Representative(s) for the time period 2012 to March 2015 containing information responsive to this Special Interrogatory." This is clearly not responsive. Please advise as to Merck's failure to answer this interrogatory.



ROG No. 82 asks Merck to identify "all YOUR COMMUNICATIONS with KAISER concerning GARDASIL." Merck issues boilerplate objections and offers to produce the same information as it did in response to ROG No. 81. Again, this is not responsive. Please advise as to Merck's failure to answer this interrogatory.

ROG. No. 85 asks Merck to identify "all third parties YOU utilize to promote the safety or efficacy of GARDASIL." Merck issues boilerplate objections and states that Merck will produce "information concerning third parties utilized by Merck, if any, for print and television advertisements in Orange County, California from 2012 to March 2015, if any and to the extent accessible." Plaintiff takes fault with Merck's range of dates; information prior to 2012 is highly relevant for determining the extent of exposure to misrepresentations and/or omissions concerning Gardasil.

ROG. No. 86 asks Merck to identify "all medical journal articles concerning GARDASIL that YOU had any part in drafting, editing, ghostwriting, or financing." Merck issues boilerplate objections and states that "Subject to and without waiving the foregoing objections, Merck states that Merck employees have authored peer-reviewed publications related to GARDASIL®. If this Interrogatory is appropriately limited to a certain publication, Merck will consider revisiting its response." Plaintiff will not limit this interrogatory to a certain publication; Plaintiff is entitled to discover the extent of Merck's efforts to generate scientific literature on Gardasil.

ROG. No. 89 asks Merck to identify "all GARDASIL television commercials YOU utilized in Southern California between 2005 and 2015." Merck issues boilerplate objections and states that it will produce "information concerning print and television advertisements distributed in Orange County, California from 2012 to March 2015, if any and to the extent accessible." Again, Plaintiff needs pre-2012 information.

ROG No. 90 asks Merck to identify "all GARDASIL advertisements, including, social media advertisements, internet advertisements, billboards, magazines, and posters YOU utilized to promote GARDASIL in Southern California between 2005 and 2015." Merck issues the same boilerplate objections and the same offer to produce information as it does in its response to ROG No. 89. This response is again insufficient for the reason outlined above, but it also insufficient given that Plaintiff has asked for social media advertisements. Plaintiff needs information about social media advertising, in addition to Gardasil print and television advertising. Please advise.

I ask that you please amend your response (and objections) and provide substantive responses and responsive documents to all the above referenced interrogatories and document requests.

Plaintiff's current deadline to move to compel (per prior agreement of the parties) is November 15, 2021. Accordingly, I ask that you please provide amended response



by **November 10, 2021,** and/or otherwise respond to this meet and confer communication by November 10, 2021.  If you chose to respond to the meet and confer letter by that date (as opposed to amending your responses), then I respectfully would ask that we agree to a further brief extension of the motion to compel deadline to allow us an adequate opportunity to further meet and confer.

I look forward to receiving your response and/or amended interrogatory and document request responses by November 10, 2021.

With Kindest Regards,

Bijan Esfandiari
BAUM HEDLUND ARISTEI & GOLDMAN, PC
besfandiari@baumhedlundlaw.com

cc:   Nicole Maldonado (nmaldonado@baumhedlundlaw.com)
      Cindy Hall (chall@baumhedlundlaw.com)
      Harrison James (hjames@baumhedlundlaw.com)
      Dino S. Sangiamo (dssangiamo@venable.com)
      Christina L. Gaarder (CLGaarder@Venable.com)
      Tara S. Lawler (tara.lawler@morganlewis.com)
      Brian O'Donoghue (bodonoghue@goldmanismail.com)