# EXHIBIT 7



December 28, 2021

***VIA ELECTRONIC MAIL***

Dino S. Sangiamo
Brian Healy
Christina Gaarder
**Venable LLP**
750 E. Pratt St., Suite 900
Baltimore, MD 21202
dssangiamo@Venable.com
bjhealy@venable.com
CLGaarder@Venable.com

Paul E. Dwyer
Clint D. Watts
**McElroy, Deutsch, Mulvaney &**
**Carpenter, LLP**
117 Metro Center Blvd., Ste. 1004
Warwick, RI 02886
pdwyer@mdmc-law.com
cwatts@mdmc-law.com

Deanne Lynne Miller
Nicolette Leilani Young
**Morgan Lewis & Bockius LLP**
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
deanne.miller@morganlewis.com
nicolette.young@morganlewis.com

Lisa C. Dykstra
**Morgan Lewis & Bockius LLP**
1701 Market St.
Philadelphia, PA 19103
lisa.dykstra@morganlewis.com

Re:   *Balasco v. Merck, et al.*, Case No. 1:20-cv-00364-MSM-PAS
      Merck's Responses to Plaintiff's First Set of Requests for Production of
      Documents

Dear Counsel:

I write to meet and confer concerning Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp.'s (collectively "Merck") responses to Plaintiff Julia Balasco's ("Plaintiff") First Set of Requests for Production of Documents. On a general level, these responses contain several deficiencies and improper, boilerplate objections that are impeding the discovery process in this case. Certain individual responses are similarly deficient, and each are addressed in turn below. Given these deficiencies, Plaintiff hopes that Merck will amend its responses to avoid the need for court intervention. To the extent Merck does not agree to amend its responses to any of these discovery requests, please advise of a date and time within the next ten days that Merck is available to further discuss the issues outlined herein.

## General Issue 1: Custodians

Throughout its responses, Merck makes repeated reference to twelve

10940 Wilshire Boulevard, Suite 1600, Los Angeles, CA 90024

80 East Sir Francis Drake Boulevard, Suite 3J, Larkspur, CA 94939 | 2101 L Street, N.W., Suite 800, Washington, D.C. 20037

(310) 207-3233 | baumhedlundlaw.com | (202) 466-0513



custodians. This number obviously predates later discussion between our office and Merck's counsel in another pending Gardasil-related case, *Gramza v. Merck*. Based on those conversations, Plaintiff believes that the accurate custodial count is now 25. Accordingly, Plaintiff interprets Merck's references to custodial files with this later, larger number in mind.

## General Issue 2: Non-Custodial Searches

Ongoing conversations in *Gramza* have resulted in Merck agreeing to search non-custodial searches for certain categories of documents (marketing, for example). Plaintiff expects the same effort with respect to *Balasco* requests that call for similar sources of information.

## General Issue 3: Gardasil 9

Merck has refused to produce any documents or information related to Gardasil 9. Again, Merck's response to these discovery requests predate subsequent conversations between the parties' counsel in which Merck agreed to produce documents related to Gardasil 9. Plaintiff is entitled to that information here, too, and expects Merck will conduct a search of all responsive Gardasil 9 information.

## General Issue 4: Foreign Regulatory Materials

Merck appears to be unwilling to produce foreign regulatory materials concerning Gardasil. This position is especially evident in Merck's responses to certain requests concerning Japanese regulatory actions. These documents are highly relevant to Plaintiff's case. In Japan, a cascade of post-Gardasil injuries caused the Japanese government to rescind its recommendation that girls receive the HPV vaccine. *See* Compl. ¶ 312-15. To say that documents regarding Gardasil adverse events in Japan is not relevant to Merck's knowledge of associated safety risks is an untenable position. The contrary is true; this is relevant information. Courts around the country agree. *See, e.g.*, *Hodges v. Pfizer, Inc.*, No. 14-4855 ADM/TNL, 2016 WL 1222229, *2-3 (D. Minn. Mar. 28, 2016) (upholding magistrate's order requiring defendants to produce foreign regulatory documents); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 508391, at *2-3 (ordering defendants to produce foreign regulatory documents); *Hardy v. Pharmacia Corp.*, No. 4:09-CV-119 (CDL), 2011 WL 2118983, at *3 (M.D. Ga. May 27, 2011) (finding that foreign labels and patient guides are relevant given that plaintiff could use them to "discover what Defendants knew about the potential risks of the products at issue"). There is, to the best of Plaintiff's understanding, nothing manifestly different with Gardasil outside of the U.S., and any documents relating to non-U.S. Gardasil are likely applicable or at least informative of the U.S. Gardasil. This limitation is thus manifestly inappropriate. To the extent Merck is making a proportionality objection, Merck has failed to explain *why* production of foreign materials would be unduly burdensome. If Merck declines to produce the requested



foreign regulatory materials, Plaintiff will move to compel these documents.

## General Issue 5: *Robi* Production

In response to many Requests, Merck has referred Plaintiff to its production in *Robi*. Plaintiff appreciates Merck's offer to let Plaintiff use the *Robi* production in this litigation. Nonetheless, there are some deficiencies with the *Robi* production that must be addressed up front. First, given the court-ordered bifurcation in *Robi*, the document production there is missing certain categories of non-causation documents, such as marketing and advertising documents. Plaintiff would like marketing and advertising documents here. Additionally, Plaintiff is entitled to the entirety of Merck's MARRS database for Gardasil and Gardasil 9, not merely the MARRS chart derived from the algorithm Merck gave the court in *Robi*. This information is highly relevant to Plaintiff's claims, as Gardasil adverse event information goes to core issues concerning Merck's knowledge of safety risks.

