# Deposition of Hearing (MDL No. 3036)

# In Re: Gardasil Products Liability Litigation

# July 28, 2022



**206.287.9066  I  800.846.6989**
1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101
www.buellrealtime.com
email: info@buellrealtime.com



Page 1

UNITED STATES JUDICIAL PANEL

ON

MULTIDISTRICT LITIGATION

_____

In re: Gardasil Products        ) MDL No. 3036
Liability Litigation            )
                                )
                                )
_____

July 28, 2022

Oral Argument


Honorable Karen K. Caldwell
Honorable Nathaniel M. Gorton
Honorable David C. Norton
Honorable Dale A. Kimball
Honorable Matthew F. Kennelly
Honorable Madeline Cox Arleo


REPORTED BY:  CRYSTAL R. McAULIFFE, RPR, CCR 2121

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation          Hearing (MDL No. 3036)

Page 2

```
 1                      APPEARANCES
 2
    FOR SAHARA K. WALKER, ET AL.:
 3
    BIJAN ESFANDIARI, ESQUIRE
 4  BAUM HEDLUND ARISTEI & GOLDMAN, PC
    10940 Wilshire Boulevard
 5  Suite 1600
    Los Angeles, California 90024
 6  310.207.3233
    besfandiari@baumhedlund.com
 7
 8  FOR EDUARDO ATJIAN, II, JACOB D. LEVY, AND SYDNEY M.
    FETTERS:
 9
    ANTHONY A. LIBERATORE, ESQUIRE
10  A. LIBERATORE, P.C.
    680 South Santa Fe Avenue
11  Los Angeles, California  90021
    424.285.8550
12
13  FOR DARBY HENDRIX, ET AL., AND MACKENZIE PENNELL:
14  TRACY L. TURNER, ESQUIRE
    PENDLEY, BAUDIN & COFFIN, LLP
15  P.O. Drawer 71
    24110 Eden Street
16  Plaquemine, Louisiana 70765
    888.725.2477
17
18  FOR MERCK & CO., INC. AND MERCK SHARP & DOHME
    CORPORATION:
19  ALLYSON JULIEN, ESQUIRE
    GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
20  200 South Wacker Drive
    Suite 2200
21  Chicago, Illinois 60606
    312.681.6000
22  ajulien@goldmanismail.com
23
24
25
```

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                    Hearing (MDL No. 3036)

Page 3

1                          -oOo-

2                     July 28, 2022

3

4              JUDGE CALDWELL:  Good morning.

5              I'd like to thank you, all, the personnel

6    and staff here in the Seattle courthouse for

7    accommodating the panel and its staff.  So let's move

8    ahead with our agenda.

9              The first matter that will come before the

10   Court is MDL 3036, the Gardasil matter.

11             Counsel, please come forward.

12             And while you're assembling, let me just

13   reiterate that the panel will allow each arguing counsel

14   to utilize all of his or her allotted time, and then we

15   will pose questions to counsel at the expiration of that

16   time.

17             We will first hear from plaintiffs,

18   Mr. Esfandiari.

19             MR. ESFANDIARI:  Shall I come to the podium?

20             JUDGE CALDWELL:  Please come to the podium.

21             MR. ESFANDIARI:  May I remove my mask?

22             JUDGE CALDWELL:  You may.

23             MR. ESFANDIARI:  Good morning.  And may it

24   please the Court, my name is Bijan Esfandiari and I

25   represent the moving plaintiffs in the Gardasil

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                    Hearing (MDL No. 3036)

Page 4

1    litigation.

2              In the moving papers, we established that

3    the Gardasil litigation warrants consolidation under

4    1407 in light that it is for the convenience of the

5    parties' convening.

6              I would like to report that at the time we

7    filed the moving papers there were, I believe, 33 cases

8    in Federal Court being handled by this firm.

9              Currently, now we have 48 cases, and we have

10   13 of those 48 cases are being litigated in 31 different

11   District Courts in different states.

12             In addition to those, there are 35 cases

13   that are out of the vaccine courts or they have already

14   entered the judicial system that are out of the vaccine

15   court and going to be filed and -- in Federal Courts.

16             In addition to those 35, there are 65 cases

17   that are in vaccine court.  And once they finish the

18   vaccine court process they, too, will come to the court

19   side.  So that's an additional hundred cases.  So that

20   brings the number to 148.  And, of course, new cases and

21   clients are continuing to be obtained.  That with those

22   numbers I believe consolidation is warranted.

