# EXHIBIT 2

# U.S. District Court
## District of New Jersey [LIVE] (Trenton)
## CIVIL DOCKET FOR CASE #: 3:22-cv-05131-ZNQ-DEA

| | |
|---|---|
| BRAYBOY v. MERCK & CO., INC. et al | Date Filed: 08/19/2022 |
| Assigned to: Judge Zahid N. Quraishi | Jury Demand: Defendant |
| Referred to: Magistrate Judge Douglas E. Arpert | Nature of Suit: 367 Personal Injury: Health |
| Case in other court: SUPERIOR COURT OF NEW JERSEY, HUDSON | Care/Pharmaceutical Personal Injury Product |
| COUNTY, HUD L 2697 22 | Liability |
| Cause: 28:1441 Notice of Removal | Jurisdiction: Diversity |

**Plaintiff**

**LAKIA BRAYBOY**                    represented by     **MARK T. SADAKA**
LAW OFFICES OF SADAKA ASSOCIATES,
LLC
155 NORTH DEAN STREET
SUITE 4D
ENGLEWOOD, NJ 07631-2524
800-810-3457
Email: mark@sadakafirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MERCK & CO., INC.**                    represented by     **KAREN A. CONFOY**
FOX ROTHSCHILD LLP, PC
997 LENOX DRIVE
BLDG 3
LAWRENCEVILLE, NJ 08648
(609) 844 3033
Email: kconfoy@foxrothschild.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MERCK SHARP & DOHME CORP.**          represented by     **KAREN A. CONFOY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN DOE**
*(FICTITIOUS NAMES)*

**Defendant**

**JANE DOE**
*(FICTITIOUS NAMES)*

**Defendant**

**XYZ CORP**
*(FICTITIOUS NAMES)*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/19/2022 | 1 | NOTICE OF REMOVAL by MERCK SHARP & DOHME CORP., MERCK & CO., INC. from Hudson County Superior Court, case number HUD-L-2697-22. ( Filing and Admin fee $ 402 receipt number ANJDC-13640954), filed by MERCK SHARP & DOHME CORP., MERCK & CO., INC.. (Attachments: # 1 Exhibit, # 2 Certification 11.2, # 3 Civil Cover Sheet, # 4 Civil Cover Sheet Attachment, # 5 Certificate of Service)(CONFOY, KAREN) (Entered: 08/19/2022) |
| 08/19/2022 | 2 | Corporate Disclosure Statement by MERCK & CO., INC., MERCK SHARP & DOHME CORP.. (CONFOY, KAREN) (Entered: 08/19/2022) |
| 08/19/2022 | | Judge Zahid N. Quraishi and Magistrate Judge Douglas E. Arpert added. (kht) (Entered: 08/24/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/29/2022 17:07:43 | | | |
| PACER Login: | jholmberg | Client Code: | 999-999 |
| Description: | Docket Report | Search Criteria: | 3:22-cv-05131-ZNQ-DEA Start date: 1/1/1980 End date: 8/29/2022 |
| Billable Pages: | 2 | Cost: | 0.20 |

**SADAKA ASSOCIATES, LLC**
Mark T. Sadaka, Esq., MSPH
Attorney ID # 038582009
Michael H. Bowman (to be admitted *pro hac vice*)
155 North Dean Street, Suite 4-D
Englewood, NJ 07631
(800) 810-3457
*Attorneys for Plaintiff Lakia Brayboy*

| | |
|---|---|
| LAKIA BRAYBOY,<br><br>Plaintiffs,<br><br>vs.<br><br>MERCK & CO., INC., MERCK SHARP &<br>DOHME CORP., "JOHN DOE," "JANE DOE,"<br>AND "XYZ CORP" (FICTITIOUS NAMES),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br><br>DOCKET NO. HUDSON-L-<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff LAKIA BRAYBOY, by and through her attorneys, SADAKA ASSOCIATES, LLC, complain and allege against Defendants MERCK & CO., INC., MERCK SHARPE & DOHME, CORP., and "JOHN DOE," "JANE DOE," AND "XYZ CORP" (FICTITIOUS NAMES) (collectively, "Defendants"), on information and belief, as follows:

<u>JURISDICTION AND VENUE</u>

1.      This action is brought by Plaintiff, who is a resident citizen of the United States of America.

2.      Pursuant to Section 300aa-11(a) of the National Vaccine Injury Compensation Program: "No person may bring a civil action for damages against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury associated with the administration of a vaccine unless a petition has been filed, in accordance

with section 300aa-16 of this title, for compensation under the Program for such injury and (I) the United Stated Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition and (II) such person elects under section 300aa-21(a) to file such an action." *See* 42 U.S.C. §§ 300aa–11(a)(2)(A).

3.      Title 42, Section 300aa-16 (c) further states: "If a petition is filed under section 300aa-11 of this title for a vaccine-related injury or death, limitations of actions under State law shall be stayed with respect to a civil action brought for such injury or death for the period beginning on the date the Petition is filed and ending on the date an election is made under section 300aa-21(a) of this title to file the civil action ..."  *See* 42 U.S.C. §§ 300aa–16(c).

4.      In full compliance with the aforementioned federal law, Brayboy, while still a minor, duly filed her petition with the U.S. Court of Federal Claims seeking compensation for her Gardasil vaccine-related injuries under the National Vaccine Injury Compensation Program. A judgement thereon was rendered on or about May 19, 2022 and Brayboy will be filing her election to file a civil action on August 17, 2022.

5.      Having complied with National Vaccine Injury Compensation Program administrative procedure and filing her election to proceed with a civil action, Brayboy hereby timely initiates the instant action against Merck, the manufacturer, designer and promoter of the Gardasil vaccines which caused her debilitating injuries, including her premature ovarian failure. Through this civil action, Brayboy seeks to hold Merck accountable for its negligent, reckless, and fraudulent conduct and he seeks full compensation from Merck for the physical and emotional injuries and harms he sustained as a result of Gardasil.   Moreover, by engaging in conduct that Merck knew was unsafe and likely to injure patients and by placing Gardasil's profits ahead of patient safety, Merck has engaged in the same fraudulent and evil conduct it

engaged in with respect to Vioxx. Brayboy, therefore, requests that exemplary damages be assessed against Merck, so as to, once again, attempt to deter Merck and other would-be defendants from engaging in similar reprehensible conduct.

6.      This Court has personal jurisdiction over Defendants pursuant to N.J. R. 4:4-4(a)(6), as resident corporations of the State of New Jersey.

7.      Venue is proper in this Court pursuant to N.J. R. 4:3-2 because venue is deemed proper in the Superior Court in the county in which a cause of action arose, or where any party to the action resides. Further, pursuant to N.J. R. 4:3-2(b) a corporation is deemed to reside in any county in which its registered office is located or in any county in which is it actually doing business. Defendants are situated and incorporated in New Jersey.