## General Issue 6: Temporal & Geographical Objections

Merck objects to many Requests as lacking temporal and geographical limitations. These objections are misplaced. As to Merck's objections on geographical scope, similar to the above-referenced foreign regulatory documents, Plaintiff is of the position that responsive documents are responsive documents, irrespective of their location. If Merck is in possession of documents that touch on issues that are relevant to Plaintiff's case, such as the safety of Gardasil, Merck must produce them, full stop. Regarding temporal scope, the same logic applies; there are obviously relevant documents that predate Gardasil's public rollout, and given that Merck continues to sell the product, there are surely relevant documents—e.g., communications pertaining to Gardasil's safety and efficacy—that are still being generated to this very day. In short, Merck should produce all responsive documents.

## General Issue 7: Proportionality Objections

F.R.C.P. 26(b)(1) states, in relevant part, that:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevance is construed broadly to include "any matter that bears on, or that



reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).

Merck has lodged an objection for virtually every one of Plaintiff's document requests, arguing the documents sought are "not proportional to the needs of the case." As set forth above, Rule 26 is not so constrained, and Merck's objections are not well taken. It is Merck's burden to establish that the discovery sought is not proportional pursuant to the whole Rule, not only one aspect of it, and it should do so with specificity. It is Plaintiff's position, though, that Merck cannot satisfy this burden, for the Rule 26 factors, such as the amount in controversy, the parties' relative access to relevant information, and the importance of the discovery in resolving the issues, all militate in favor of Plaintiff obtaining the relevant discovery.

## General Issue 8: Rule 34 Requirements

According to F.R.C.P. 34, "[a]n objection must state whether any responsive materials are being withheld on the basis of [a particular] objection. An objection to part of a request must specify the part and permit inspection of the rest" and "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." See F.R.C.P. 34(a)(2)(C) and (E)(i).

Merck has lodged a myriad of boilerplate objections to Plaintiff's requests without specifying what documents are being withheld based on particular objections, making it impossible for Plaintiff to figure out whether Merck is withholding certain documents while producing others, notwithstanding the objections. As such, Merck's responses are not compliant with Rule 34 and should be amended.

The 2015 Committee Notes on Rule 34 are instructive. The Notes state, in relevant part:

Rule 34(b)(2)(A) is amended to fit with new Rule 26(d)(2) ...

Rule 34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity. This provision adopts the language of Rule 33(b)(4), eliminating any doubt that less specific objections might be suitable under Rule 34. The specificity of the objection ties to the new provision in Rule 34(b)(2)(C) directing that **an objection must state whether any responsive materials are being withheld on the basis of that objection**. **An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad. Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified**



**sources. When there is such an objection, the statement of what has been withheld can properly identify as matters "withheld" anything beyond the scope of the search specified in the objection.**

\*\*\*

**Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections.** The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."

F.R.C.P. 34 Committee Notes, 2015, emphasis added.

Merck's failure to comply with Rule 34 and failure to produce a corresponding privilege log leaves Plaintiff guessing as to what documents have been produced verses what documents has been withheld.  Merck should amend its responses to comply with the Federal Rules.

## Issues with Specific Responses

**RFP No. 1**: This Request asks Merck to produce 300 mL of Amorphous Aluminum Hydroxyphosphate Sulfate ("AAHS"). Merck objects that the request is overly broad, burdensome, not relevant, not proportional, that AAHS, on its own, is not the vaccine at issue in this case, and it seeks Merck's proprietary formulation, which is a trade secret.

This request is highly relevant. As you are aware, AAHS has never been examined or tested outside of Merck.  Plaintiff's experts have requested a sampling so they can conduct their own testing and analysis. As you are also aware, it is Plaintiff's contention that AAHS is one of the likely culprits in causing injury in these cases. Plaintiff has no other means of obtaining this sample, which is exclusively in Merck's possession.  As such, there is no justification for Merck's refusal to produce a sample of the concoction. As to any confidentiality or commercial sensitivity concerns, the Court has already approved and entered the parties' stipulated protective order, which prohibits disclosure of Merck's proprietary aluminum adjuvant. Of course, there is no risk of Plaintiff's experts attempting to obtain some commercial benefit given they believe it is toxic. Should Merck refuse to comply with this Request, Plaintiff will move to compel.



Page 6

**RFP No. 2**: This Request asks Merck to produce 10 vials of the commercially available Gardasil vaccines (5 vials of Gardasil and 5 vials of Gardasil 9). Merck objects to producing the Gardasil samples on grounds that the Request is overly broad, unduly burdensome (because it is a cold chain product that requires non-standard handling and is equally available to Plaintiff as a commercial product), not relevant, and not proportional to the needs of the case. In light of prior meet and confer discussions in *Gramza* concerning this Request, Plaintiff believes the parties are at an impasse on this Request. Accordingly, Plaintiff plans to move to compel production should Merck maintain its objections.

**RFP No. 3**: This Request asks Merck to produce all studies it has performed that are related to the Gardasil vaccines. Merck makes several objections, but states that it will produce responsive *Robi* documents. That is fine, so long as Merck actually complies with the full letter of this Request in *Robi*. If that is not the case (and please advise if that is not the case), then Plaintiff seeks any and all additional, responsive documents not produced in *Robi*. Failure to provide these documents will necessitate a motion to compel on this issue.