23             In opposition, Merck really doesn't dispute

24   that it would be for the convenience for the parties and

25   witnesses to have consolidation.  In fact, three years

cb8050a5-c097-4075-8d16-9f11a36e32b1

Page 5

1    ago, in connection with its other vaccine, Zostavax,

2    Merck was the moving party who asked for consolidation

3    and there, there was even less cases at the time.

4              I think the same arguments that Merck made

5    for Zostavax for consolidation apply here and there's no

6    reason to treat children who have been harmed by the

7    vaccines any different than adults who have been harmed

8    by the vaccines.

9              JUDGE CALDWELL:  Your time has expired.

10             Panel, do you have questions?

11             Yes, Judge Gorton.

12             JUDGE GORTON:  I was just concerned about

13   the variety of the injuries and the issues.  There are

14   so many issues on causation.

15             How is it that this case would be benefited

16   by being centralized?

17             MR. ESFANDIARI:  I believe -- I don't

18   believe there are a myriad of issues, Your Honor.  I

19   think in terms of causation, the mechanism of action is

20   the same.  The primary injury here is the autoimmune

21   disease, in particular dysautonomia.

22             The mechanism of injury that results in

23   these diseases is identical, it's called "molecular

24   mimicry."

25             In fact, Merck, when we were litigating --

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                Hearing (MDL No. 3036)

Page 6

1    this is before the MDL -- informed one of the Federal

2    Courts that even though there's multiple cases with

3    multiple injuries, that there are common issues of fact

4    and that causation is going to be similar.

5              So I suspect this case will have no problem.

6    In fact, in Zostavax, the case -- the other vaccine case

7    that Merck sought consolidation, there you had even more

8    diverse injuries.  You had Guillain-Barré Syndrome.  You

9    had various different body parts being impacted.

10             Here, actually, we have the same mechanism

11   of action, and it's just simply the manifestation of the

12   symptoms may be different but in terms of the injury,

13   they are universal across the cases.

14             JUDGE GORTON:  Thank you.

15             JUDGE CALDWELL:  Judge Kennelly.  Was that

16   your question?  Same question?

17             JUDGE KENNELLY:  Same question.

18             JUDGE CALDWELL:  All right.  Anyone else?

19             Thank you.  I see that you reserved a minute

20   for rebuttal.

21             MR. ESFANDIARI:  Thank you very much, Your

22   Honors.

23             JUDGE CALDWELL:  We'll now hear from Andrew

24   Downing.

25             Oh, excuse me.  Are you Mr. Liberatore?

cb8050a5-c097-4075-8d16-9f11a36e32b1

Page 7

1          MR. LIBERATORE:  Yes, Your Honor.

2          JUDGE CALDWELL:  Did I pronounce that

3   anywhere near correctly?

4          MR. LIBERATORE:  That's how I pronounce it.

5          JUDGE CALDWELL:  Okay.  Very well.

6      Thank you.  You may remove your mask.

7          MR. LIBERATORE:  Thank you, Your Honor.

8      Good morning, Your Honors.  My name is

9   Anthony Liberatore, I represent three individual

10  plaintiffs.  We've submitted an interested party

11  response.

12         The three plaintiffs that I represent have

13  matters venued in the Central District of California

14  before three different judges.

15         After we submitted our paperwork on

16  May 20th, three motions to dismiss had been filed.

17  Those are set for hearing August 29th, September 1st,

18  and September 30th.

19         Interestingly enough, we have a scheduling

20  conference scheduled for August 19th, another one on

21  August 29th, and another one on October 6th.

22         So I'm going to use a word that I don't

23  normally use and that's "precipice."  We are on the

24  precipice of different -- potentially differing orders

25  on three motions to dismiss.

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                    Hearing (MDL No. 3036)

Page 8

1          And I use that word because it's not really
2     a word I use often.  I got it from Merck.  It's from
3     Merck's argument.
4          JUDGE CALDWELL:  All right.  Your time is
5     up.
6          Questions from the panel?
7          Yes, Judge Kennelly.
8          JUDGE KENNELLY:  Assuming we decide to
9     centralize this, what's special about Arizona?
10          I'm not sure if my microphone is even
11     working, honestly.  There we go.
12          Assuming we decide to centralize this,
13     what's special about Arizona?
14          MR. LIBERATORE:  Arizona has been suggested
15     by lead plaintiffs counsel.
16          JUDGE KENNELLY:  You went along with it;
17     right?
18          MR. LIBERATORE:  We support it.  My
19     understanding was that Judge Rayes has worked on the
20     original case that has been filed and substantial
21     progress has been made.
22          JUDGE KENNELLY:  Like what?
23          MR. LIBERATORE:  There has been document
24     production, which I believe has occurred.  And I could
25     be messing this up, because there's another action.