8.      Requiring Defendants to litigate these claims in New Jersey does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

9.      Venue is further appropriate in the Law Division of Hudson County Superior Court as Plaintiffs seeks damages in excess of $15,000.

PARTIES:

10.      Plaintiff Lakia Brayboy (hereinafter referred to as "Brayboy") at all times relevant to this action was and is a citizen of the state of Connecticut, residing in Norwalk, CT 06851.

11.      Defendant Merck & Co., Inc., is a New Jersey corporation with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

12.      Defendant Merck, Sharp and Dohme Corporation, is a New Jersey corporation with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

13.     Defendants Merck & Co., Inc., and Merck, Sharp and Dohme Corporation shall hereinafter collectively be referred to as "Merck."

14.     At all times herein mentioned, each defendant was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of the other defendants named herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiff.

15.     At all times herein mentioned, defendants were fully informed of the actions of their agents and employees, and thereafter no officer, director or managing agent of defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and all defendants and each of them, thereby ratified those actions.

16.     There exists and, at all times herein mentioned there existed, a unity of interest in ownership between the named defendants, such that any individuality and separateness between the defendants has ceased and these defendants are the alter-ego of each other and exerted control over each other.  Adherence to the fiction of the separate existence of these two named defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

17.     At all times herein mentioned, the two Merck defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and selling products for use by patients such as Plaintiff, her parents,

and her medical providers.  As such, the two Merck defendants are each individually, as well as jointly and severally, liable to Plaintiff for her damages.

18.    The harm caused to Plaintiff resulted from the conduct of one or various combinations of the two Merck defendants, and through no fault of Plaintiff.  There may be uncertainty as to which one or which combination of the two Merck defendants caused the harm. The two Merck defendants have superior knowledge and information on the subject of which one or which combination of the two defendants caused Plaintiff's injuries.  Thus, the burden of proof should be upon each of the two Merck defendants to prove that the defendant has not caused the harms Plaintiff has suffered.  As previously stated, the two named Merck defendants shall hereinafter and throughout this Complaint be collectively referred to as "Merck."

19.    Merck is the designer, manufacturer, labeler and promoter of the Gardasil and Gardasil-9 vaccines, which are purported to be "cervical cancer vaccines" and "anal cancer vaccines" by preventing a handful of the hundreds of strains of the Human Papillomavirus ("HPV").  Merck regularly conducts and transacts business in California and has promoted Gardasil to consumers, patients, hospitals, physicians, nurses and medical professionals, including but not limited to Plaintiff, her parents and the medical facility and medical professionals who prescribed and/or injected Plaintiff with Gardasil.  This Court has personal jurisdiction over Merck because defendants have sufficient minimum contacts with California to render the exercise of jurisdiction by this Court proper.

## FACTS:

20.    The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

21.     At all times hereinafter mentioned, Merck designed, manufactured, licensed, labeled, tested, distributed, marketed and sold the Gardasil vaccine.

22.     Brayboy was 13 years old when she received her first dosage of Gardasil on July 21, 2012. She received her second dosage on September 26, 2012 and her third dosage of Gardasil on February 6, 2013.

23.     Prior to receiving her Gardasil injections, Brayboy was not suffering from premature ovarian failure, and in fact, as noted during her July 12, 2012 physical, had a regular menses.

24.     On December 28, 2013, Brayboy reported to her pediatrician that she was having hot flashes for the past several months, but was still having regular menses.

25.     Brayboy experienced amenorrhea around May 2014.

26.     On October 24, 2014, Brayboy was seen for amenorrhea since May 2014 with hot flashes and was diagnosed with premature ovarian failure.

27.     As a direct and proximate result of Merck's defective Gardasil vaccine, the Plaintiff's symptoms and diagnoses have resulted in physical limitations not present prior to using Merck's product.

28.     As a result of the manufacture, marketing, advertising, promotion, distribution and/or sale of Gardasil, the Plaintiff sustained severe and permanent personal injuries.  Further, as a tragic consequence of Merck's wrongful conduct, the Plaintiff suffered serious, progressive, permanent, and incurable injuries, as well as significant conscious pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and injury.

29.     The Plaintiff has incurred and will continue to incur medical expenses and other economic harm as a direct result of use of Gardasil.

## COUNT I:
## NEGLIGENCE

30.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges:

31.     Merck is the researcher, designer, manufacturer, labeler, and promoter of the Gardasil and the subsequent Gardasil 9 vaccines.

32.     Merck marketed Gardasil to patients, including teenagers such as Plaintiff, her mother and her medical providers.

33.     Merck had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Gardasil, including the duty to take all reasonable steps necessary to research, manufacture, label, promote and/or sell a product that was not unreasonably dangerous to consumers, users, and other persons coming into contact with the product.

34.     At all times relevant to this litigation, Merck had a duty to exercise reasonable care in the marketing, advertising, and sale of Gardasil.  Merck's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the efficacy and risks of Gardasil and appropriate, complete, and accurate warnings concerning the potential adverse effects of Gardasil and its various ingredients and adjuvants.

35.     At all times relevant to this litigation, Merck knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Gardasil and specifically, the serious, debilitating and potentially fatal adverse events associated with Gardasil, including but not limited to autoimmune diseases (including, but not limited to premature ovarian failure), disabling injuries, and death.

36.     Accordingly, at all times relevant to this litigation, Merck knew or, in the exercise of reasonable care, should have known that use of Gardasil could cause Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

37.     Merck knew or, in the exercise of reasonable care, should have known that its negligently and poorly designed clinical trials and studies were insufficient to test the true long-term safety and efficacy of Gardasil.

38.     Merck also knew, or, in the exercise of reasonable care, should have known that its targeted consumers and patients (who were pre-teen and teen children), the parents of these patients and the children's medical providers were unaware of the true risks and the magnitude of the risks associated with Gardasil and the disclosed and undisclosed ingredients of Gardasil.

39.     As such, Merck breached its duty of reasonable care and failed to exercise ordinary care in the research, development, manufacturing, testing, marketing, supply, promotion, advertisement, packaging, labeling, sale, and distribution of Gardasil, in that Merck manufactured and produced a defective and ineffective vaccine, knew or had reason to know of the defects and inefficacies inherent in its products, knew or had reason to know that a patient's exposure to Gardasil created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these defects, risks and injuries.

40.     Merck failed to appropriately and adequately test the safety and efficacy of Gardasil and its individual ingredients and adjuvants.

41.     Despite the ability and means to investigate, study, and test its products and to provide adequate warnings, Merck has failed to do so.  Indeed, Merck has wrongfully concealed

information and has further made false and/or misleading statements concerning the safety and efficacy of Gardasil.