Moreover, it is worth noting that, in other Gardasil-related cases, Merck has objected to the breadth of various plaintiffs' "study" definitions. Here, Plaintiff defines "study" as including all databases containing data from Merck's studies (e.g. clinical trials databases), laboratory research; laboratory tests; pre-clinical studies; animal studies; insect studies; studies that are part of the Investigational New Drug ("IND") application; clinical studies; human clinical trials, including Phase I trials, Phase II trials, and Phase III trials; studies that are part of the Biologics License Application; post-licensing studies, including Phase IV trials and monitoring studies; meta-analyses, data collection (including patient chart reviews), analyses of adverse event reports obtained from any source, causality assessments, independent observations, retrospective analyses, analytical analyses, ecological analyses, epidemiological studies, review and analysis of case reports, review of journal articles, and any other analyses conducted in the United States or in any other country, to gather information on GARDASIL, whether or not conducted for regulatory purposes.  If Merck is withholding any studies related to the Gardasil vaccines on the grounds that Plaintiff's definition of "STUDY" is overbroad, please clarify so that Plaintiff can move to compel accordingly.

**RFP No. 4**: This Request asks Merck to produce all studies it has performed that involved any of the ingredients (either individually or in combination with other products) of the Gardasil vaccines. Merck again issues some boilerplate objections and refers Plaintiff to its *Robi* production. Plaintiff, in turn, refers Merck to her response to Merck's response to RFP No. 3; if Merck's response here is not compliant with the letter of this Request, Plaintiff will need to produce any and all remaining documents not covered by the *Robi* production.



**RFP No. 5**: This Request asks Merck to produce all "studies" it has performed that involved any of the following ingredients, either alone or in combination with other products: (a) Polysorbate 80; (b) Sodium Borate (Borax); (c) L-Histidine; (d) genetically modified yeast protein; (e) *Saccharomyces cerevisiae;* (f) HPV LI-DNA; (g) Iscomatrix; and (h) AAHS. Merck first issues a misplaced vagueness objection. This objection is misplaced because "studies" is defined; Merck knows what Plaintiff is seeking, and it should produce the responsive documents. Merck then issues a series of boilerplate objections (overly broad, unduly burdensome, harassing, not relevant, not proportional to the needs of the case). Notwithstanding this, Merck offers to produce final Clinical Study Reports for Merck GARDASIL® clinical studies; final reports for Merck GARDASIL® post-licensure studies; and final reports for Merck GARDASIL® preclinical studies, including studies conducted on the adjuvant contained in GARDASIL® (Amorphous Aluminum Hydroxyphosphate Sulfate). This response clearly does not comply with the Request.

**RFP No. 6**: This Request asks Merck to produce all Gardasil studies (including studies involving individual ingredients) whose results Merck never disclosed to the FDA. In response, Merck issues some boilerplate objections and refers Plaintiff to its *Robi* production. Plaintiff, in turn, refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 7**: This Request asks Merck to produce all Gardasil studies or ingredients (either individually or in combination with other products) whose results Merck has never publicly disclosed. In response, Merck issues some boilerplate objections and refers Plaintiff to its *Robi* production. Plaintiff, in turn, refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 8**: This Request asks Merck to produce all studies Merck claims supports the safety of AAHS in vaccines. In response, Merck issues some boilerplate objections and refers Plaintiff to its *Robi* production. Plaintiff, in turn, refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 9**: This Request asks Merck to produce, for the studies referenced in Requests 3-8: "(a) the raw data (i.e. case report forms) from each of the STUDIES; (b) draft clinical study reports; (c) protocols for each STUDY; (d) modifications, if any, to the protocols of each STUDY; (e) interim study reports for each STUDY; (f) final study reports for each STUDY; (g) adverse events reported by test subjects (if applicable) in each STUDY; (h) adverse events reported by investigators in each STUDY; (i) adverse events YOU reported to regulatory officials for each STUDY; (j) new medical conditions reported by test subjects (if applicable) in each STUDY; (k) new medical conditions reported by investigators in each STUDY; (l) new medical conditions YOU reported to government officials for each STUDY; (m) investigator notes from each STUDY; (n) draft and final copies of patient consent forms (if applicable) from each STUDY; (o) memoranda, Power Point or other slide show presentations that discuss any of the



STUDIES or the results of any STUDIES; (p) meeting minutes concerning any of the STUDIES; (q) efficacy analyses for each STUDY; (r) safety analyses for each STUDY; and (s) adverse event analyses for each STUDY."

In response, Merck objects on burden, relevance, attorney-client privilege, and work product grounds, but also proposes to meet and confer with Plaintiff to see if the Request can be narrowed. It is Plaintiff's position that this Request should not be narrowed, as all of the requested documents pertain to Merck's knowledge concerning the safety of Gardasil, whether or not the documents are drafts or finished products. Moreover, Plaintiff would like to request paper case report forms in addition to ECRFs.

**RFP No. 10**: This Request asks Merck to produce all documents, including but not limited to, internal or third-party communications, that relate to, discuss or mention, any studies involving Gardasil; performed by *any* third parties. Merck makes a number of boilerplate objections, including the aforementioned temporal and geographic scope objections, as well as attorney-client privilege and work product objections. Nonetheless, Merck offers to produce documents from custodial files, as well as the GARDASIL® Investigational New Drug ("IND") Application; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; and portions of the GARDASIL® Biologics License Application ("BLA"), except for the Chemistry, Manufacturing and Controls (CMC) sections of the INDs and BLA. It is unclear to Plaintiff why the CMC sections of the INDs and BLA cannot be produced. Please advise, for it is Plaintiff's position that Merck should produce the CMC sections.

**RFP No. 11**: This Request asks Merck to produce all documents, including but not limited to communications, that relate to, discuss or mention Merck's Gardasil studies (or studies involving any of Gardasil's individual ingredients). Merck issues boilerplate objections, and also claims the Request is unnecessarily duplicative of certain *Robi* requests. At any rate, it offers to produce *Robi* documents in response. Plaintiff refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 12**: This Request asks for "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention any GARDASIL STUDIES YOU prematurely halted." Merck issues boilerplate objections in response, and points Plaintiff to its *Robi* production. Accordingly, Plaintiff refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 13**: This Request asks for "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention STUDIES of any of the GARDASIL vaccines' individual ingredients (whether studied individually or in combination with other products) YOU planned to conduct but ultimately did not conduct." Merck issues the same boilerplate objections as above, and again refers Plaintiff to its *Robi* production. Accordingly, Plaintiff refers Merck to her response to Merck's response to RFP No. 3.