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                    Hearing (MDL No. 3036)

Page 9

1    I've -- I've only been involved for about two or three

2    months.

3              JUDGE KENNELLY:  Fair enough.

4              MR. LIBERATORE:  May I continue?

5              JUDGE KENNELLY:  That's all right, you don't

6    need to.

7              JUDGE CALDWELL:  Anyone else?

8              Yes.

9              JUDGE KIMBALL:  If it's not centralized in

10   Arizona, where ought it be centralized?

11             MR. LIBERATORE:  We suggested Central

12   District of California, in particular Judge Selna.  And

13   the reason why that suggestion was made is:  One, my

14   three clients are there; two, comparatively based on the

15   MDL statistics from July 15th of this month, the Central

16   District does not appear to be as heavily burdened or

17   burdened as other districts; three, Judge Selna has one

18   MDL matter that has eight cases pending:  Orange County,

19   John Wayne Airport, super close to the courthouse, and

20   lastly, California, based on the 2020 census has

21   approximately 40 million people and if we allocate that

22   out on equal administration of the vaccine they're going

23   to have the highest number of claims.

24             JUDGE KENNELLY:  So that would mean all MDLs

25   would go to California and Texas would tend to go out of

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                 Hearing (MDL No. 3036)

Page 10

1    business.
2             MR. LIBERATORE:  Well, assuming everybody
3    was be compelled to take a product; yes, Your Honor.
4             JUDGE CALDWELL:  Anyone else?
5             We thank you for your argument.
6             MR. LIBERATORE:  Thank you, Your Honor.
7             JUDGE CALDWELL:  The panel will now hear
8    from Tracy Turner.
9             MS. TURNER:  Good morning, Your Honors.  My
10   name is Tracy Turner.  We currently represent nine
11   plaintiffs with cases involving Gardasil in five
12   different District Courts assigned to nine different
13   District Court judges.
14            The vast majority of our cases all involve
15   the same injury, which is POTS.
16            We advocate for consolidation in the Middle
17   District of Louisiana.  Two additional plaintiffs
18   represented by the law firm of Morgan and Morgan also
19   filed an interested party relief in support of the
20   Middle District of Louisiana.  This district has never
21   had an MDL, so they are particularly suited to be
22   assigned one to have the opportunity.  Both the other
23   districts in Louisiana have had MDLs in the past.
24   The -- as of May 31st, their caseload was roughly a
25   thousand cases, so they're well-suited based on the

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                    Hearing (MDL No. 3036)

Page 11

1   number of judges to handle the case on their -- on their

2   docket.

3                   Judge Jackson is a skilled jurist.  He's

4   been on the bench since 2009.

5                   JUDGE CALDWELL:  Your time is up.

6                   Members of the panel, do you have questions

7   for counsel?

8                   Hearing none.  We thank you for your

9   argument.

10                  MS. TURNER:  Thank you very much.

11                  JUDGE CALDWELL:  Ms. Julien in opposition.

12                  MS. JULIEN:  Good morning, Your Honors,

13  Allyson Julien for Merck.

14                  I would like to begin with three key updates

15  that continue to warrant the denial of this MDL

16  decision.

17                  First, movants insist that informal

18  coordination efforts failed based largely on the

19  Stratton Court scheduling order.  Well, to the extent

20  that the panel was not aware -- I haven't heard it

21  mentioned here today -- Stratton has since been

22  dismissed with prejudice by the plaintiff.  So

23  absolutely nothing stands in the way of continued

24  informal coordination.  The reality is that the parties

25  have informally coordinated with success for years and

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation          Hearing (MDL No. 3036)

Page 12

1  the parties are far from the final solution or the last

2  solution of centralization.

3          Second, plaintiffs' counsel have now

4  co-hosted two HarrisMartin Gardasil MDL conferences

5  presuming that this panel will order centralization.

6          In fact, two of the people that you heard

7  here speak today hosted one here in Seattle yesterday.

8          Now, if plaintiffs' counsel can informally

9  coordinate and work together to promote a potential

10  Gardasil MDL, then nothing prevents them from working

11  with one another and with Merck should this panel deny

12  centralization.