42.     Merck's negligence is outlined in detail in this Complaint and included, among other things:

a)     Manufacturing, producing, promoting, creating, researching, labeling, selling, and/or distributing Gardasil without thorough and adequate pre- and post-market testing and studies;

b)     Manufacturing, producing, promoting, researching, labeling, selling, and/or distributing Gardasil while negligently and intentionally concealing and failing to accurately and adequately disclose the results of the trials, tests, and studies of Gardasil, and, consequently, the lack of efficacy and risk of serious harm associated with Gardasil;

c)     Failing to undertake sufficient studies and conduct necessary tests to determine the safety of the ingredients and/or adjuvants contained within Gardasil, and the propensity of these ingredients to render Gardasil toxic, increase the toxicity of Gardasil, whether these ingredients are carcinogenic or associated with autoimmune diseases and other injures;

d)     Negligently designing and conducting its clinical trials so as to prevent the clinical trials from revealing the true risks, including but not limited to, long terms risks and risks of autoimmune diseases associated with Gardasil;

e)      Negligently designing and conducting its clinical trials so as to mask the true risks, including but not limited to, long terms risks and risks of autoimmune diseases and cancers associated with Gardasil;

f)      Failing to test Gardasil against a true inert placebo and lying to the public that Gardasil was tested against a placebo, when in reality, all, or nearly all, studies used a toxic placebo that included the aluminum adjuvant AAHS;

g)      Failing to have a sufficient number of studies for the targeted patient population which included pre-teen girls (and boys) between the ages of nine and 12;

h)      Not using the commercial dosage (and instead using a lower dosage of the adjuvant and ingredients) in one of the key clinical trials used to obtain licensing for the commercial dosage of Gardasil;

i)      Using restrictive exclusionary criteria in the clinical study patient population (including, for example, the exclusion of anyone who had prior abnormal Pap tests, who had a history of immunological or nervous system disorders, or was allergic to aluminum or other ingredients), but then not revealing or warning about these exclusionary criteria in the label and knowing that, for most of these ingredients and allergies, there are limited resources for the public to test for such allergies in advance of being vaccinated;

j)      Negligently designing and conducting its trials so as to create the illusion of efficacy when in reality the Gardasil Vaccines *have not* been shown to be effective against preventing cervical and anal cancer;

k)      Failing to use reasonable and prudent care in the research, manufacture, labeling and development of Gardasil so as to avoid the risk of serious harm associated with the prevalent use of Gardasil;

l)      Failing to provide adequate instructions, guidelines, warnings, and safety precautions to those persons who Merck could reasonably foresee would use and/or be exposed to Gardasil;

m)      Failing to disclose to Plaintiff, her parents, her medical providers and to the general public that Gardasil is ineffective when used in patients who have previously been exposed to HPV, and also failing to disclose that Gardasil actually increases the risk of cervical cancer, including in any child or patient who has previously been exposed to HPV;

n)      Failing to disclose to Plaintiff, her parents, her medical providers and to the general public that use of and exposure to Gardasil presents severe risks of cancer (including cervical cancer, the very cancer it is promoted as preventing), fertility problems, autoimmune diseases and other grave illnesses as alleged herein;

o)      Failing to disclose to Plaintiff, her parents, her medical providers and to the general public that use of and exposure to Gardasil presents severe risks of triggering and increasing the risk of various autoimmune diseases, including but not limited to premature ovarian failure;

p)      Failing to disclose to Plaintiff, her parents, her medical providers and to the general public that, contrary to Merck's promotion of the vaccine, Gardasil has not been shown to be effective at preventing cervical cancer and that the safest and most effective means of monitoring and combating cervical cancer is regular testing, including Pap tests;

q)      Representing that Gardasil was safe and effective for its intended use when, in fact, Merck knew or should have known the vaccine was not safe and not effective for its intended use;

r)      Falsely advertising, marketing, and recommending the use of Gardasil, while concealing and failing to disclose or warn of the dangers Merck knew to be associated with or caused by the use of Gardasil;

s)      Falsely promoting Gardasil as preventing cervical cancer when Merck knows that it has not done any studies to demonstrate that Gardasil prevents cervical cancer and, indeed, its clinical studies revealed that Gardasil actually increases the risk of cervical cancer;

t)      Engaging in false advertising and disease mongering by scaring parents and children into believing that cervical and anal cancer is far more prevalent than it really is; that all cervical and anal cancer was linked to HPV; that Gardasil prevented cervical and anal cancer, when in reality none of these representations were true as cervical cancer rates were declining in the United States due to Pap testing and Gardasil has not been shown to prevent against all strains of HPV that are associated with

cervical and anal cancer and, indeed, it has never been shown to prevent
cervical and anal cancer;

u)      Failing to disclose all of the ingredients in Gardasil, including but not
limited to the fact that Gardasil contains dangerous HPV L1-DNA
fragments and that these DNA fragments could act as a Toll-Like
Receptor 9 (TLR9) agonist – further adjuvanting the vaccine and making
it more potent and dangerous;

v)      Declining to make any changes to Gardasil's labeling or other promotional
materials that would alert consumers and the general public of the true
risks and defects of Gardasil;

w)      Systemically suppressing or downplaying contrary evidence about the
risks, incidence, and prevalence of the side effects of the Gardasil
Vaccines by, inter alia, orchestrating the retraction of peer-reviewed and
published studies and vilifying and attempting to ruin the careers of any
scientists who openly question Gardasil's safety and efficacy.

43.     Merck knew and/or should have known that it was foreseeable that patients, such
as Plaintiff, would suffer injuries as a result of Merck's failure to exercise ordinary care in the
manufacturing, marketing, labeling, distribution, and sale of Gardasil.

44.     Plaintiff and her parents, and upon information and belief, her medical providers,
did not know the true nature and extent of the injuries that could result from the intended use of
and/or exposure to Gardasil or its adjuvants and ingredients.

45.     Merck's negligence was the proximate cause of the injuries, harm, and economic
losses that Plaintiff suffered, and will continue to suffer, as described herein.

46.     Had Merck not engaged in the negligent and fraudulent conduct alleged herein and/or had Merck via its labeling, advertisements, and promotions provided adequate and truthful warnings and properly disclosed and disseminated the true risks, limitations, and lack of efficacy associated with Gardasil to medical providers, patients and the public, then upon information and belief, Plaintiff's medical providers would not have offered or recommended Gardasil to Plaintiff.  Moreover, even if after Merck's dissemination of truthful information concerning the true risks and efficacy limitation of Gardasil, Plaintiff's medical providers had offered Gardasil, then upon information and belief, the providers would have heeded any warnings issued by Merck and relayed to Plaintiff and her mother the safety risks and efficacy limitations that Merck should have warned them about, but failed to do so.  Had Plaintiff and her mother been informed of the true risks and efficacy limitation concerning Gardasil, either through her medical providers or through Merck's ubiquitous direct-to-consumer promotional marketing, on which Plaintiff's mother relied, then neither Plaintiff nor her mother would have consented to Plaintiff being injected with Gardasil.