Page 9

**RFP No. 15**: This Request asks for "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention any GARDASIL STUDIES YOU planned to conduct but ultimately did not initiate." Merck issues the same boilerplate objections as above, and again refers Plaintiff to its *Robi* production. Accordingly, Plaintiff refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 16**: This Request asks Merck to produce all documents that discuss, mention, or relate to certain peer-reviewed journal articles (the Request provides a list of the relevant articles). Merck objects on temporal/geographic scope grounds, as well as overbreadth, relevance, burden, attorney-client privilege, and work product grounds. Further, Merck wishes to meet and confer with Plaintiff to see if the Request can be narrowed. Plaintiff does not see the need for narrowing this Request; each article Plaintiff has listed concerns the safety and efficacy of Gardasil and/or Gardasil ingredients. As such, documents and communications that discuss these articles are likely to be highly relevant to Plaintiff's claims.

**RFP No. 17**: This Request asks Merck to produce "All DOCUMENTS, including, but not limited to, internal or third-party COMMUNICATIONS, that relate to, discuss, or mention *any* adverse events associated with the GARDASIL vaccines or any of their ingredients." Merck makes a host of objections to this Request, including vagueness/ambiguity (as to "ingredients" and "associated with") and patient privacy. Regarding the former, Plaintiff views the vagueness objection as gamesmanship; Merck knows what "ingredients" and "associated with" means. And patient privacy is no problem; Merck notes that it can redact patient-identifying information. The rest of Merck's objections are its typical boilerplate ones: overbreadth, burden, harassing, attorney-client privilege, work product, and so on. Notwithstanding these objections, Merck agrees to produce responsive *Robi* documents. Plaintiff again refers Merck to her response in RFP No. 3 above.

**RFP No. 18**: This Request asks Merck to produce "All DOCUMENTS, including, but not limited to, internal or third-party COMMUNICATIONS, that relate to, discuss, or mention *any* auto-immune related adverse events associated with the GARDASIL vaccines or any of its ingredients." Merck makes the same objections as it did in response to RFP No. 17, and again offers to produce *Robi* documents. Merck should see Plaintiff's response to RFP No. 3 above.

**RFP No. 19**: This Request asks Merck to produce "All DOCUMENTS, including, but not limited to, internal or third-party COMMUNICATIONS, that relate to, discuss, or mention *any* carcinogenicity, genotoxicity, congenital abnormalities, or any fertility-related adverse events associated with the GARDASIL vaccines or any of its ingredients." Merck makes the same objections as it did in response to RFP Nos. 17 and 18, and again offers to produce *Robi* documents. Merck should see Plaintiff's response in RFP No. 3 above.



**RFP No. 20**: This Request asks Merck to produce "All adverse events YOU have reported to the Vaccine Adverse Event Reporting System ("VAERS"), the Secretary of the Department of Health and Human Services, VigiBase, or any other regulatory agency, that relate to GARDASIL or any of its ingredients." Merck objects primarily along temporal and geographic scope lines. As explained above, these objections are meritless. This is especially so with adverse event reports, as these are key pieces of data that go to causation. Merck should produce these reports across the board. Merck also issues several boilerplate objections, and also raises privacy issues. Again, privacy is not an issue, as Merck can redact patient-identifying information and there is a protective order in place that would address any privacy concerns. Lastly, Merck offers to produce *Robi* documents, and Plaintiff again refers Merck to Plaintiff's response to Merck's response to RFP No. 3 above.

**RFP No. 21**: This Request asks Merck to produce "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention YOUR failure, if any, to properly report *any* adverse events associated with GARDASIL or any of its ingredients." Merck issues many of the same boilerplate objections referenced above, and again offers Plaintiff *Robi* documents. Merck should see Plaintiff's response to Merck's response to RFP No. 3 above.

**RFP No. 22**: This Request asks Merck to produce "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention any causality assessments YOU performed on *any* adverse event reports YOU received concerning GARDASIL or any of its ingredients." Merck issues many of the same boilerplate objections referenced above, and again offers Plaintiff *Robi* documents. Merck should see Plaintiff's response to Merck's response to RFP No. 3 above.

**RFP No. 23**: This Request asks Merck to produce "All databases (including but not limited to MARRS) used by YOU to record, store and/or document adverse events or complaints pertaining to GARDASIL or any of its ingredients." Merck issues many of the same boilerplate objections referenced above, and again offers Plaintiff documents which were produced in *Robi*. As stated above, though, Plaintiff wants the entirety of Merck's MARRS database for Gardasil and Gardasil 9, not merely the MARRS chart derived from the algorithm Merck gave the court in *Robi*. This information is highly relevant to Plaintiff's claims, as Gardasil adverse event information goes to core issues concerning Merck's knowledge of safety risks.

**RFP No. 24**: This Request asks Merck to produce "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, containing any STUDIES, analyses, or meta-analyses performed by YOU or on YOUR behalf regarding any auto-immune related adverse events experienced by GARDASIL patients." Merck issues many of the same boilerplate objections referenced above, and again offers Plaintiff *Robi* documents. Merck should see Plaintiff's response to Merck's response to RFP No. 3 above.