13          Third, there continues to be no common

14  alleged injury.  Although additional carbon copy

15  complaints have been filed since Merck's opposition, the

16  list of distinct alleged injuries has only grown to more

17  than 100 and they remain as wildly disparate as ever.

18          Their allegations run the gamut from

19  inability to sleep at all to sleeping all day, and some

20  allege incredibly generic complaints like fatigue and

21  pain.  Any MDL will be beset by multiple layers of

22  plaintiff-specific issues, including those that have

23  never been handled in an MDL setting before, like

24  vaccine court timeliness and exhaustion based entirely

25  on non-public vaccine court proceedings.

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                    Hearing (MDL No. 3036)

Page 13

1          There are two additional unique

2    considerations here that call for the denial of

3    plaintiffs' unprecedented request.

4          First, creation of a Gardasil MDL could

5    give perceived legitimacy to the vaccine misinformation

6    spread by plaintiffs' counsel by Mr. Robert F. Kennedy,

7    Junior, and which permeates plaintiffs' complaints.

8          Second, creation of a Gardasil MDL would

9    irreparably erode the no-fault vaccine court system.  It

10   would turn the Vaccine Act on its head, overload the

11   vaccine court and allow plaintiffs' counsel to treat it

12   as an incubator for mass-work litigation.  This could

13   set a dangerous precedent for all routine childhood

14   vaccines.

15         This panel has never centralized lawsuits

16   comprised of recycled vaccine court claims about a

17   routine childhood vaccine covered by the Vaccine Act,

18   and it should not do so for the first time now.

19   Particularly where none of these plaintiffs were able to

20   secure any compensation in the no-fault vaccine court

21   system.

22         But if the panel is inclined to create an

23   MDL, Section 1407's goal of efficiency dictates that

24   these matters be transferred to Judge Meyer or

25   alternatively to Judge Levy.  These courts have

Page 14

1  substantively reviewed and heard argument on one of the

2  central pretrial issues across these cases and that is

3  implied preemption from plaintiffs' failure-to-warn

4  claims.

5            JUDGE CALDWELL:  Your time is up, counsel.

6            Do we have questions?

7            Judge Kennelly?

8            JUDGE KENNELLY:  On this question of

9  disparate injuries, I think what I heard from the

10 plaintiffs' counsel and what the briefs seem to say is

11 that that's a function in the fact that is an autoimmune

12 thing that can manifest itself in different ways and

13 it's a single mechanism and not just sort of a grab bag.

14           So what do you have to say about that?

15           MS. JULIEN:  Yes, Your Honor.  We believe

16 that that is an attempt to drum up or create common

17 issues where none truly exist.

18           I mean, their injuries truly run the gamut

19 to completely opposite examples like I gave: inability

20 to sleep to sleeping all day.

21           Moreover, that could not explain other

22 issues that they allege, like hallucinations and

23 anxiety.  These truly are -- injuries truly run the

24 gamut and just are not suitable for centralization here.

25 They are just far too disparate.

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                    Hearing (MDL No. 3036)

                                                              Page 15

1              JUDGE KENNELLY:  I had one other question,

2      sort of semi-related.

3              One of the papers -- I forget whose it

4      was -- had something attached to an opinion by one of

5      the special masters in the vaccine court that was like

6      the first stage of expert qualification on causation or

7      something like that.

8              What ended up happening with that particular

9      matter after that or is it still pending?

10             MS. JULIEN:  My understanding, Your Honor,

11     is that those cases -- none of those cases ended up

12     getting any compensation in vaccine court.

13             JUDGE KENNELLY:  So they've been resolved

14     and they didn't get compensation or they're still

15     pending?

16             MS. JULIEN:  I'm not aware of what happened

17     with all of those.  But my -- to my knowledge, those

18     that have been resolved were also found to not have --

19     to not be entitled to compensation.

20             And it's particularly notable here that none

21     of plaintiffs had been able to secure compensation,

22     again, in a no-fault vaccine system; where,

23     historically, claimants have been able to recover at

24     around the rate of 42 percent.  So we think that this is

25     really notable.  And to go from a no-fault system to a

cb8050a5-c097-4075-8d16-9f11a36e32b1

Page 16

1   fault system where you have to prove more is just

2   completely, you know, logically inconsistent.

3            JUDGE CALDWELL:  Anyone else?

4            We thank you for your argument.

5            We have Mr. Esfandiari has one minute for

6   rebuttal.