47.     As a proximate result of Merck's wrongful acts and omissions and its negligent and fraudulent testing, labeling, manufacturing, marketing and promotion of Gardasil, Plaintiff has suffered and continues to suffer severe and permanent physical injuries, including her premature ovarian failure and associated symptomology and has suffered severe and permanent emotional injuries, including pain and suffering.  Plaintiff also has a substantial fear of suffering additional and ongoing harms, including but not limited to now being at an increased risk of cancer, fertility problems and future symptoms and harms associated with her premature ovarian failure as a result of her exposure to Gardasil.

48.     As a direct and proximate result of her Gardasil-induced injuries, Plaintiff has suffered and continues to suffer economic losses, including considerable financial expenses for medical care and treatment, diminished income capacity and she will continue to incur these losses and expenses in the future.

49.     Merck's conduct, as described above, was aggravated, outrageous and evil. Merck regularly risks the lives of children, including Plaintiff, with full knowledge of the limited efficacy of Gardasil and the severe and sometimes fatal dangers of Gardasil.  Merck has made conscious decisions to not warn, or inform the unsuspecting public, including Plaintiff, her parents and her medical providers.  Merck's conduct, including its false promotion of Gardasil and its failure to issue appropriate warnings concerning the severe risks of Gardasil, created a substantial risk of significant harm to children and patients who were being injected with Gardasil, and therefore warrants an award of punitive damages.

50.     WHEREFORE, Plaintiff requests that the Court enter judgment in her favor for compensatory and punitive damages, together with interest, costs herein incurred, attorney's fees, and all such other and further relief as this Court deems just and proper.  Plaintiff also demands a jury trial on the issues contained herein.


**COUNT TWO**
**STRICT LIABILITY**
**(FAILURE TO WARN)**


51.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

52.     Plaintiff brings this strict liability claim against Merck for failure to warn.

53.     At all times relevant to this litigation, Merck engaged in the business of researching, testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Gardasil, which is defective and unreasonably dangerous to consumers, including Plaintiff, because it does not contain adequate warnings or instructions concerning the dangerous characteristics of Gardasil and its ingredients and adjuvants.  These actions were under the ultimate control and supervision of Merck.

54.     Merck researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Gardasil, and in the course of same, directly advertised or marketed the vaccine to consumers and end users, including Plaintiff, her parents and medical providers, and Merck therefore had a duty to warn of the risks associated with the reasonably foreseeable uses of Gardasil and a duty to instruct on the proper,  safe use of these products.

55.     At all times relevant to this litigation, Merck had a duty to properly research, test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute,  provide proper warnings, and take such steps as necessary to ensure that Gardasil did not cause users and consumers to suffer from unreasonable and dangerous risks.  Merck had a continuing duty to instruct on the proper, safe use of these products.  Merck, as manufacturer, seller, or distributor of vaccines, is held to the knowledge of an expert in the field.

56.     At the time of manufacture, Merck could have provided warnings or instructions regarding the full and complete risks of Gardasil because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to these products.

57.     At all times relevant to this litigation, Merck failed to properly investigate, study, research, test, manufacture, label or promote Gardasil.  Merck also failed to minimize the

dangers to children, patients, and consumers of Gardasil products and to those who would foreseeably use or be harmed by Gardasil, including Plaintiff.

58.     Despite the fact that Merck knew or should have known that Gardasil posed a grave and unreasonable risk of harm (including but not limited to increased risk of premature ovarian failure, and the various other Gardasil induced injuries that Plaintiff has sustained), it failed to warn of the risks associated with Gardasil.  The dangerous propensities of Gardasil and the carcinogenic characteristics and autoimmune-inducing characteristics of Gardasil, as described in this Complaint, were known to Merck, or scientifically knowable to Merck through appropriate research and testing by known methods, at the time it distributed, supplied, or sold Gardasil, and not known to end users and consumers, such as Plaintiff, her parents and medical providers.

59.     Merck knew or should have known that Gardasil and its ingredients and adjuvants created significant risks of serious bodily harm to children and patients, as alleged herein, and Merck failed to adequately warn patients, parents, medical providers and reasonably foreseeable users of the risks and lack of efficacy of Gardasil.  Merck has wrongfully concealed information concerning Gardasil's dangerous nature and lack of efficacy and has further made false and misleading statements concerning the safety and efficacy of Gardasil.

60.     At all times relevant to this litigation, Merck's Gardasil products reached the intended consumers, handlers, and users or other persons coming into contact with these products throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Merck.

61.     Plaintiff was injected with Gardasil in its intended or reasonably foreseeable manner without knowledge of its unreasonable dangerous and inefficacious characteristics.

62.     Plaintiff could not have reasonably discovered the defects and risks associated with Gardasil before or at the time of her injections.  Plaintiff and her parents relied upon the skill, superior knowledge, and judgment of Merck.

63.     Merck knew or should have known that the warnings disseminated with Gardasil were inadequate, and failed to communicate adequate information concerning the true risks and lack of efficacy of Gardasil and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including injection in teenagers.

64.     The information that Merck did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled patients, parents of patients and the medical providers of patients to properly utilize, recommend or consent to the utilization of Gardasil.  Instead, Merck disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the lack of efficacy, comparative severity, duration, and extent of the serious risk of injuries associated Gardasil; continued to aggressively promote the efficacy and safety of its products, even after it knew or should have known of Gardasil's unreasonable risks and lack of efficacy; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks, defects and dangers of Gardasil.

65.     To this day, Merck has failed to adequately and accurately warn of the true risks of Plaintiff's injuries, including but not limited to, premature ovarian failure, associated with the use of and exposure to Gardasil, and has failed to warn of the additional risks that Plaintiff is now exposed to, including, but not limited to, the increased risk of cancer, and other potential side effects and ailments.

66.     As a result of Merck's failure to warn and false promotion, Gardasil is and was defective and unreasonably dangerous when it left the possession and/or control of Merck, was distributed by Merck, and used by Plaintiff.

67.     Merck is liable to Plaintiff for injuries caused by its failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding Gardasil, the lack of efficacy and serious risks associated with Gardasil and its ingredients and adjuvants.