**RFP No. 25**: This Request asks Merck to produce "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to or discuss any negative efficacy or lack of efficacy for GARDASIL." Merck flatly objects to this Request along its standard boilerplate lines, and refuses to produce responsive documents. It also claims the Request is argumentative. It is not argumentative; it simply asks for Merck to produce responsive documents, if they exist. If Merck maintains its objections to this Request, Plaintiff  will move to compel the same.

**RFP No. 27**: This Request asks Merck to produce "All YOUR standard operating procedures in effect between 2005 and the present that would have been applicable to GARDASIL." Merck issues boilerplate objections and refuses to produce responsive documents. Plaintiff is entitled to all of Merck's standard operating procedures related to Gardasil so that she and her experts can compare what Merck did relative to Gardasil, whether it was compliant with its own operating procedures, and/or whether those procedures were adequate. To the extent Merck objects to this Request as lacking a geographical or subject matter limitation, Merck must nonetheless produce non-objectionable operating procedures and tell Plaintiff what is being withheld so that Plaintiff can make an informed decision on whether to pursue any withheld operating procedures. To the extent that Merck is concerned with overbreadth with regard to the types of operating procedures sought, Plaintiff requests that Merck provide a list of all operating procedures so that the parties can meaningfully meet and confer and Plaintiff can select  the most relevant ones.

**RFP No. 28**: This Requests asks for "YOUR *full* regulatory file for the GARDASIL vaccines." Merck issues boilerplate objections, but has agreed to produce the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18, and the GARDASIL® BLA, except for the Chemistry, Manufacturing and Controls (CMC) sections of the INDs and BLA.  As stated above, it is Plaintiff's position that Merck should produce the CMC sections. Merck should produce the full IND applications, INDs, BLAs for both Gardasil 4 and Gardasil 9 as well as any other files containing regulatory correspondence, internal communications related to regulatory matters, minutes of regulatory related meetings, etc. Merck is in the best position to know where and how documents related to regulatory matters are housed and kept.

**RFP No. 29**: This Requests asks for "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention YOUR failure, if any, to properly comply with any regulations (including, but not limited to, FDA or CDC regulations) governing YOUR development, studying, testing, pharmacovigilance, marketing, or sale of GARDASIL or any of its ingredients." Merck recycles its standard objections here: temporal/geographic scope; overbreadth; burden; relevance; patient privacy; vagueness; attorney-client privilege; and work product. Merck also objects to the extent the Request seeks documents related to design defect and manufacturing and marketing. Merck then offers to produce responsive *Robi* documents.



Plaintiff is not improperly seeking design defect documents. Rather, she is seeking documents that go to her negligence claim. Moreover, as to manufacturing and marketing, unlike in *Robi*, this case is not bifurcated, so there is no justification for Merck's arbitrary decision to withhold the manufacturing and marketing documents. Merck should produce these documents here.

**RFP No. 30**: This Requests asks for "All YOUR COMMUNICATIONS with the FDA concerning YOUR GARDASIL vaccines." Merck issues the aforementioned boilerplate objections and offers to produce *Robi* documents. Plaintiff sees no need for the objections here; Merck should produce these communications, regardless of the temporal and geographic scope, and regardless of whether they pertain to Gardasil or Gardasil 9. These communications are highly relevant to Plaintiff's case.

**RFP No. 31**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that mention, memorialize, or discuss YOUR COMMUNICATIONS with the FDA concerning GARDASIL or any of its ingredients." Merck issues its boilerplate objections and offers to produce the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; and the GARDASIL® BLA, except for the Chemistry, Manufacturing and Controls (CMC) sections of the INDs and BLA. This is plainly non-responsive. Plaintiff will move to compel should Merck fail to amend its response.

**RFP No. 32**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that contain or discuss YOUR COMMUNICATIONS with the FDA, the FDA's Center for Biologics Evaluation and Research ("CBER"), any member of the FDA's Vaccines and Related Biological Products Advisory Committee ("VRBPAC") or the entire committee, and/or any work groups or committees thereof, concerning GARDASIL or any ingredients of GARDASIL." Merck issues the same boilerplate objections, and offers to produce *Robi* documents. Again, Plaintiff sees no need for the scope objections here; Merck should amend its response to reflect a willingness to produce all responsive documents in its possession, custody, or control, or Plaintiff will move to compel.

**RFP No. 33**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that contain or discuss any financial compensation that YOU have ever provided to any members of the FDA's VRBPAC and/or the basis of said financial compensations." Merck flatly objects to this Request, primarily on relevance and vagueness grounds. These objections are misplaced, as Plaintiff is entitled to obtain documents reflecting payments Merck has made to third parties related to Gardasil in order to identify financial conflicts of interest and biases, and to assess the credibility of those whose representations about the safety and efficacy of Gardasil Merck relies on. Moreover, regarding vagueness, Plaintiff finds it hard to believe that Merck does not know what "financial compensation" means. Merck should reproduce all



responsive documents.

**RFP No. 34**: This Request seeks "All DOCUMENTS that consist of YOUR COMMUNICATIONS or memorialization of YOUR COMMUNICATIONS with the CDC concerning YOUR GARDASIL vaccines or any of their ingredients." Merck issues boilerplate objections and offers Plaintiff *Robi* documents. Merck should produce these communications and related documents, regardless of the temporal and geographic scope, and regardless of whether they pertain to Gardasil or Gardasil 9.

**RFP No. 35**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that contain or discuss YOUR COMMUNICATIONS with the CDC, any member of the CDC's Advisory Committee on Immunization Practices ("ACIP") or the entire committee, and/or any work groups or committees thereof, concerning GARDASIL or any ingredients of GARDASIL." Merck issues boilerplate objections, and offers to produce *Robi* documents. Again, Merck should produce these communications and related documents, regardless of the temporal and geographic scope, and regardless of whether they pertain to Gardasil or Gardasil 9. See also Plaintiff's response to Merck's response to RFP No. 3.