7            MR. ESFANDIARI:  Thank you, Your Honors.

8   And I'll be very quick.

9            In response to the question about "Why

10  Arizona?"

11           Arizona, Your Honor, has handled the Bart

12  MDL litigation that has, for the most part, concluded.

13  There are no MDLs pending in Arizona, so Arizona is a

14  fine choice for coordination.

15           And also, it was the first court to handle

16  the Gardasil case, Judge Rayes.

17           In response to arguments made by Merck's

18  counsel.  They argue that coordination has been

19  successful.  It has not, Your Honors.  Merck, to my

20  office, has produced in one of the litigations 24

21  million pages of documents.  Yet, even across my

22  cases -- and our firm has 18 cases -- they say of those

23  24 million I'm only allowed to use 8 million in the

24  other case.

25           They have not yet made any agreements to

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                Hearing (MDL No. 3036)

Page 17

1  allow us the 24 million pages to be used across all

2  litigations.

3          Ms. Julien, in prior conferences to me, has

4  indicated that they may want to proceed on -- case by

5  case for protective orders in ESIs as opposed to having

6  a broad agreement.

7          So the idea that there's been informal

8  coordination.  It was certainly was attempted, but it

9  was abandoned by Merck.

10          JUDGE CALDWELL:  Your time has expired.

11          Members of -- yes.

12          JUDGE KIMBALL:  What's your response to the

13  argument that this would be unprecedented?

14          MR. ESFANDIARI:  It wouldn't be

15  unprecedented, Your Honor.

16          The vaccine cases are MDL, the Zostavax, the

17  shingles vaccine.  The only unique thing about this

18  case, Your Honor, is that it requires to go through the

19  vaccine court.  When Congress enacted the vaccine court

20  in 1986, they did not intend to eliminate court

21  viability.  In fact, they wanted court viability to

22  exist.  They even went so far as to say any state law

23  that prohibits a plaintiff from suing a manufacture -- a

24  vaccine manufacturer is preempted, because they wanted

25  plaintiffs to have an adequate forum.

Page 18

1          They created one initial forum, the vaccine

2    court.  But if you were not -- didn't want to do that,

3    you could wait 240 days and file a civil court -- you

4    can even get your judgment and reject it and file a

5    civil court.

6          And, in fact, Congress went out of its way

7    to say anything that happened in vaccine court is, in

8    fact, inadmissible in the subsequent civil litigation.

9          And the reason it did that, Your Honor,

10   there is no discovery in vaccine court.  So I do not

11   nothing but products liability issues.

12         These cases, Your Honors, are -- are

13   established and proven with the internal company

14   documents.  Reviewing the internal company documents to

15   show causation.

16         In vaccine court you don't have that

17   opportunity.  You can't subpoena witnesses.  You can't

18   get internal documents.

19         Vioxx, Your Honor, for example, once

20   documents were released in litigation that we really

21   began to see the cardiovascular risks associated with

22   that product.  And that was Merck's product.  The same

23   people within Merck who worked on Vioxx were also

24   overseeing Gardasil.  They came to the market around the

25   same time.

cb8050a5-c097-4075-8d16-9f11a36e32b1

In Re: Gardasil Products Liability Litigation                Hearing (MDL No. 3036)

Page 19

1                    JUDGE KIMBALL:   Thank you.

2                    JUDGE CALDWELL:   Anyone else?

3               Thank you for your argument.

4               That concludes the arguments on MDL

5     No. 3036.

6                    MR. ESFANDIARI:   Thank you very much, Your

7     Honor.

8

9                         (Hearing concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

cb8050a5-c097-4075-8d16-9f11a36e32b1

Page 20

 1

 2                    C E R T I F I C A T E

 3

 4

 5   STATE OF WASHINGTON   )
                          ) ss.
 6   COUNTY OF KITSAP      )

 7

 8        I, CRYSTAL R. McAULIFFE, a Certified Court

 9   Reporter in and for the State of Washington, do hereby

10   certify that the foregoing transcript is true and

11   accurate to the best of my knowledge, skill and ability.

12        IN WITNESS WHEREOF, I have hereunto set my hand

13   and seal this 10th day of August, 2022.

14

15

16

17

18        _____

19        CRYSTAL R. McAULIFFE, RPR, CCR #2121

20

21

22

23

24

25

cb8050a5-c097-4075-8d16-9f11a36e32b1