68.     The defects in Merck's Gardasil vaccine were substantial and contributing factors in causing Plaintiff's injuries, and, but for Merck's misconduct and omissions and Gardasil's defects, including its defective labeling and false promotion, Plaintiff would not have sustained her injuries which she has sustained to date, and would not have been exposed to the additional prospective risk and dangers that are associated with Gardasil.

69.     Had Merck not engaged in the negligent and fraudulent conduct alleged herein and/or had Merck, via its labeling, advertisements, and promotions provided adequate and truthful warnings and properly disclosed and disseminated the true risks, limitations, and lack of efficacy associated with Gardasil to medical providers, patients and the public, then upon information and belief, Plaintiff's medical providers would not have offered or recommended Gardasil to Plaintiff.  Moreover, even if after Merck's dissemination of truthful information concerning the true risks and efficacy limitation of Gardasil, Plaintiff's medical providers had offered Gardasil, then upon information and belief, the providers would have heeded any warnings issued by Merck and relayed to Plaintiff and her mother the safety risks and efficacy limitations that Merck should have warned them about, but failed to do so.  Had Plaintiff and her mother been informed of the true risks and efficacy limitation concerning Gardasil, through her medical providers or through Merck's ubiquitous direct-to-consumer promotional marketing, on

which her mother relied, then neither Plaintiff nor her mother would have consented to Plaintiff being injected with Gardasil.

70.     As a proximate result of Merck's wrongful acts and omissions and its negligent and fraudulent testing, labeling, manufacturing, and promotion of Gardasil, Plaintiff has suffered and continues to suffer severe and permanent physical injuries, including, but not limited to, her premature ovarian failure and associated symptomology and has suffered severe and permanent emotional injuries, including pain and suffering.  Plaintiff also has a substantial fear of suffering additional and ongoing harms, including but not limited to now being at an increased risk of cancer, and future symptoms and harms associated with her premature ovarian failure and other injuries caused by Gardasil.

71.     As a direct and proximate result of her Gardasil-induced injuries, Plaintiff has suffered and continues to suffer economic losses, including considerable financial expenses for medical care and treatment, and diminished income capacity and she will continue to incur these losses and expenses in the future.

72.     Merck's conduct, as described above, was aggravated, outrageous and evil. Merck regularly risks the lives of teenagers, including Plaintiff, with full knowledge of the limited efficacy of Gardasil and the severe and sometimes fatal dangers of Gardasil.  Merck has made conscious decisions to not warn or inform the unsuspecting public, including Plaintiff, her parents, and her medical providers.  Merck's conduct, including its false promotion of Gardasil and its failure to issue appropriate warnings concerning the severe risks of Gardasil, created a substantial risk of significant harm to children, teenagers, and patients who were being injected with Gardasil, and therefore warrants an award of punitive damages.

73.     WHEREFORE, Plaintiff requests that the Court enter judgment in her favor for compensatory and punitive damages, together with interest, and costs herein incurred, and all such other and further relief as this Court deems just and proper.  Plaintiff also demands a jury trial on the issues contained herein.

## COUNT THREE
## STRICT LIABILITY
## (MANUFACTURING DEFECT)

74.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

75.     Plaintiff brings this strict liability claim against Merck for manufacturing defect.

76.     At all times relevant to this litigation, Merck engaged in the business of researching, testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Gardasil, which is defective and unreasonably dangerous to consumers, including Plaintiff, because of manufacturing defects, which patients, including Plaintiff, her parents and her medical providers did not expect.

77.     Upon information and belief, the Gardasil vaccines injected into Plaintiff were defective and unreasonably dangerous because they failed to comply with manufacturing specifications required by the governing manufacturing protocols and also required by the regulatory agencies, including but not limited to the FDA, by among other things, containing ingredients and toxins that were not disclosed in the FDA-approved specifications and/or otherwise not disclosed in the package insert.

78.     Upon information and belief, and as way of example, the Gardasil injected into Plaintiff was defective and unreasonably dangerous because it failed to comply with the

approved manufacturing specifications, by containing dangerous and undisclosed HPV L1-DNA fragments, and these DNA fragments could act as a Toll-Like Receptor 9 (TLR9) agonist, further adjuvanting the vaccine and making it more potent and dangerous than intended.

79.     Upon information and belief, and as way of example, the Gardasil injected into Plaintiff was defective and unreasonably dangerous because it failed to comply with the approved manufacturing specifications, by containing dangerous and undisclosed ingredients and neurotoxins, including but not limited to, phenylmethylsulfonyl fluoride (PMSF), a toxic nerve agent that is not intended for human consumption or injection.

80.     At all times relevant to this litigation, Merck's Gardasil products reached the intended consumers, handlers, and users or other persons coming into contact with these products throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Merck.

81.     Plaintiff was injected with Gardasil in its intended or reasonably foreseeable manner without knowledge of its dangerous and inefficacious characteristics.

82.     Plaintiff, her parents, and her medical providers could not reasonably have discovered the defects, including the manufacturing defects, and risks associated with Gardasil before or at the time of her injections. Plaintiff and her parents relied upon the skill, superior knowledge, and judgment of Merck.

83.     Merck is liable to Plaintiff for injuries caused as a result of its manufacturing defects.

84.     The defects in Merck's Gardasil vaccine were substantial and contributing factors in causing Plaintiff's injuries, and, but for Merck's misconduct and omissions and Gardasil's defects, including but not limited to its manufacturing defects, Plaintiff would not have

sustained the injuries she has sustained to date, and would not have been exposed to the additional prospective risk and dangers associated with Gardasil.

85.     As a proximate result of Merck's wrongful acts and Gardasil's manufacturing defects, Plaintiff has suffered and continues to suffer severe and permanent physical injuries, including her premature ovarian failure and associated symptomology and has suffered severe and permanent emotional injuries, including pain and suffering.  Plaintiff also has a substantial fear of suffering additional and ongoing harms, including but not limited to now being at an increased risk of cancer, and future symptoms and harms associated with her autoimmune disease and other injuries caused by Gardasil.

86.     As a direct and proximate result of her Gardasil-induced injuries, Plaintiff has suffered and continues to suffer economic losses, including considerable financial expenses for medical care and treatment, and diminished income capacity, and she will continue to incur these losses and expenses in the future.

87.     Merck's conduct, as described above, was aggravated, outrageous and evil. Merck regularly risks the lives of patients, including Plaintiff, with full knowledge of the limited efficacy of Gardasil and the severe and sometimes fatal dangers of Gardasil.  Merck has made conscious decisions to not warn, or inform the unsuspecting public, including Plaintiff, her parents, and her medical providers.  Merck's conduct, including its false promotion of Gardasil and its failure to issue appropriate warnings concerning the severe risks of Gardasil, created a substantial risk of significant harm to children and patients who were being injected with Gardasil, and therefore warrants an award of punitive damages.