**RFP No. 36**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that contain or discuss any financial compensation that YOU have ever provided to any members of the CDC's ACIP and the basis of said financial compensations." Merck flatly objects to this Request, and refuses to produce responsive documents. Merck's objections are without merit. Plaintiff is entitled to obtain documents reflecting payments Merck has made to third parties related to Gardasil in order to identify financial conflicts of interest and biases, and to assess the credibility of those whose representations about the safety and efficacy of Gardasil Merck relies on.

**RFP Nos. 37-39**: These Requests seek documents, including, but not limited to, communications, pertaining to Merck's dealings with an official regulatory arm of the Japanese government: the Pharmaceuticals and Medical Devices Agency ("PMDA"). Merck flatly objects to these Requests (on geographic/temporal scope, Gardasil 9, and non-U.S. documents grounds), and refuses to produce responsive documents. For the reasons highlighted above in General Issue 5, these foreign regulatory materials are highly relevant to Plaintiff's claims. Merck should revise its response to reflect that it will produce these documents, otherwise Plaintiff will move to compel.

**RFP Nos. 40-41**: These Request seeks documents, including, but not limited to, communications, concerning actions taken by the Japanese government in response to Gardasil-related adverse events in Japan. Merck flatly objects to these Requests and refuses to produce responsive documents. It objects along similar lines to the above-referenced Requests seeking documents concerning Merck's dealings with the PMDA. Again, these documents are highly relevant to Plaintiff's claims. These Requests could yield communications with other Japanese regulatory bodies concerning Gardasil



adverse events, and could shed a light on Merck's knowledge of these adverse events. As such, Plaintiff believes she is entitled to these documents.

**RFP Nos. 42-45**: These Requests all seek documents concerning Merck's engagement of various consultants for work related to the Gardasil adverse events in Japan. Merck flatly objects to these Requests and refuses to produce responsive documents. It objects along similar lines to the above-referenced Requests seeking documents concerning Merck's dealings with the PMDA and Japanese regulatory actions. Again, these documents are relevant to Merck's knowledge of and conduct concerning the Gardasil adverse event situation in Japan, which itself is directly relevant to the safety of Gardasil, in general. Merck should produce these documents.

**RFP No. 46**: This Request seeks "All DOCUMENTS that identify the names of all third-party individuals or entities that have ever received royalty or licensing payments, or other similar remuneration or compensation, from YOU from the sale of GARDASIL or any of its ingredients." Merck objects on temporal/geographic scope, non-Gardasil documents, ex-U.S. documents, vagueness, attorney-client privilege, and work product grounds. It also objects to the extent the Request seeks "personal financial information" of any third parties. This Request does not seek such "personal financial information," but rather, simply the names of these third parties. Merck goes on to state that its "investigation is still ongoing" and that it "reserves the right to supplement as necessary." Please advise whether Merck has searched for and will produce responsive documents.

**RFP No. 47**: This Request seeks "All DOCUMENTS, including, but not limited to, YOUR internal or third-party COMMUNICATIONS, that contain or discuss the drafting, revision, red-line edits, or proposed amendments to the GARDASIL package inserts and/or labels." Merck issues boilerplate objections and offers *Robi* documents. Plaintiff refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 48**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention published articles (including, but not limited to, drafts and red-line versions of the articles) concerning GARDASIL, or any of its ingredients, that YOU or any of YOUR agents helped draft, edit, write, ghostwrite, ghost-edit, comment upon or finance." Merck issues its standard boilerplate objections, and flatly refuses to produce responsive documents. Merck also objects to the extent the request seeks documents not in Merck's possession, custody, or control. Plaintiff does not seek documents not in Merck's possession, custody or control. And, moreover, Plaintiff is entitled to discover the extent of Merck's efforts to generate scientific literature on Gardasil. Merck should produce responsive documents.

**RFP No. 49-50**: These Requests seek documents that mention certain researchers who have published studies that are relevant to the claims in this litigation, as well as



documents reflecting any financial compensation paid to these individuals. Merck objects to these Requests on several grounds, but wishes to meet and confer to narrow the list of individuals. Plaintiff would be receptive to this meet and confer effort, and might consider removing some names from these Requests.

**RFP No. 51**: This Request seeks "all DOCUMENTS reflecting your COMMUNICATIONS about GARDASIL with the following journals: Vaccine; Rheumatology; Pediatrics; Canadian Medical Association Journal ("CMAJ"); Journal of Internal Medicine ("JIM"); Journal of the American Medical Association ("JAMA"); The BMJ ("British Medical Journal"); JAMA Neurology; Journal of Autoimmunity; The Pediatric Infectious Disease Journal; Clinical Infectious Diseases; International Journal of Cancer ("IJC"); The Lancet; The Lancet Child & Adolescent Health; The New England Journal of Medicine ("NEJM"); Scientific Reports; Journal of Inorganic Biochemistry; and Indian Journal of Medical Ethics." Merck flatly objects to this Request and refuses to produce responsive documents. Again, Plaintiff believes she is entitled to discover the extent of Merck's efforts to generate scientific literature on Gardasil. All of these journals have published peer-reviewed articles that are relevant to this litigation. If Merck has communicated with any of these journals regarding Gardasil, Plaintiff is entitled to review those communications. Merck should withdraw its objections and produce relevant documents.

**RFP No. 52**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention any medical professionals who have criticized the use of GARDASIL for alleged safety or efficacy reasons." Merck issues boilerplate objections and offers to produce *Robi* documents. Plaintiff refers Merck to her response to Merck's response to RFP No. 3.