88.     WHEREFORE, Plaintiff requests that the Court enter judgment in her favor for compensatory and punitive damages, together with interest, costs herein incurred, and all such

other and further relief as this Court deems just and proper.  Plaintiff also demands a jury trial on the issues contained herein.

## COUNT FOUR

## BREACH OF EXPRESS WARRANTY

89.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

90.     Merck engaged in the business of testing, researching, developing, designing, manufacturing, labeling, marketing, selling, distributing, and promoting Gardasil, which is defective and unreasonably dangerous to consumers, including Plaintiff.

91.     At all times relevant to this litigation, Merck expressly represented and warranted through statements made in its Gardasil label, publications, television advertisements, billboards, print advertisements, online advertisements and website, and other written materials intended for consumers, patients, parents of minor-aged patients, medical providers and the general public, that Gardasil was safe and effective at preventing cancer.  Merck advertised, labeled, marketed, and promoted Gardasil, representing the quality to consumers, patients, medical providers and the public in such a way as to induce their purchase or use, thereby making an express warranty that Gardasil would conform to the representations.

92.     These express representations included incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with Gardasil.  Merck knew and/or should have known that the risks expressly included in Gardasil's promotional material and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein.  Nevertheless, Merck falsely and expressly represented

that Gardasil was "safe" for use by individuals such as Plaintiff, and/or that Gardasil was

"effective" in preventing cervical cancer and that anyone who was vaccinated with Gardasil

would be "one less" person with cancer.

93.     The representations about Gardasil, as set forth herein, contained or constituted

affirmations of fact or promises made by the seller to the buyer, which related to the goods and

became part of the basis of the bargain, creating an express warranty that the goods would

conform to the representations.

94.     Merck breached these warranties because, among other things, Gardasil is

ineffective at preventing cancer, defective, dangerous, unfit for use, and is associated with a

myriad of dangerous and undisclosed risks, including, but not limited to, the risk of premature

ovarian failure, including POTS, the risk of developing cervical cancer in women (even though

Merck promoted it as preventing cervical cancer), and the risk of fertility problems for young

girls.  Specifically, Merck breached the warranties in the following ways:

   a)     Representing to patients and the medical community, including Plaintiff,

          her parents and/or her medical providers that Gardasil is effective in

          preventing cancer, including anal and cervical cancer, when Merck knew

          that contrary to these representations (i) no clinical studies were performed

          to test if Gardasil prevents cancer; (ii) the clinical studies confirmed that

          Gardasil is indeed ineffective when used in patients who have previously

          been exposed to HPV, and that Gardasil actually increases the risk of

          cancer in any patient who has been previously exposed to HPV; and (iii)

          there are safer and more effective methods of monitoring for and

          attempting to prevent cervical or anal cancer, including but not limited to

regular testing, such as regular Pap smears for cervical cancer, and monitoring.

b)   Representing to patients and the medical community, including Plaintiff, her parents, and her medical providers that Gardasil is safe, when in reality, Gardasil causes and presents serious risks of cancer, premature ovarian failure, including but not limited to POTS, and other grave illnesses as outlined herein;

c)   Engaging in false advertising and disease mongering by scaring parents and children into believing that cervical and anal cancer is far more prevalent than it really is; that all cervical and anal cancer was linked to HPV; that Gardasil prevented cervical cancer, when in reality none of these representations were true as cervical cancer rates were declining in the United States due to Pap testing and Gardasil has not been shown to prevent against all strains of HPV that are associated with cervical cancer and indeed it has never been shown to prevent cervical or anal cancer.

95.   Merck had sole access to material facts concerning the nature of the risks and defects associated with Gardasil as expressly stated within its promotional material and labels, and Merck knew that patients and users such as Plaintiff could not have reasonably discovered the truth about the inefficacies and serious risks associated with Gardasil as alleged herein.

96.   Plaintiff and her mother had no knowledge of the falsity or incompleteness of Merck's statements and representations concerning Gardasil.

97.   Plaintiff's mother was exposed to and relied upon the ubiquitous promotional material and representations Merck made in its direct-to-consumer advertisements and marketing

materials concerning the safety and efficacy of Gardasil, including: that Gardasil prevents

cervical and anal cancer and these cancers are prevalent (even though children rarely get cervical

or anal cancer and Pap tests are the best frontline defense in detecting and fighting cervical

cancer); that "good mothers" vaccinate their children and that Gardasil is perfectly safe.

However, had Merck in these advertisements not engaged in disease mongering and deception,

but instead had informed her of the truth about the serious risks of Gardasil (as outlined in this

Complaint) and its lack of efficacy, she would never have consented to her minor son being

injected with Gardasil, nor would Plaintiff have consented to any of the Gardasil injections had

she been adequately informed about the questionable efficacy and serious risks associated with

Gardasil.

98.     As a proximate result of Merck's wrongful acts and breaches of warranties

concerning the safety and efficacy of Gardasil, Plaintiff has suffered and continues to suffer

severe and permanent physical injuries, including her premature ovarian failure and associated

symptomology and has suffered severe and permanent emotional injuries, including pain and

suffering. Plaintiff also has a substantial fear of suffering additional and ongoing harms,

including but not limited to now to being at an increased risk of cancer, and future symptoms and

harms associated with her premature ovarian failure and other injuries caused by Gardasil.

99.     As a direct and proximate result of her Gardasil-induced injuries, Plaintiff has

suffered and continues to suffer economic losses, including considerable financial expenses for

medical care and treatment, and diminished income capacity and she will continue to incur these

losses and expenses in the future.

100.    Merck's conduct, as described above, was aggravated, outrageous and evil.

Merck regularly risks the lives of patients, including Plaintiff, with full knowledge of the limited

efficacy of Gardasil and the severe and sometimes fatal dangers of Gardasil.  Merck has made conscious decisions to not warn, or inform the unsuspecting public, including Plaintiff, her parents, and her medical providers.  Merck's conduct, including its false promotion of Gardasil and its failure to issue appropriate warnings concerning the severe risks of Gardasil, created a substantial risk of significant harm to children and patients who were being injected with Gardasil, and therefore warrants an award of punitive damages.

101.    WHEREFORE, Plaintiff that the Court enter judgment in her favor for compensatory and punitive damages, together with interest, and costs herein incurred, and all such other and further relief as this Court deems just and proper.  Plaintiff also demands a jury trial on the issues contained herein.

## COUNT FIVE

## COMMON LAW FRAUD

102.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

103.    Merck is the researcher, designer, manufacturer, labeler, and promoter of Gardasil.

104.    Merck marketed Gardasil to and for the benefit of patients, including teenagers such as Plaintiff, her parents, and her medical providers.