**RFP No. 54**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention: autoimmune disease; postural orthostatic tachycardia syndrome ("POTS"); fibromyalgia; orthostatic intolerance ("OI"); ear pressure, lack of balance; tinnitus; vestibular migraines; dizziness; headaches; presyncope, vasovagal syncope, nausea; vision issues; muscle weakness; joint pain; extreme fatigue; sleep disturbance; gastrointestinal issues; diarrhea; fibroadenoma; dermatographism; and hives adverse events after the use of GARDASIL." Merck issues its standard objections, but offers to produce: final Clinical Study Reports for Merck GARDASIL® clinical studies; final reports for Merck GARDASIL® post-licensure studies; patient-level SAS data that accompanied GARDASIL® Clinical Study Reports as submitted to the FDA; final GARDASIL® Periodic Safety Update Reports; the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; and the GARDASIL® BLA, except for the Chemistry, Manufacturing and Controls (CMC) sections of the INDs and BLA. Merck then objects to the extent that Plaintiff's Request seeks more than this production, as it claims further information would be duplicative and unduly burdensome. Plaintiff disagrees.



As stated above, Plaintiff believes she is entitled to the CMC sections of the INDs and BLA. Moreover, it seems that relevant documents could exist in custodial files. It is unclear why Merck refuses to search the custodial files beyond its opaque "burdensome" objection. Please advise.

**RFP No. 55**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention any causality assessments or other similar analysis YOU performed on any: autoimmune disease; POTS; fibromyalgia; OI; ear pressure, lack of balance; tinnitus; vestibular migraines; dizziness; headaches; presyncope, vasovagal syncope, nausea; vision issues; muscle weakness; joint pain; extreme fatigue; sleep disturbance; gastrointestinal issues; diarrhea; fibroadenoma; dermatographism; and hives adverse event." Merck objects, but offers to search custodial files and to produce certain non-custodial documents. It again refuses to produce the CMC sections of the INDs and the BLA. As explained above, Merck should produce these sections.

**RFP No. 57**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that contain the batch and/or lot histories (including but not limited to DOCUMENTS that discuss the results of all batch and/or lot testing performed on the batch and/or lot) of the GARDASIL vaccines that were administered to Julia Balasco." Merck has offered to produce certificates of analysis and correspondence from the FDA related to releasing these lots, for the lots of vaccines purportedly provided to Plaintiff. Plaintiff appreciates this representation, but would like all documents responsive to this Request. If there are additional responsive documents that are being withheld, please advise.

**RFP No. 58**: This Request seeks "All YOUR COMMUNICATIONS with Julia Balasco's medical providers, including but not limited to Budio Thomas, DO concerning GARDASIL or any of its ingredients." Merck objects, primarily on temporal scope lines, but also objects that the Request seeks documents that do not concern Plaintiff's vaccinating physician. Merck accordingly offers to produce "information responsive to this Request, if any and to the extent accessible, memorializing GARDASIL®-related detail calls with Plaintiff's vaccinating physician made by Merck Professional Representative(s) for the time period 2011 to October 2014. Merck will also determine if it sent Dr. Budio Thomas a physician information request prior to October 2014, and, if applicable, produce this." This is insufficient. Merck must produce *all* communications, not just telephonic communications. Moreover, Plaintiff takes issue with Merck's temporal limitation. For instance, if Merck made representations to Plaintiff's physician concerning the safety and efficacy of Gardasil in 2010, those representations surely factored into the physician's decision-making, on some level, in subsequent years. If Merck does not amend its response, Plaintiff will move to compel all responsive documents.

**RFP No. 59**: This Request seeks "All marketing plans, product launch plans, or similar DOCUMENTS that YOU prepared to promote the sale, safety and/or EFFICACY of GARDASIL vaccines." Merck blanketly objects to this Request and refuses to produce responsive documents. Merck's objections are wholly without merit. Plaintiff will move to



compel should Merck maintain its objections and refuse to produce any responsive documents.

**RFP No. 60**: This Request seeks "All DOCUMENTS, including but not limited to COMMUNICATIONS, concerning YOUR marketing of GARDASIL to physicians, parents or potential recipients of GARDASIL." Merck issues its standard objections, but offers to produce "information responsive to this Request, if any and to the extent accessible, memorializing GARDASIL®-related detail calls with Plaintiff's vaccinating physician made by Merck Professional Representative(s) for the time period 2011 to October 2014. In addition, Merck will produce, upon entry by the Court of a mutually agreed-upon Protective Order and ESI Order, information concerning print and television advertisements distributed in Barrington, Rhode Island from 2011 to October 2014, if any and to the extent accessible." This is insufficient.

First, see Plaintiff's response to Merck's response to RFP No. 58 regarding the time frame and scope of the search regarding communications with Plaintiff's vaccinating physician. Second, limiting the search to print and television is arbitrary. Merck must produce *all* documents concerning marketing; if there are other forms of marketing, such as online content, Merck must produce those as well. And again, Merck must produce documents from before 2011, as these could influence Plaintiff and her parents' decision-making. Moreover, Merck does not adequately respond to this Request. Plaintiff is not seeking localized advertising with this Request; she is seeking national marketing documents. Although Merck's offer is responsive, it is by no means sufficient. Merck should conduct a custodial search and produce all responsive documents.

**RFP No. 61**: This Request seeks "All GARDASIL advertising (including but not limited to advertising in magazines, television, journals, online platforms, social media, internet, posters, and billboards) that were published, distributed, or circulated in Rhode Island between 2005 and 2014." Merck offers to produce "information concerning print and television advertisements distributed in Barrington, Rhode Island from 2011 to October 2014, if any and to the extent accessible." This is insufficient. Again, the time period objection is not well taken; Plaintiff will not budge on this. And same goes for the form of advertising; Plaintiff finds it hard to believe that Merck did not engage in online advertising. Lastly, Merck should not limit its production to advertisements circulated in Barrington, Rhode Island; the Request calls for all Rhode Island advertising. Given Rhode Island's size, it cannot be that burdensome to widen the net a few miles in each direction. If Merck will not amend its response and produce all responsive documents, Plaintiff will move to compel.