105.    Merck had a duty to deal honestly and truthfully with regulators, patients, consumers and medical providers in its development, testing, marketing, promotion, and sale of Gardasil.

106.     Merck's duty of care owed to patients and medical providers included providing accurate, complete, true, and correct information concerning the efficacy and risks of Gardasil in its direct-to-consumer advertisements, promotional material, and labeling.

107.     At all times relevant to this litigation, Merck knew or should have known of the hazards and dangers of Gardasil and specifically, the serious, debilitating and potentially fatal adverse events associated with Gardasil, including but not limited to autoimmune disease, premature ovarian failure, increased risk of cancer, and death.

108.     At all times relevant to this litigation, Merck knew or should have known that its poorly designed clinical trials and studies were insufficient to test the true long-term safety and efficacy of Gardasil.

109.     At all times relevant to this litigation, Merck expressly represented through statements it made in its publications, ubiquitous television advertisements, billboards, print advertisements, online advertisements and website, and other written materials intended for consumers, patients, parents of minor-aged patients, medical providers and the general public, that Gardasil was safe and effective at preventing cancer.

110.     These express representations included incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with Gardasil.  As way of example Merck's marketing material, including its "One Less" television and print advertisement campaign (including but not limited to Gardasil posters in medical facilities and doctors' offices), which Plaintiff's mother had been exposed to, stated that Gardasil was safe, that Gardasil was effective in preventing cancer, that Gardasil was a "cervical cancer vaccine," and that any young child who was vaccinated with Gardasil would be "one less" child with

cervical or anal cancer. The only safety warnings Merck provided in these marketing materials

was that a patient could get pain, swelling or redness at injection site, fever, and/or nausea.

111.    The ubiquitous nature of these Gardasil commercials and the Gardasil marketing

campaign gave the impression that cervical cancer was on the rise and more prevalent than it

actually was, and that all good mothers vaccinate children with the "cervical cancer vaccine."

112.    Merck knew or should have known that the risks expressly included in Gardasil's

promotional material and labels did not and do not accurately or adequately set forth the true

and complete risks of developing the serious injuries that are associated with Gardasil, as

previously alleged herein, and which include but are not limited to, autoimmune diseases

(including, but not limited to, premature ovarian failure), increased risk of cancer, and death.

113.    The same promises of efficacy and limited and incomplete warnings Merck

relayed in its direct-to-consumer advertising, were what Plaintiff's medical providers relayed to

her when they recommended Gardasil – i.e., that if Plaintiff got vaccinated with Gardasil, it

would prevent cancer and the only risks associated with Gardasil are soreness, redness, minor

pain, and a headache may develop.

114.    Plaintiff's mother had been exposed to Merck's marketing material concerning

Gardasil, including the aforementioned "One Less" marketing campaign and other print

advertisements and posters at doctors' offices, and the representations made by Merck therein

that Gardasil is effective at preventing cervical and anal cancer, that Gardasil is safe and that its

only side-effects are essentially minor injection site pain and swelling, headache, and the

possible onset of a fever or nausea.  Prior to providing consent to inject Plaintiff with the

Gardasil vaccine, Plaintiff and her mother were never informed by Merck, or anyone else, that

Gardasil is linked to a host of serious debilitating and chronic adverse events including,

autoimmune diseases (including, but not limited to, premature ovarian failure), increased risk of cancer, and death.

115.    Prior to providing consent to inject Plaintiff with the Gardasil vaccine, Plaintiff and her mother were never informed by Merck, or anyone else, that Merck had not conducted the proper testing necessary to demonstrate the efficacy and full safety of Gardasil.

116.    Prior to providing consent to inject Plaintiff with the Gardasil vaccine, Plaintiff and her mother were never informed by Merck, or anyone else, that Merck had, as alleged herein, manipulated its clinical studies to mask and conceal the adverse events associated with Gardasil.

117.    Prior to providing consent to inject Plaintiff with the Gardasil vaccine, Plaintiff and her mother were never informed by Merck, or anyone else, that the Gardasil clinical trials never established that Gardasil can prevent cervical or anal cancer, even though Merck in its promotional material to which Plaintiff's mother falsely represented that Gardasil was a "cervical cancer vaccine" and that a child who received Gardasil would result in "one less" woman or man getting cancer.

118.    Merck's representations were false, because in truth, Gardasil has not been proven to prevent cervical or anal cancer and is associated with a myriad of dangerous and undisclosed risks, including, but not limited to, the risk of autoimmune disease, including premature ovarian failure, the risk of developing cancer, and the risk of other serious side effects.  The false representations Merck made to the children, the parents of children, the medical community, including to Plaintiff and her mother, included:

        a)    that Gardasil is effective in preventing cervical and anal cancer, when Merck knew that, contrary to these representations (i) no clinical studies

were performed to test whether Gardasil prevents cancer; and (ii) the

clinical studies confirmed that Gardasil is indeed ineffective when used in

patients who have previously been exposed to HPV, and that Gardasil

actually increases the risk of cervical cancer in any child or patient who

has been previously exposed to HPV;

b)      that Gardasil is safe, when in reality, Gardasil causes and presents severe

risks of cancer (including cervical cancer, the very cancer it is promoted as

preventing), fertility problems, autoimmune disease, and other grave

illnesses;

c)      false advertising and disease mongering by scaring parents into believing

that cervical and anal cancer were far more prevalent than they really

were; that Gardasil prevented cervical and anal cancer; and that Gardasil

only had risks of injection site pain and fever, when in reality none of

these representations were true as cervical cancer rates were declining in

the United States due to Pap testing and Gardasil has not been shown to

prevent cervical cancer or anal cancer, and indeed some studies

demonstrated that it actually increased the risk of cervical cancer; and

Gardasil was linked to a host of serious, chronic and sometimes fatal

diseases, including autoimmune diseases and premature ovarian failure, as

previously outlined in this Complaint.

119.    These representations and other similar representations were made by Merck to

the public, including to Plaintiff and her mother, with the intent that parents would either seek

out Gardasil from their medical providers or otherwise would provide their consent when they were offered Gardasil.

120.     At the time they provided their consent to the Gardasil injections, Plaintiff and her mother were not aware of the falsity of Merck's aforementioned representations concerning the safety and efficacy of Gardasil.

121.     Plaintiff's mother reasonably and justifiably relied upon the truth of the assurance made by Merck in its direct-to-consumer marketing concerning the efficacy and safety of Gardasil (which were also echoed by Plaintiff's medical providers), when she provided her consent to have her daughter, Lakia Brayboy, injected with the Gardasil vaccine.