**RFP No. 62**: This Request asks Merck to "Please IDENTIFY all of YOUR Gardasil marketing activities in Rhode Island between 2005 and 2014, including, but not limited to, YOUR marketing plans and product launch plans." Merck again arbitrarily limits its response and offers to produce "information concerning print and television advertisements distributed in Barrington, Rhode Island from 2011 to October 2014, if any and to the extent accessible." For the reasons articulated above, this is insufficient.

**RFP No. 63**: This Request seeks "All DOCUMENTS that identify third parties YOU utilized



to promote GARDASIL." Merck offers to produce "information concerning third parties utilized by Merck, if any, for print and television advertisements in Barrington, Rhode Island from 2011 to October 2014, if any and to the extent accessible." For the reasons set out above, this is insufficient.

**RFP No. 64**: This Request seeks "All DOCUMENTS, including, but not limited to, internal or third-party COMMUNICATIONS, that show, discuss, or mention the pharmaceutical compositions comprising (or which may comprise) mutant forms of the HPV Virus-Like Particles ("VLPs"), such as HPV VLPs that comprise biologically active fragments and/or mutants of an HPV L1 or L2 protein, whether in GARDASIL or any other considered HPV vaccine." Merck flatly objects and refuses to produce responsive documents. Please advise as to why Merck refuses to produce any documents in response to this Request. Should Merck maintain its objections, Plaintiff will move to compel.

**RFP No. 65**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention STUDIES of any of the GARDASIL vaccines' individual ingredients (whether studied individually or in combination with other products) YOU prematurely halted." Merck objects but offers to produce *Robi* documents. See Plaintiff's response to Merck's response to RFP No. 3 above.

**RFP No. 66**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to,  discuss, or mention the composition of the control, placebo, or comparator used in YOUR GARDASIL STUDIES." Merck blanketly objects and refuses to produce documents. Please advise as to why Merck refuses to produce any documents in response to this Request. Should Merck persist in its refusal, Plaintiff will move to compel.

**RFP No. 67**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, containing or discussing the fast-tracking, priority review, or expedited approval of GARDASIL." Merck objects but offers to produce *Robi* documents. See Plaintiff's response to Merck's response to RFP No. 3 above.

**RFP No. 68**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, containing or discussing any inspection reports, Form 483s, warning letters, or any other deficiency letters concerning YOUR facilities or GARDASIL or any of its ingredients." Merck blanketly objects and refuses to produce documents. Please advise as to why Merck refuses to produce any documents in response to this Request. Should Merck persist in its refusal, Plaintiff will move to compel.

**RFP No. 69**: This Request seeks "All DOCUMENTS, including, but not limited to, COMMUNICATIONS, that relate to, discuss, or mention the composition of the GARDASIL vaccine (including its dosage and amounts of its individual ingredients, including, but not limited to, amounts of AAHS) used in YOUR GARDASIL STUDIES, including but not limited to, Protocol 018." Merck offers to search custodial files and to produce certain non-custodial documents. Absent from these non-custodial documents are the CMC sections of the INDs and BLA. Please produce these.



**RFP No. 70**: This Request seeks "All the safety data YOU collected during the Protocol 018 long term follow-up study period." Merck objects but offers to produce several documents. Please advise if certain responsive documents are being withheld. If there are, Merck must amend its response to reflect this.

**RFP No. 71**: This Request seeks "All safety data YOU collected during the long term follow-up period for all of YOUR STUDIES." Merck objects, but offers to produce "final Clinical Study Reports for Merck GARDASIL® clinical studies; final reports for Merck GARDASIL® post-licensure studies; patient-level SAS data that accompanied GARDASIL® Clinical Study Reports as submitted to the FDA; final GARDASIL® Periodic Safety Update Reports; the GARDASIL® IND; the INDs for the three monovalent HPV Virus-Like Particles, types 11, 16, and 18; and the GARDASIL® BLA, except for the Chemistry, Manufacturing and Controls (CMC) sections of the INDs and BLA." Merck also objects to the extent that Plaintiff's Request seeks more than the documents offered, "as further information would be duplicative, overbroad, and unduly burdensome." Plaintiff disagrees; this safety data is crucial to Plaintiff's claims. And again, as stated above, Plaintiff requests the CMC sections of the INDs and BLA.

**RFP No. 72**: This Request seeks "All DOCUMENTS, including but not limited COMMUNICATIONS, concerning replacing any of the ingredients of GARDASIL." Merck flatly objects and refuses to produce responsive documents. Please advise as to why Merck refuses to produce any documents in response to this Request. Should Merck persist in its refusal, Plaintiff will move to compel.

**RFP No. 74**: This Request seeks all Gardasil publications plans. Merck objects, but offers to produce *Robi* documents. Plaintiff refers Merck to her response to Merck's response to RFP No. 3 above.

**RFP No. 75**: This Request seeks "All HPV Franchise Annual Publication Project Reviews from 2002 to the present." Merck blanketly objects and refuses to produce responsive documents. Please advise  whether Merck would produce responsive documents if the Request were to be slightly amended . If Merck maintains its objections, Plaintiff will move to compel.

It is our sincere hope that we can resolve these issues without judicial intervention.  We look forward to meeting with you within the requested time period.

Sincerely,

Harrison E. James
BAUM HEDLUND ARISTEI & GOLDMAN, PC
hjames@baumhedlundlaw.com