122.     Had Merck's advertisements and promotional material, which Merck targeted to young girls and boys and the parents of young girls and boys, and which Plaintiff's mother received and on which she relied, provided complete and truthful warnings and properly disclosed and disseminated the true risks, limitations and lack of efficacy associated with Gardasil, then neither Plaintiff nor her mother would have consented to Plaintiff being injected with Gardasil.

123.     Merck also engaged in a number of additional fraudulent activities that led to regulators, medical providers (upon information and belief, including but not limited Plaintiff's medical providers), and the general public (including directly and/or indirectly Plaintiff and her mother) into being duped believing that Gardasil is safe and effective.  These fraudulent acts are outlined in greater detail in the preceding paragraphs of this Complaint, and included, among others:

> d)      Failing to test Gardasil against a true inert placebo and lying to the public that Gardasil was tested against a placebo, when in reality, all, or nearly

all, studies used a toxic placebo that included the dangerous aluminum adjuvant AAHS.

e)    Failing to conduct a sufficient number of studies for the targeted patient population which included pre-teen girls (and boys) between the ages of nine and 12.

f)    Not using the commercial dosage (and instead using a lower dosage of the adjuvant and ingredients) in one of the key clinical trials, which was used to obtain licensing for the commercial dosage of Gardasil;

g)    Using very restrictive exclusionary criteria in the clinical study patient population (including for example, exclusion of anyone who had prior abnormal Pap tests, who had a history of immunological or nervous system disorders or was allergic to aluminum or other ingredients), but then not revealing or warning about these exclusionary criteria in the label and knowing that for most of these ingredients and allergies, there are limited resources for the public to test for such allergies in advance of being vaccinated;

h)    Failing to disclose all of the ingredients in Gardasil, including but not limited to the fact that Gardasil contains dangerous HPV L1-DNA fragments and that these DNA fragments could act as a Toll-Like Receptor 9 (TLR9) agonist – further adjuvanting the vaccine and making it more potent and dangerous.

124.    Merck engaged in the above mentioned fraudulent conduct as well as the additional fraudulent conduct detailed throughout this Complaint with the intent to enhance

Gardasil's safety and efficacy profile  and to conceal Gardasil's serious risks and efficacy shortcomings in order to secure regulatory approval and more importantly, so as to encourage physicians and medical providers to recommend Gardasil to patients and to prepare and encourage patients to request and consent to Gardasil injections.

125.    Plaintiff and her mother could not reasonably have discovered the falsity of Merck's representations, the fraudulent nature of Merck's conduct, and the defects and risks associated with Gardasil before or at the time of her injections.  Plaintiff and her parents relied upon the skill, superior knowledge, and judgment of Merck, the manufacturer, labeler, and promoter of Gardasil, and they detrimentally relied upon Merck's fraudulent, false, and misleading statements, omissions, and conduct.

126.    As a proximate result of Merck's fraudulent, false, and misleading statements, omissions, and conduct concerning the safety and efficacy of Gardasil, Plaintiff has suffered and continues to suffer severe and permanent physical injuries, and associated symptomology and has suffered severe and permanent emotional injuries, including pain and suffering.  Plaintiff also has a substantial fear of suffering additional and ongoing harms, including but not limited to now being at an increased risk of cancer, and future symptoms and harms associated with her premature ovarian failure and other injuries caused by Gardasil.

127.    As a direct and proximate result of her Gardasil-induced injuries, Plaintiff has suffered and continues to suffer economic losses, including considerable financial expenses for medical care and treatment, and diminished income capacity and she will continue to incur these losses and expenses in the future.

128.    Merck's conduct, as described above, was aggravated, outrageous, and evil. Merck regularly risks the lives of patients, including Plaintiff, with full knowledge of the limited

efficacy of Gardasil and the severe and sometimes fatal dangers of Gardasil. Merck has made conscious decisions to not warn, or inform the unsuspecting public, including Plaintiff, her parents and her medical providers. Merck's conduct, including its false promotion of Gardasil and its failure to issue appropriate warnings concerning the severe risks of Gardasil, created a substantial risk of significant harm to children and patients who were being injected with Gardasil, and therefore warrants an award of punitive damages.

129.    WHEREFORE, Plaintiff requests that the Court enter judgment in her favor for compensatory and punitive damages, together with interest, and costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiff also demands a jury trial on the issues contained herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, and severally, and requests compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper; demands a trial by jury  of all issues so triable; as well as:

(a) For general damages in an amount to be proven at the time of trial;
(b) For special damages in an amount to be proven at the time of trial;
(c) For statutory damages as set forth above, in an amount to be proven at the time of trial;
(d) For pre-judgment and post-judgment interest on the above general and special damages;
(e) For costs of this suit and attorneys' fees; and
(f) All other relief that this Court deems necessary, proper, and just.

## **JURY DEMAND:**

The Plaintiffs demands a trial by jury on all of the triable issues of this Complaint, pursuant to R. 1:8-2(b) and R. 4:35-1(a).

**SADAKA ASSOCIATES, LLC**
Attorneys for Plaintiffs

By: _____
        Mark T. Sadaka, Esq.

Dated: August 16, 2022

## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>R.</u> 4:5-1(c), the Court is hereby advised that Mark T. Sadaka, Esq. is hereby designated as trial counsel in this matter.

<div style="margin-left:45%">

**SADAKA ASSOCIATES, LLC**
Attorneys for Plaintiffs


By:__ _____

Mark T. Sadaka, Esq.
SADAKA ASSOCIATES LLC
155 North Dean Street, Suite 4-D
Englewood, NJ 07631
Tel: (201) 266-5670
Fax: (201) 266-5671
Email: mark@sadakafirm.com

</div>

Dated: August 16, 2022

## <u>CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)</u>

It is hereby certified that the matter in controversy here is not the subject of other actions and is likewise not the subject of any pending arbitration proceeding.  It is further certified that no other actions or arbitration proceeding is contemplated regarding the subject matter of this action and that there are no other parties who should be joined to this action at this time.  I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original complaint.  Further, I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with <u>R</u>. 1:38-7(b).

**SADAKA ASSOCIATES, LLC**
Attorneys for Plaintiffs

By:_____
       Mark T. Sadaka, Esq.

Dated: August 16, 2022

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-002697-22

**Case Caption:** BRAYBOY LAKIA  VS MERCK & CO., INC.

**Case Initiation Date:** 08/16/2022

**Attorney Name:** MARK T SADAKA

**Firm Name:** SADAKA ASSOCIATES LLC

**Address:** 155 NORTH DEAN ST 4TH FL

ENGLEWOOD NJ 07631

**Phone:** 2012665670

**Name of Party:** PLAINTIFF : Brayboy, Lakia

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** PRODUCT LIABILITY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Lakia Brayboy? NO**

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/16/2022
Dated

/s/ MARK T SADAKA
Signed